UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.

BOWEN INVESTMENT, INC. and HONEY
DEW ASSOCIATES, INC.,
           Plaintiffs,

v.

CARNEIRO DONUTS, INC. and MANUEL M.
CARNEIRO,
           Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
INJUNCTIVE RELIEF AGAINST THE DEFENDANTS**

This action arises from the post-termination continuation of a franchised business by the defendants, Carneiro Donuts, Inc. ("CDI") and Manuel M. Carneiro ("Carneiro", collectively with CDI, the "Defendants"). The Defendants' Franchise Agreement and Lease were terminated for multiple violations, including repeated failure to make timely payments. Despite termination, Defendants continue to operate the same businesses on the same site. Injunctive relief is required to protect the Plaintiffs' goodwill.

**I.    BACKGROUND**

Plaintiff, Honey Dew Associates, Inc.("HDA") is a franchisor of Honey Dew Donuts® Shops and is the owner of the protected trademarks and service marks (the "Marks") utilized by such shops. Affidavit of Richard J. Bowen (the "RJB Affidavit") ¶3. Plaintiff, Bowen Investment, Inc. ("BII", and together with HDA, the "Plaintiffs") is a subfranchisor of HDA for the purpose of franchising Honey Dew Donuts® Shops in Rhode Island. Affidavit of Robert P. Bowen (the RPB Affidavit") ¶1. There are

approximately 140 Honey Dew Donuts® Shops in Massachusetts, Rhode Island and New Hampshire. Id.

In June, 2004, defendant CDI purchased the assets and business of an existing franchisee of BII operating at 460 Allens Ave., Providence, RI (the "Shop"). RPB Affidavit ¶3. BII also owns the underlying real estate. Id. at ¶11. In connection with the transaction, CDI entered into a Franchise Agreement and a Lease with BII. Id. at ¶3. Defendant Carneiro is the owner of CDI and, pursuant to a written Liability Agreement, agreed to be jointly and severally liable to BII for all obligations of CDI. Id. at ¶2.

The underlying Franchise Agreement specifies defaults which justify termination by BII, including failure to make timely payments, after a notice and cure period, and failure to comply to operational standards, after a notice and cure period. Verified Complaint ¶18, Section XX(A)(3) and (A)(4); RPB Affidavit ¶4. In relevant part, the Franchise Agreement may be terminated:

> (i) for failure to maintain passing grades of BII's inspections of the Shop, Franchise Agreement, §VII(E), and failing to cure the default within five days of a written Notice of Default. Franchise Agreement §XX(A)(4);
>
> (ii) for failure to make timely payments to BII[1], Franchise Agreement, §II, and failing to cure the default within seven days of a written Notice of Default. Franchise Agreement, §XX(A)(3); and

---

[1] Pursuant to the Franchise Documents, Defendants are required to make by Friday of each week, weekly payments to BII for the week ending the preceding Sunday, as follows: (i) A continuing services and royalty fee payment of 7% of gross sales; (b) an advertising fund fee payment of 2% of gross sales; and (c) a rent payment of $200 plus 10% of gross sales. Franchise Agreement §II; Affidavit of Robert P. Bowen ("RPB Affidavit") ¶6.

2

(iii) if the Franchisee receives three Notices of Default in any twelve month period, regardless of whether or not the defaults specified were corrected. Franchise Agreement, §XX(A)(5); RPB Affidavit ¶4.

In approximately one year of operation, Defendants were served multiple Notices of Default for operational and nonpayment issues. Multiple Notices of Termination also issued for Defendants' failure to timely cure its defaults. RPB Affidavit ¶6.

Defendants were served Notices of Default dated September 15, 2004 and January 27, 2005 for inspectional failures. Verified Complaint, ¶23-24; RPB Affidavit ¶6(c) and (e). Neither of these defaults were timely cured. Id.

Defendants were served Notices of Default dated January 27, 2005, February 22, 2005 and May 27, 2005 for payment defaults. Verified Complaint, ¶25-27; RPB Affidavit ¶7(a) – (c). None of the defaults were timely cured. Id.

The Franchise Agreement expressly provides that termination of the Franchise Agreement terminates the Lease. Franchise Agreement, §XX(B); RPB Affidavit ¶10. Upon termination, the Defendants agreed to cease operations, return the confidential Operational Excellence Procedures Manual, and "peaceably and forthwith give up to (Bowen Investment, Inc.) the Premises . . .." Franchise Agreement, §XXI(A); RPB Affidavit ¶10. Defendants have violated these obligations in their entirety and continue to operate their business upon the Premises. Id.

Defendants were terminated by Notices of Termination dated February 22, 2005, May 27, 2005, June 8, 2005 related to the failure to timely cure defaults specified in referenced Notices of Default. Verified Complaint, ¶28-29, 31; RPB Affidavit ¶7 (a) – (c). Defendants were terminated by a Notice of Termination dated August 1, 2005 for

3

receipt of three Notices of Default in a one year period. Verified Complaint, ¶32; RPB Affidavit ¶8.

## II. PLAINTIFFS MEET THE REQUIREMENTS FOR INJUNCTIVE RELIEF

Injunctive relief is appropriate in a trademark infringement case upon a showing that: (1) Plaintiff[s] will suffer irreparable injury if the injunction is not granted; (2) such injury outweighs any harm which granting injunctive relief would inflict on the defendant[s]; (3) Plaintiff[s] have a likelihood of success on the merits; and (4) the public interest will not be adversely affected by the granting of the injunction. *E.g.*, Camel Hair and Cashmere Inst. Of America, Inc. v. Associated Dry Goods Corp., 799 F.2d 6, 10 (1st Cir. 1986).

As will be demonstrated, the Plaintiffs meet all four tests. Moreover, since material facts are not in dispute and any facts in dispute are not material to the preliminary injunction sought, no evidentiary hearing is required. McDonald's Corp. v. Robertson, 147 F.3d 1301, 1313 (11th Cir. 1998). Instead, an injunction may issue upon affidavits and other documentary evidence. *Id.*; Ty, Inc. v GMA Accessories, Inc., 132 F.3d 1167 (7th Cir. 1997); Dunkin' Donuts Inc. v. Kashi Enters., Inc., 106 F.Supp.2d 1325, 1326 (N.D. Ga. 2000).

The injunctive orders requested in this action follow well established legal precedent, as set forth below. Issuances of preliminary injunctions are common in trademark actions. McDonald's, 147 F.3d at 1310.

### A. The Plaintiff is likely to Succeed on the Merits

A franchisee's post-termination use of the franchisor's trademarks is a clear violation of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), and related state laws.

4

"The continued use of a trademark after breach of a franchise agreement is alone dispositive of the infringement issue. Dunkin' Donuts Incorporated v. Gav-Stra Donuts, Inc., 139 F.Supp.2d 147, 158 (D. Mass. Ct. 2001)(Saris, J.); see also S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 376 (3rd Cir. 1992) (holding that franchisee's continued use of franchisor's trademark amounted to infringement under the Lanham Act where franchise agreement was properly terminated for franchisee's failure to pay royalties); Burger King Corp. v. Majeed, 805 F. Supp. 994, 1002 (S.D. Fla. 1992) (noting the "well-settled doctrine that a terminated franchisee's continued use of its former franchisor's trademarks, by its very nature, constitutes trademark infringement").

The undisputed evidence is that the Defendants have committed multiple violations of the Franchise Agreement, that Defendants have failed to timely cure breaches after written notice, and that BII has utilized the contractual procedure for termination. Plaintiffs have demonstrated that they are likely to succeed on the merits.

  **B. The Plaintiffs will Suffer Irreparable Injury if an Injunction is not Granted**

A franchisor's loss of control over its trademarks and goodwill due to a terminated franchisee's continued use of the name and marks constitutes an injury for which there is no adequate remedy at law. *E.g.*, Re/Max North Central Inc. v. Cook, CCH ¶11,976 at 33,720 (E.D. Wis. 2000). "A sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of ... irreparable harm." E. Remy Martin & Co. v. Shaw-Ross Int'l Imports, 756 F.2d 1525, 1530 (11th Cir. 1985). Irreparable harm results when the owner of a trademark "lose[s] control over the reputation of its trademark pending trial." *Id.*; *see also* McDonald's, 147 F.3d at 1310. Where a terminated franchisee continues to use the franchisor's marks, the

franchisor no longer has control over the franchisee's actions, and thus faces "damage to its own reputation and loss of customers." E. Remy Martin, 756 F.2d at 1530. Lack of control amounts to irreparable injury regardless of allegations that the infringer is serving the mark well. S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 378 (3d Cir. 1992); International Kennel Club of Chicago, Inc. v. Mighty Star, Inc., 846 F.2d, 1079, 1092 (7th Cir. 1988). In such circumstances, there is "no realistic way to determine the damages," and injunctive relief is appropriate. McDonald's, 147 F.3d at 1310. The Plaintiffs are also at risk of losing customers and locational goodwill, damages which, by their nature are incapable of precise quantification. See Ross-Simon of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 20 (1st Cir. 1996) (Loss of goodwill is "often held to be irreparable."); Eli Lilly & Co. v. National Answers, Inc., 233 F.3d 456, 469 (7th Cir. 2000); Meridan Mutual Insurance Company v. Meridian Insurance Group, Inc., 128 F.3d 1111, 1114 (7th Cir. 1997); Wesley Jessen Division of Sharon Corp., 698 F.2d 862, 867 (7th Cir. 1983).

Defendants have refused to turn over operation of the shop to BII. As such, the Plaintiffs have lost control over the Marks and their reputation. Even if Defendants are operating as would have been required under the Franchise Agreement, this lack of control amounts to irreparable injury. S & R, 968 F.2d at 378. The potential damage to Plaintiffs' reputation is unquantifiable, and injunctive relief is appropriate prior to trial. McDonald's, 147 F.3d at 1310.

Defendants continue to operate the Providence Honey Dew Donuts® Shop after termination of their Franchise Agreement., RJB Affidavit ¶4. There is a certainty of customer confusion because the store has not changed since the termination of the

Franchise Agreement. Consumers will believe that they are purchasing certified Honey Dew® products, despite the fact that the franchise has been terminated. Based on this substantial likelihood of confusion, irreparable harm may be presumed as a matter of law. *Id.*

The Franchise Agreement specifically states that " . . . your continuation of operations upon the site following termination will result in a loss of goodwill and other monetary damages to us, the amount of which would be difficult to precisely calculate." Franchise Agreement, Section XXI(B)(2)(a). Consequently, it is justified under these circumstances that the Defendants be ordered to cease operations, return confidential materials and surrender the Shop so that the Plaintiffs can protect their goodwill.

### C.    Plaintiffs' Injury Outweighs Harm to the Defendants

It is also well established that the Defendants' self-inflicted harm is outweighed by the irreparable damage done the Plaintiffs by the infringement of its Marks. "Any harm suffered by the defendants was brought about by their own actions in refusing to pay their contractual obligations . . . Defendants' self-inflicted harm is far outweighed by the immeasurable damage done (franchisor) by the infringement of its Marks." Burger King Corp. v. Majeed, 805 F. Supp. at 1002, 1006; *see also* Dunkin' Donuts, 2000 U.S. Dist. LEXIS 18388 at 15 (". . . any damage to Defendants would stem directly from Defendants' own failure to pay their financial obligations to Dunkin'" (*citing* S & R, 968 F.2d at 379)); Burger King Corp. v. Hall, 770 F. Supp. 633, 637 (S.D. Fla. 1991); American Home Products Corp. v. Johnson Chemical Co., 589 F.2d 103, 107 (2nd Cir. 1978) ("[o]ne who adopts the marks of another for similar goods acts at his own peril").

7

Moreover, any damage to the Defendants through the issuance of a preliminary injunction can be easily remedied, if appropriate, by monetary damages. In contrast, there is "no realistic way to determine the damages" caused by trademark infringement and loss of control over reputation. McDonald's, 147 F.3d at 1310; Dunkin' Donuts, 2000 U.S. Dist. LEXIS 18388 at 15 ("While it is true that Defendants will be harmed if their franchise is terminated, this harm is merely pecuniary, and thus remediable by money damages"). Defendants have no equitable right to complain of a harm of their own making. Therefore, under well established case law, the harm to the Plaintiffs outweighs any injury to the Defendants in granting the requested injunctions.

### D.   Granting Injunctive Relief Would Serve the Public Interest

The public interest is served by preventing consumer confusion in the marketplace. *See, e.g.*, Davidoff & Cie, S.A. v. PLD Int'l Corp., 263 F.3d 1297, 1304 (11th Cir. 2001). Therefore, where a likelihood of confusion arises out of the concurrent use of a trademark, the infringer's use damages the public interest. S & R, 968 F.2d at 379. The public interest is best served when each member can purchase branded products with the confidence that those Marks represent the commitment to quality of the company that stands behind them. Calamari Fisheries, Inc. d/b/a The Daily Catch v. The Village Catch, Inc. d/b/a The Village Catch, 698 F. Supp. 994, 1015, 1988 U.S. Dist. LEXIS 12743 (D. Mass. 1988); Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d 812, 820, n. 2, (1st Cir. 1987). Here, the Defendants' infringement is misleading the public consumers into believing that their products and services are connected with the Plaintiffs' franchise. Burger King v. Majeed, 805 F. Supp. at 1006 ("Consumers who rely upon the BKC Marks in patronizing the defendants' restaurants are being deceived

8

into purchasing products under the mistaken belief that defendants are operating genuine Burger King® restaurants"). This "confusion resulting from the concurrent use of identical trademarks clearly creates a risk that consumers will receive something other than that which they paid for – a risk that is particularly striking, where, as here there is credible evidence that the confusion could lead to consumption of a product which is unsafe or, at a minimum, of lesser quality than expected." McDonald's Corp. v. Robertson, CCH ¶ 11,286 (M.D. Fla. 1997). The risk of confusion is considered likely when a franchisee continues to use the franchisor's trademarks after termination. S & R, 968 F2d at 376; Two Men and a Truck/Int'l Inc. v. Two Men and a Truck/Kalamazoo Inc., 1995 U.S. Dist. LEXIS 11295 (W.D. Mich. 1995).

### III. DEFENDANTS MUST IMMEDIATELY RETURN THE PREMISES TO BII

BII is the owner of the underlying real estate. Restoration of the Premises to BII is required under the Franchise Agreement and the Lease and is necessary to protect BII's goodwill. Moreover, BII has tax, mortgage and related obligations pertaining to the real estate. Restoration of the premises to the franchisor is the appropriate remedy in such cases both as a post-judgment and a preliminary injunction remedy.

In Baskin-Robbins, Inc. v. TAJ California, Inc., 2003 U.S. Dist. LEXIS 19946 (C.D. Cal. 2003), a terminated franchise was ordered to assign its business locations to the plaintiff within 14 days. The underlying contractual clause, similar to that in the case at bar, required defendant, upon termination of its sublease to "immediately yield up possession and surrender to Lessor the subleased premises . . ." Id. at 16.

In Dunkin' Donuts, Inc. v. Martinez, 2003 U.S. Dist. LEXIS 2694, 36 (S.D. Fla. 2003), a terminated Dunkin' Donuts franchisee was required to deliver its business

premises to the plaintiffs. The underlying contractual clause allowed Dunkin, upon termination, to enter and repossess the premises. *Id.* at 14.

In Atlanta Bread Company International, Inc. v. Nine Star Enterprises, Inc., CCH ¶12,521 (N.D. Ga. 2002), a Motion for Temporary Restraining Order and Preliminary Injunction was allowed, and defendant was enjoined from occupying the franchised premises.

A Dunkin' Donuts franchise, terminated for failure to make a required payment, after expiration of a cure period, was ordered by preliminary injunction to deliver the franchised premises to the franchisor within thirty days in Dunkin' Donuts, Inc. v. Liu, 2000 U.S. Dist. LEXIS 18388 (E.D. Penn. 2000), and a final judgment was in accord. Dunkin' Donuts, Inc. v. Liu, 2002 U.S. Dist. LEXIS 16362 (E.D. Pa. 2002), *affirmed*, 79 Fed.Appx. 543 (3rd Cir.), *cert denied*, 541 U.S. 989 (2004).

In McDonald's, 147 F.3d 1301, the Eleventh Circuit Court of Appeals affirmed a lower court's granting of an injunction, enjoining the franchisee from occupying the franchised premises.

In Burger King Corp. v. Majeed, 805 F. Supp. 994, a terminated franchisee was required to vacate the franchised premises within twenty days.

The underlying Franchise Agreement and Lease apply Massachusetts law. Franchise Agreement, §XXV. The Supreme Judicial Court of Massachusetts has shown considerable deference for the protection of the goodwill of franchisors, Boulanger v. Dunkin' Donuts, Inc., 442 Mass. 635, 815 N.W.2d 572 (Mass. 2004) (upholding Dunkin's covenant not to compete as "protecting the very franchise system from which

10

the plaintiff himself benefited"), a case involving similar businesses and contracts to the case at bar.

The good will of the Plaintiffs will be irreparably damaged if the Defendants are allowed to continue operating in their current location. *See* TAJ, 2003 U.S. Dist. LEXIS 19946 at 55 (Holding that termination of the franchise agreement due to the franchisee's engagement in conduct prejudicial to a franchisor's goodwill is justified because the franchisor's trust in the entire franchisee relationship has been undermined).

Plaintiffs' goodwill would erode unless possession is transferred, as set forth in the Franchise Agreement. In Section VI(A) of the Franchise Agreement, the Defendants acknowledge that "valuable goodwill is attached to the Proprietary Marks, and that you will use same only in the manner and to the extent specifically licensed by this Agreement. In the following subsection, VI(B), the parties recognize that "any and all goodwill associated with said Proprietary Marks . . . inures directly and exclusively to the benefit of HDA and [BII] . . ." It is clear that the Defendants' use of HDA's Marks will mislead consumers to believe that Defendants' Shop is licensed and regulated by the Plaintiffs. Any shortcomings would be attributable to the Plaintiffs' goodwill. Even if the Defendants' products are of high quality, the Plaintiffs are justified in insisting that their reputation not be imperiled by the acts of another. Burger King Corp. v. Majeed, 805 F. Supp. at 1000 ("By virtue of BKC's termination of defendants' franchises, BKC is unable to control the nature and quality of the goods and services that defendants now provide at their restaurants").

## IV. DEFENDANTS MUST CEASE OPERATIONS, ABIDE BY COVENANTS NOT TO COMPETE AND RETURN CONFIDENTIAL MATERIALS

Utilizing the principles set forth herein, it is generally held in franchise cases that a franchisee will be enjoined, post-termination or expiration, from utilizing the franchisor's proprietary marks. *E.g.*, Sonana Systems, Inc. v. Ramada Franchise Systems, Inc., CCH ¶12,254 at 35211 (M.D. Fla. 2002); Re/Max North Central, Inc. v. Cook, CCH ¶12,164 at 34,782 (E.D. Wis. 2001); Baskin-Robbins USA, Co. v. Mac II Enterprises, Inc., CCH ¶11,882 at 33,253 (N.Y. Sup. Ct. 2000); ERA Franchise Systems, Inc. v. Logan & Logan Associates, Inc., CCH ¶11,512 (E.D. Penn. 1998); Burger King Corporation v. Mason, 710 Fed. 2nd 1480, 1493 (11th Cir. 1983). One Federal Court of Appeals has held it to be reversible error <u>not</u> to grant a preliminary injunction is such a case, S & R, 968 F.2d 371, and others have ruled that an injunction should even be granted even where the franchisee stopped the infringing misconduct, due to the possibility of future violations. Heaton Distrib. Co. v. Union Tank Car Co., 387 F.2d 477, 486 (8th Circ. 1967); Polo Fashions, Inc. v. Dick Bruhn, Inc., 793 F.2d, 11382, 1135-36 (9th Circ. 1986); Burger King Corp. v. Weaver, CCH ¶11,511 at 31, 231 (S.D. Fla. 1998); E.& J. Gallo Winery v. Consorzio del Gallo Nero, 782 F.Supp. 457, 468 (N.D. Cal. 1991); Clayton v. Howard Johnson Franchise System, Inc., 730 F.Supp. 1553, 1558 (M.D. Fla. 1988).

The Defendants are bound by the covenant not to compete listed in Section XIII of their Franchise Agreement and the separately executed covenant not to compete that is part of the Franchise Documents. The covenant not to compete specifically requires that for one year following termination, they are not to be directly or indirectly, engage or be

12

financially interested in, nor associated with any business of the same or similar nature as a Honey Dew Donuts® Shop within three miles of any existing Honey Dew Donuts Shop® and within one-half mile of their existing Shop. Verified Complaint. The Franchise Agreement applies Massachusetts law.

The Supreme Judicial Court of Massachusetts has recently upheld an even broader covenants not to compete in the same business. *See* Boulanger, 442 Mass. 635 (Defendants restricted from owning or working for a competing business within five miles of any Dunkin' Donuts establishment for two years after the expiration or termination of the agreements). Therefore, it is clear that the less restrictive Honey Dew covenant not to compete is reasonable under Massachusetts law. Such covenants are required to protect legitimate business interests, encompassing the protection of trade secrets, confidential information and good will.

In purchasing a franchise, the franchisee is given access to a system of doing business, including techniques, special equipment and processes, standards and specifications for products, equipment and processes, and/or methods and techniques for inventory and cost controls, record keeping and reporting, personnel management, sales, promotion and advertising. Courts have considered that a violation of a covenant not to compete could cause the franchisor to have difficulty re-franchising in that area, could result in the diversion of business from authorized franchisees, impairs the franchisor's relationship with its franchisees and the integrity of the system, and allows the breaching franchisee to be unjustly enriched by using the knowledge and experience gained from the franchisor to serve former and potential customers of the franchisor. *See* Minuteman Press International, Inc. v. ANBAM, LLC, CCH ¶12,576 (E.D.N.Y. 2003)

(Transformation into a competitor was likely to raise concerns in the marketplace as to franchisor's viability, thus impairing goodwill, and reputation); ServiceMaster Residential/Commercial Services L.P. v. Proctor, CCH ¶12,252 at 35, 208 (D. Neb. 2002) (enforcing covenant from the date of Order- failure to enforce the non-competition covenant would be a heavy blow to the franchise system developed, a type of injury not easily or precisely measured by an award of damages); Maaco Enterprises, Inc. v. Scott S. Bremner & Service and Supply Group, Ltd., 1998 U.S. Dist. LEXIS 15174 (E.D. Penn. 1998)(otherwise integrity of the system would be impaired and the defendant could be unjustly enriched by using the knowledge and experience gained from Maaco to serve former and potential customers of Maaco); ATL International, Inc. v. Mohammed Baradar, CCH ¶11,345 (D. Md. 1997)(allowing breakaway franchisee to continue operation would unravel plaintiff's entire franchise system); Jiffy Lube International, Inc. v. Weiss Brothers, Inc., 834 F.Supp. 683, 692-93 (D. NJ 1993)(Failure to grant injunctive relief could impede the plaintiff from enforcing provisions of similar agreements against other franchisees); Economou v. Physicians Weight Loss Centers of America, 756 F.Supp. 1024, 1039 (N.D. Ohio 1991). All franchise systems would collapse if franchisees were entitled to a reward for violating their agreements by continuing in the identical business at the same location. Therefore, the Defendants should be enjoined to comply with the terms of their covenants not to compete.

V.  **All Confidential Data Should be Returned to Plaintiffs**

For the reasons set forth above, the Defendants should also be required to immediately return to BII the Confidential Operational Excellence Procedure Manual and

any other materials provided by the Plaintiffs to the Defendants and designated as confidential. *E.g.,* McDonald's, 147 F.3d at 1306; Atlanta Bread Co., CCH ¶12,521.

## VI.  CONCLUSION

For all of the foregoing reasons, the Plaintiffs, Honey Dew Associates, Inc. and Bowen Investment, Inc., are entitled to the injunctive relief requested.

WHEREFORE, the Plaintiff requests this Honorable Court grant its motion and issue injunctions against the Defendants.

Date: August 12, 2005

Respectfully Submitted by the Plaintiffs
HONEY DEW ASSOCIATES, INC.,
BOWEN INVESTMENT, INC.
By their Attorneys,

Jack J. Mikels, BBO# 345560
Michael A. Wirtz, BBO# 636587
Janell E. De Gennaro, BBO #656306
JACK MIKELS & ASSOCIATES, LLP
1 Batterymarch Park, Suite 309
Quincy, MA 02169
Tel: 617.472.5600

F:\aa-mikels/BII/Carneiro/Mo-PI III