UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                  )
BOWEN INVESTMENT, INC. and          )
HONEY DEW ASSOCIATES, INC.        )
    Plaintiffs and Counterdefendants    )
                                    )
                                    )
                                    )
v.                                )
                                    )      C.A. No. 05 – 11709 NMG
CARNEIRO DONUTS, INC. and        )
MANUEL M. CARNEIRO          )
    Defendants and Counterclaimants    )
_____)

## DEFENDANTS OPPOSITION TO PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF

       Now come the defendants Carneiro Donuts, Inc. and Manuel M. Carneiro to

OPPOSE  the Plaintiff's Motion for Preliminary Injunctive Relief.   In support of this

Opposition, defendants incorporate by reference the attached affidavit of Manuel M.

Carneiro and Exhibits A-BB and say:

In order to prevail on a preliminary injunction motion, the plaintiffs must show:

    A.     A substantial likelihood that they will ultimately prevail on the merits in a way that

          would make issuing the requested preliminary injunctive relief appropriate;

    B.     That the plaintiffs will suffer irreparable injury unless the injunction issues;

    C.     That the threatened injury to the plaintiffs outweighs whatever damage the

          proposed injunction may cause the defendants; and

    D.     That the injunction issued would not be adverse to the public interest.

See Vargas-Figueroa v. Saldana, 826 F.2d 160, 162, 164 (1st Cir.1987). ("We do not, of course, decide the merits. We determine only that, given plaintiff's failure to have established a more substantial probability of prevailing on the merits, the harm caused him by denying a preliminary injunction does not outweigh the harm caused the university by granting it."); Planned Parenthood League v. Belloti, 641 F. 2d 1006, 1009 (1st Cir. 1981), cited in Camel Hair and Cashmere Institute of America v. Associated Dry Goods Corp., 799 F. 2d 6, 12 (1st Cir. 1986). In the present case, the defendants have clearly not met these requirements. Accordingly, the Court should deny the defendants all their requested injunctive relief.

## MATERIAL FACTUAL DISPUTES

There are many material facts in dispute despite the plaintiff's statement to the contrary at section II of their Memorandum of Law. For example:

The plaintiff's assert the following "material facts" through the affidavit of Robert P. Bowen ("RPB"), President of Bowen Investment, Inc. ( the "RPB Affidavit" ) – all of which defendants, Manuel M. Carneiro ("MMC") and Carneiro Donuts, Inc., deny through the attached Affidavit of Manuel M. Carneiro ( the " MMC" Affidavit) and through the Exhibits attached and noted below:

a. RPB states at paragraph (hereafter "¶") 6 of his affidavit that in approximately one year of operation the defendants have flunked several inspections and failed to cure the defaults. MMC denies this at ¶ 11 of his affidavit and disputes the accuracy and validity of the inspections at ¶ 10. Attached as Exhibit Q is a May 11, 2005 inspection

completed by the plaintiffs which shows a "passing score" of   86.  As well, attached as Exhibit O is a letter from the plaintiff stating that as of May 12, 2005 the plaintiffs considered the defendants to be operating within Honey Dew standards and then the defendants offered "reinstatement" - however, on onerous, oppressive and unfair terms. See attached Exhibit T.

b.   In his affidavit at pages 3 – 6, RPB provides the Court with a long list of items he asserts are deficiencies noted during shop inspections.   However, RPB never personally took any of these inspections nor was he even present at the shop during any of the inspections.  MMC Affidavit ¶ 12.   RPB's affidavit regarding shop deficiencies is hearsay, is being provided without his personal knowledge and is thus invalid and of little credible use to the Court – especially since the subject matter of the affidavit is critical to the Court's decision.   Additionally, the defendant's do not provide the Court with any of the actual shop inspections or any testimony from the actual shop inspector.

The defendant's seek to avoid any legal scrutiny of their shop inspections, procedures and inspector through their requested injunctive relief which, if granted, would allow them to grab all the defendant's assets without a fair chance to defend himself through the legal processes of discovery and trial.

c.   The defendant's dispute the validity and legality of the plaintiff's defaults and termination notices regarding monetary payments.   MMC Affidavit ¶ 14.

d.   Again, see Exhibit O which is the May 12, 2005 letter from the plaintiff verifying that the defendants were within a week of current on their payments and then

offering "reinstatement" on unfair and onerous terms which would have deprived the defendants of valuable rights under their franchise agreement and put them in clear danger of forfeiting their franchise assets.   See Reinstatement Offer at Exhibit T.

e.    At ¶ 9 of his affidavit RPB states that BII prefers not to terminate franchisees.   The record clearly shows otherwise.   For example, in the United States District Court in Boston, the following litigation over terminations and other issues is presently ongoing or has occurred in the recent past:

1.    <u>CV No. 03-10965-RCL</u>.   This active case apparently involves at least five (5) present and former franchisees suing BII over issues relating to the Advertising Fund and BII's relations and dealings with purveyors and suppliers.   BII had terminated and initiated litigation against some or all of the plaintiff's in the past.   The plaintiff's appear to be currently seeking Class Certification of their claims.

2.    <u>CV No. 04-10702-RWZ</u>.   This is an active trademark case which appears to involve similar issues as the present case.   BII terminated the franchise and is the plaintiff.   No preliminary injunction was requested.

3.     <u>CV No. 03-12509-MBB.</u>   This case has been closed and BII was the plaintiff.   BII's preliminary injunction motion was DENIED.

4.     <u>CV No.  02-10599-RWZ</u>.   This case has been closed and BII was the plaintiff.  No preliminary injunction was requested.   Additionally:

5.    Please see Exhibit Z which shows seven (7) cases filed by BII against its franchisees from 1999-2003 at Norfolk Superior Court in Dedham, MA.

6.    Please see Exhibit BB which shows three (3) trademark cases (like the present one) filed by BII against three (3) of its franchisees in the United District Court of Rhode Island between 1998-1999.  BII terminated their franchises as well.

According to its 2003 Offering Circular, BII overseers approximately 26 shops as a sub-franchisor in the Providence, RI area.   The above, which does not include any franchisee terminations that did not reach litigation, certainly suggests an inordinately large amount of litigation and franchise terminations for a company of its size, despite BBI's statement to the contrary that BII, in general, prefers not to terminate franchisees.

A.    **THERE IS A NO REASONABLE LIKELIHOOD THAT THE DEFENDANTS WILL ULTIMATELY PREVAIL ON THE MERITS OF THEIR CLAIMS**

The defendants deny the plaintiff's assertion that they have committed multiple violations of the franchise agreement.  MMC Affidavit ¶ 16.  The defendants have timely cured any defaults that could possibly justify termination.  MMC Affidavit ¶ 17.  The plaintiff's  self-serving proclamations that that the defendant's have defaulted on their franchise and have been properly terminated is denied by the defendants and in no way shows that the plaintiffs have a reasonable likelihood or any likelihood of success on the merits.  MMC Affidavit ¶ 18.   In fact, the defendants are presently current or within a week of being current with BII.   MMC Affidavit ¶  15.

Even if the plaintiffs could show any merit to their claims they will be barred from recovery or prevailing on the merits by their own breaches of contract and unclean hands.   It is well established, under Massachusetts contract principles, that "a material breach by one party excuses the other party from further performance under the contract. Itt Corp. v. Ltx Corp., 774 F.Supp. 681 (Mass., 1991);  Ward v. American Mutual Liability Ins. Co., 15 Mass.App.Ct. 98, 100, 443 N.E.2d 1342 (1983); Center Garment Co. v. United Refrigerator Co., 369 Mass. 633, 639, 341 N.E.2d 669 (1976).   For example:

     1.       **UNORTHODOX ACCOUNTING PRACTICES OFF BII**

The franchise agreement at issue specifically calls for the franchisee to pay weekly royalty fees or 7% of sales and weekly payments to the Ad Fund ( which is a separate fund owned and controlled by Honey Dew Associates, Inc.)  of 2% of sales.  The franchise agreement also states that BII must match the franchisee's 2% weekly contribution.   However, BII has set up an apparently verbal arrangement with its franchisees which changes the terms of the franchise agreement with regard to the payment of advertising fees.  BII tells the franchisees to pay its ( BII's) 2% obligation to the Ad Fund and deduct 2% from the royalty fees the franchisee pays to BII.   Thus, the franchisees are instructed by BII to pay 4% of their weekly sales to the Ad Fund and 5% to BII instead of 2% to the Ad Fund and 7% to BII as called for in the franchise agreement.

Whatever the purposes of this very unorthodox  accounting practice, the defendants on July 25, 2005 ( See Exhibit V ) advised BII that they did not want to participate and

further explained, in a letter to BII dated August 2, 2005, that they would only make their advertising payments in conformance with the franchise agreement. See Exhibit X. On August 1, 2005 BII responded to the July 25th letter with their attached letter, Exhibit W, which was accompanied by another termination notice and another threat of litigation.

BII has materially breached the franchise agreement by telling and pressuring franchise operators to pay BII's obligations to the Ad Fund. See Exhibits U and W. Franchisees should not be pressured into engaging in unorthodox accounting practices and should not be chastised or terminated for refusing to engage in accounting practices and into making payments in a manor or amount not called for in their franchise agreement or disclosed in the BII Offering Circular or in conformance with generally accepted accounting principles.

### 2.    NO AD FUND AUDIT PROPERLY PROVIDED BY BII

The franchise agreement calls for BII to provide, "… at least annually…", a statement of the receipts and expenditures of the Ad Fund. The plaintiff's have been in business now over a year and have twice (2) asked for the annual Ad Fund accounting statement. BII has promised but failed to properly provide this contractually mandated financial statement which again represents a material breach of the franchise agreement by BII. See Exhibits S and X.

### 3.    VIOLATION OF THE FTC FRANCHISE RULE BY BII

Soon after entering the system, on or about June 1, 2004, the defendants were told by BII that they had to buy some new equipment. MMC Affidavit ¶ 19. BII then

proceeded to order and pay, in its own name, new speaker headsets from  DMX

(at $ 5146 ) and new donut production equipment from RI Restaurant Equipment

( at $ 4334) and then presented the defendants with a contract note ( See Exhibit A )

between the defendants and BII calling for weekly payments of $ 100 until the $9428 was

paid off.   Several months later BII purportedly "defaulted" the defendants for

nonpayment of several more minor items such as $ 121 for a water bill and $ 194 for a

sewer bill and $ 1396 for an unexplained real estate bill (See Exhibit F).  In the Exhibit B

default notice, and also later, BII (See Exhibits G and J) made a condition of curing the

purported franchise defaults be that the defendants accelerate their separate note of

$ 9428 which had never been defaulted or legally and properly disclosed to them as a

potential obligation to BII in BBI's franchise offering circular as required by the FTC and

Rhode Island state law.   In other words, BII was threatening litigation and making the

cure dependant upon the defendants paying BII the full amount due on the $ 9428 note -

which again was never properly disclosed as a potential obligation under the franchise

agreement and which was not in default.  Demanding payments for obligations

undisclosed in the franchise offering circular, threatening litigation and making the cure

dependant upon payment of these undisclosed obligations is an unfair and deceptive

business practice, a serious violation of the FTC Rule governing the franchise industry

and a serious breach of the franchise agreement which negates any right BII might have

prevail on the merits of this case.

   More specifically, the above noted equipment financing and procurement

practices represent a serious violation of Sections 8 and 10 of the NASAA Uniform

Franchise Offering Circular requirements by which BBI is bound by state and federal

law.   See Exhibit AA.   Thus, BII has clearly violated the law and has predicated its

defaults and franchise termination significantly on these violations which, in actuality, is

another violation of the law for which the defendants hold the plaintiffs responsible.

See Anthony's Pier Four, Inc.,v HBC Assocs., 411 Mass. 451, 471-72, 583 N.E. 2d 806,

820 (1991) ( [N}either party shall do anything that will have the effect of destroying or

injuring right of the other party to receive the fruits of the contract."); Hawthorne's, Inc.

v. Warrenton Realty, Inc., 414 Mass. 200, 211 606 N.E. 2d 908, 914 ( 1993) ( This

covenant applies to the parties' performance of the contract as well as the enforcement of

it.) See generally Restatement (Second) of Contracts § 205 (1981) (good faith

performance or enforcement of a contract emphasizes faithfulness to an agreed common

purpose and consistency with the justified expectations of the other party).

### 4.    BII's CONSISTENT FAILURE TO MEET AND COMMUNICATE

The above partially describes the relatively complex and difficult nature of the

problems between the parties.   The defendants have made numerous requests to meet

with BII so that these problems could be addressed and resolved.   See Exhibits C, E, H,

I, L, N, P, and R (representing at least 8 written requests for a meeting between the

parties - spanning from February through May of 2005).   BII has consistently refused

any resolution meeting and has responded with further illegal defaults, terminations and

demands for unexplained sums of monies not properly due in addition to their consistent

requirement that he sign an unconscionable "reinstatement agreement".   See Exhibits T,

O, J and D.   Now BII is asking the Court to grant them immediate possession of the shop

by an injunction which would financially ruin and prevent the defendants from a having

their day in Court to present their defenses and counterclaims.   MMC Affidavit ¶'s 26,

27.   This is clearly unfair and the Court should deny the requested injunctions forthwith.

### B.        THE PLAINTIFFS WILL NOT SUFFER IRREPARABLE INJURY IF THE INJUNCTION IS NOT GRANTED

1.        BII terminated the defendants on February 22, 2005 but did not file a

preliminary injunction for six (6) months.   The fact that they waited six (6) months to file

an injunction that claims irreparable injury if it is not immediately granted shows that no

such harm is occurring or has occurred or they would have filed sooner than after waiting

six (6) months.   Instead they choose to use the six (6) months to attempt collection of

monies not due and to take possession of the defendant's shop by other means while all

the time refusing to meet or talk with the defendants.   The plaintiffs have sat on whatever

right they have to a claim of present or ongoing harm to their marks.   See Castro v.

United States, 775 F.2d 399, 408 (1st Cir. 1985) (…"appellants' delay of more than one

year before seeking injunctive relief militates against a claim of irreparable injury".)

Additionally, the defendants passed their last inspection conducted by the

plaintiffs on May 11, 2005.   See Exhibit   Q.   The defendants also passed a Rhode Island

Dept of Health and Food Protection inspection conducted on April 25, 2005.   See

Exhibit M.

2.        Considering the amount of litigation and numerous occasions upon which

BII terminates and litigates with its franchisees, one could reasonably conclude that it is

not an unusual circumstance upon which Honey Dew shops operate.   BII remains

welcome to visit and inspect the shops and the defendants would welcome their support

in running their business.  In fact, the defendants have been trying to meet with BII for months, to no avail.   BII can not reasonably suggest there is a critical need for them to take back the business, and gain a huge unearned windfall profit, when they have long refused to meet and discuss operational, marketing and financial issues related to the shop.   See Exhibits C, E, H, I, L, N, P, and R.   BII has clearly not shown a genuine concern about the shop's operations and goodwill – but has shown a hearty appetite to grab franchisee assets and money.   See Exhibits B and J.

For example, Exhibit K is an AA Sign bill, dated March 7, 2005, incurred when BII unilaterally had a sign company tear down the outside pylon sign of what was then the defendant's second shop – several days before the lease expired and while the shop was still in operation.  MMC Affidavit ¶ 22.   BII then sent this bill to the defendants and demanded full payment of $ 1002.60 to BII.  See Exhibits J, K and G.   Later, after protest from the defendants, BII agreed to accept $ 500 from the defendants.   If BII was truly concerned about consumer goodwill they would not tear down a large pylon sign displaying the Marks while a Honey Dew shop was still operational.   In fact, this action damaged both the defendant's and Honey Dew's goodwill, humiliated the defendants in front of their customers and violated their rightful use of the Marks.  MMC Affidavit ¶ 23. See Coraccio v. Lowell Five Cents Sav. Bank, 415 Mass. 145, 612 N.E.2d 650 (Mass., 1993) ( stating that " This covenant, implicit in all contracts, prohibits parties from doing "anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Fortune v. National Cash Register Co., 373 Mass. 96, 104, 364 N.E.2d 1251 (1977).

**C.     THE THREATENED INJURY TO THE DEFENDANTS FAR OUTWEIGHS WHATEVER DAMAGE THE PROPOSED INJUNCTION MAY CAUSE THE PLAINTIFFS**

Mr. Carneiro used all his assets and savings to purchase his Honey Dew franchise for approximately $ 150,000 on June 1, 2004.   MMC Affidavit ¶ 25.   He would loose all his financial assets and he would not be able to meet his business or family obligations as the husband, father and grandfather he is if the requested preliminary injunction was granted.   MMC Affidavit ¶'s 26, 27.   On the other hand, the plaintiffs have initiated terminations and litigation frequently against their franchisees.   See Exhibits Z and BB. Litigation and franchisees operating under such litigation has come to be a regular course of business for the plaintiffs and BII's chain of 26+ shops.   Additionally, the present termination is illegal, grossly unfair and any possible harm suffered by BII is self-inflicted.

Plaintiffs are not currently suffering any harm (and have shown none) but the defendants and all those who depend on them would be financially ruined by the requested preliminary injunction, which clearly should be denied by this Court.   The status quo should stay as it is and has been for the last year and three (3) months without destroying the financial resources of the defendants and greatly debilitating their ability to defend themselves.

**D.     THE REQUESTED INJUNCTION WOULD BE ADVERSE TO THE PUBLIC INTEREST**

The defendants have not breached their franchise agreement in any manor or to any degree that justifies termination or immediate possession by BII.   The defendants continue to comply with the terms of their agreement and operate their shop at or above the

standards required by BII.   See Exhibits M and Q.   No harm is being done to the Honey

Dew marks and in fact their value is increased by the defendants' investment in and

operation of their franchise shop.

It would ill serve the public interest for the Court to allow BII to illegally

terminate a franchisee, particularly in the circumstances of this case, and then summarily turn

possession of their business and all their assets over to a franchisor who refuses to even meet

with its franchisee – all without a due or fair legal process through which the defendant can

properly marshal his evidence and present his arguments to the Court in order to protect his

property.   Its clearly in the public interest that ones business can not be taken from him or

her without due process and also that individuals and businesses should be able to enjoy the

fruits of their contracts without fearing unfair and unreasonable forfeiture absent proper legal

recourse – particularly when they is no emergency circumstance as there isn't here.

## PLAINTIFFS REQUEST A HEARING ON THIS MATTER

WHEREFORE, defendants request that the plaintiffs' motion be DENIED

and the Court take any other action the Court deems fair and just.

<div style="margin-left:40%">

Respectfully submitted,
MANUEL M. CARNEIRO
CARNEIRO DOUNTS, INC.
By their Attorney,


/s/   Kevin R. McCarthy
Kevin R. McCarthy
(BBO # 640788)
155 Fairoaks Lane
Cohasset, Ma  02025
781-383-0639

</div>

Dated:  September 27, 2005

**CERTIFICATE OF SERVICE**

I, Kevin R. McCarthy, certify that on this date I served a true copy the foregoing DEFENDANTS OPPOSITION TO PLAINTIFF'S MOTION FOR  INJUNCTIVE RELIEF to counsel for all parties by electronic means (CM/ECF) to Jack J. Mikels, counsel for the plaintiff, Jack Mikels and Associates LLP, 1 Batterymarch Park, Suite 309, Quincy, MA 02169.

/s/   Kevin R. McCarthy
Kevin R. McCarthy

Dated:  September 27, 2005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

|  |  |
|---|---|
| BOWEN INVESTMENT, INC. and HONEY DEW ASSOCIATES, INC. Plaintiffs | ) ) ) ) ) |
| v. | ) ) |
| CARNEIRO DONUTS, INC and MANUEL M. CARNEIRO Defendants | ) ) ) ) |

C.A. No. 05 – 11709 NMG

---

### AFFIIDAVIT OF MANUEL M. CARNEIRO

I, Manuel M. Carneiro, being under oath depose and state as follows:

1.      I am the individual defendant in the present case.

2.      I am a citizen of the state of Rhode Island and I reside at 564 Hunt Street, Central Falls, Rhode Island with my wife of 38 years.

3.      I am 62 years old and I am a husband, father to 3 children and a grandfather.

4.      I immigrated to the United States from Portugal in 1968 and became an American citizen in 1972.

5.      My highest level of education is high school.

6.      English is my second language and I am still learning to read and write English.

7.      Before buying my Honey Dew franchise on or about June 1, 2004, I was a manager of several Dunkin' Donut shops in the Providence, RI and Eastern Massachusetts area for 9 years.

8.      Carneiro Donuts Inc. ( "CDI)" is a Rhode Island corporation with a place of business as a Honey Dew franchise shop at 460 Allens Ave., Providence, RI, 02905.

9.      I am the owner and principal of CDI.

10. I dispute the accuracy and validity of all the shop inspections Bowen Investments, Inc. (BII) has conducted in my shop, since June 1, 2004, in which they assert my shop flunked.

11. I deny that I have failed to properly cure any material and legitimate defaults which were in my ability and were my responsibility to cure since June 1, 2004.

12. Robert P. Bowen, President of BII never personally took any shop inspections in my shop nor was he ever present during the taking of any shop inspection in my shop since June 1, 2004.

13. I deny BBI's assertion that I have been routinely late in making payments and then failed to cure legitimate defaults.

14. I dispute the legality of the plaintiff's defaults and termination notices sent to CDI regarding monetary payments.

15. As of today, I am within a week of being current in my obligations to BII.

16. I deny that I or CDI have committed multiple violations of my franchise agreement.

17. I and CDI have timely cured any defaults that could justify termination.

18. I and CDI deny that the plaintiff's have legitimately defaulted or legitimately terminated my franchise agreement.

19. Within 2 weeks after entering the Honey Dew system I was told by Robert Bowen, President of BII, that I had to buy some new equipment for my shop which consisted of new speaker system headsets and new donut production equipment.

20. I did not ask for this new equipment – Robert Bowen, President of BII, pressured me and told me I had to purchase it.

21. Robert Bowen then presented me with a contract note for $ 9,428.00 payable to BII for the equipment mentioned in # 19 and # 20 above.

22. During the last week in February, 2005 BII hired the AA Sign company to tear down the outside Honey Dew pylon signs at my Park Avenue, Cranston, RI location approximately 3 days before the store was to close due to non-renewal of the lease. This action was unannounced and unilateral on BII's part.

2

23.    The action stated in # 22 above damaged the goodwill my shop had with the Honey Dew customers of this location.   I was humiliated and embarrassed in front of my Park Avenue, Cranston customers and my employees by BII's unannounced tearing down of my pylon signs.

24.    BII failed to provide me the training called for in section V of my franchise agreement.

25.    I used all my savings to purchase my Honey Dew franchise for approximately $150,000.00 on June 1, 2004.

26.    I would loose all my business assets and would not be able to meet my family and other financial obligations if the requested preliminary injunction was granted.

27.    I and CDI would be financially ruined and irreparably damaged if the requested preliminary injunction was granted.

Signed under the penalties of perjury this _____ day of September, 2005.


Manuel M. Carneiro

3

EXHIBIT A

## Bowen Investment, Inc.
2 Taunton Street, Suite #5
Plainville, MA 02762
Tel: 508-695-3666 • Fax: 508-643-2429

July 26, 2004

Mr. Manny Carneiro
Honey Dew Donuts·
460 Allen's Avenue
Providence, RI 02905

Dear Manny:

Enclosed are two invoices for equipment ordered for your franchise and paid for by me.

As we discussed, you agree to pay me back the money (interest free).  The total bill
expected is $9,428.00.  I suggest you remit $100.00 per week for 94 weeks with $28.00
due at the end.   If this is agreeable to you, please sign the bottom of this letter and return
to me at your earliest convenience.

As always, if you have any questions, please call me at once.

Very truly yours,

Robert P. Bowen
President

RPB/rjp

Enc.

_____ Date 8·2·04

I, Manuel Carneiro agrees with the terms of this letter.



Enjoy
The Loca
Flavor

# Bowen Investment, Inc.

2 Taunton Street, Suite #5
Plainville, MA 02762
Tel: 508-695-3666 • Fax: 508-643-2429

September 23, 2004

Mr. Manny Carneiro
Honey Dew Donuts
460 Allen's Avenue
Providence, RI 02905

Dear Manny:

Enclosed is the final invoice in the amount of $5,146.35 from DMX Music for your
headsets. The total due for this invoice & the one previously sent to you regarding RI
Restaurant Equipment is $9,479.85.

If you have any questions, please feel free to contact me.

Sincerely,

Robert P. Bowen
President

began $100 w/c 9/26/04

RPB/rjp

Enc.



Enjoy
The Loca
Flavor

EXHIBIT B

FROM : MARIO J.CARNEIRO,C.P.A.,Ltd.    FAX NO. : 4014353130    Feb. 24 2005 10:32AM P3

# JACK MIKELS & ASSOCIATES, LLP

**1 BATTERYMARCH PARK • SUITE 309 • QUINCY, MASSACHUSETTS 02169-7454**
*Telephone: 617.472.5600 • Telecopier: 617.472.5875 • E-Mail: jmikels@gis.net*

JACK J. MIKELS
MICHAEL A. WIRTZ
ROCHELLE NELSON MIKELS
JANELL E. DE GENNARO
*ATTORNEYS AT LAW*

February 22, 2005

*By Federal Express*
Manuel M. Carneiro, President
Carneiro Donuts, Inc.
c/o Honey Dew Donuts
460 Allens Avenue
Providence, RI 02905

### NOTICE OF DEFAULT

Dear Mr. Carneiro:

Reference is made to the Franchise Agreement and Sublease dated June 1, 2004 for the Honey Dew Donuts® Shop operating at 460 Allens Avenue, Providence, RI. Your attention is respectfully directed to Section XX of your Franchise Agreement, which provides for termination for your failure to perform any obligation under the Franchise Agreement and/or Sublease which is not remedied within the applicable cure period following your receipt of this notice. This letter is a formal Notice of Default pursuant to the provisions of your Franchise Agreement. You are hereby notified of the following instance(s) of default:

You have failed to make timely payments of royalties, service fees and rent due for the weeks ending from January 30, 2005 to date; You have failed to reimburse us for the Water Bill in the sum of $121.28, a copy of which was forwarded to you on October 13, 2004 and, per the terms of your Sublease, was required to be paid within ten days; You have failed to reimburse us for the Sewer Bill in the sum of $194.38, a copy of which was forwarded to you on November 22, 2004 and, per the terms of your Sublease, was required to be paid within ten days; You have failed to reimburse us for real estate taxes in the sum of $1386.90, a copy of which was forwarded to you on December 20, 2004 and, per the terms of your Sublease, was required to be paid within ten days; You have failed to reimburse us for the Water Bill in the sum of $89.20, a copy of which was forwarded to you on January 15, 2005 and, per the terms of your Sublease, was required to be paid within ten days; You have failed to make timely payments of agreed sums for equipment purchased for your store, per the letter agreement of July 26, 2004.

These default may be cured within seven (7) days of your receipt of this letter. You are also obligated to pay interest at an annual rate of 18% on any late payment, from the date due to the date paid, plus our reasonable fees and costs resulting from the late payment, plus any payments which come due from the date of this Notice of Default to the date of payment. If you fail to cure, your Franchise Agreement may be terminated and/or we may initiate litigation to collect sums due, including costs of collection. Partial payments will be applied to your arrearage, but without waiver of our rights pursuant to this **NOTICE OF DEFAULT. This Notice of Default is without prejudice to or waiver of our rights pursuant to any prior, subsequent or concurrent Notice of Termination or Notice of Default.**

Very truly yours,

Jack J. Mikels

cc: Robert P. Bowen, President

# EXHIBIT C

## Kevin R. McCarthy
**Attorney at Law**
**155 Fairoaks Lane**
**Cohasset, Massachusetts  02025**

| Telephone | E-mail | Fax |
|-----------|--------|-----|
| **781-383-0639** | **kemccar68@comcast.net** | **781-735-0228** |

Mail and Fax

February 28, 2005

Mr. Jack J. Mikels
1 Batterymarch Park
Suite 309
Quincy, MA  02169-7454

### Re:  Termination Notice to Carneiro Donuts, Inc.

Dear Jack:

As you know, I represent Carneiro Donuts and Manuel Carneiro to whom you sent a Notice of Termination dated February 22, 2005.  Mr. Carneiro can not and does not accept or agree with your termination of his Honey Dew franchise agreement located at 460 Allens Ave., Providence, RI and asks that you immediately rescind this termination notice.

The items noted in the two recent inspections to which you refer have been completely or will soon be substantially corrected.  Mr. Carneiro asks for a meeting with Mr. Bowen, yourself and myself to clear up any misunderstandings or specify any corrections to his operations which you feel may still need to be remedied.   Your office or mine is acceptable to us.  Mr. Carneiro wishes to cooperate and comply with the requirements and responsibilities of his Honey Dew franchise and looks forward to a long, co-operative and prosperous relationship with Honey Dew Donuts, Inc.

Please contact me as soon as convenient to set the requested meeting so that both parties may move forward in a positive and productive manor.

Sincerely,

Kevin R. McCarthy

Cc:  Manuel Carneiro
      Robert P. Bowen

# JACK MIKELS & ASSOCIATES, LLP

**1 BATTERYMARCH PARK  •  SUITE 309  •  QUINCY, MASSACHUSETTS 02169-7454**

*Telephone: 617.472.5600  •  Telecopier: 617.472.5875  •  E-Mail: jmikels@gis.net*

|  | JACK J. MIKELS |
| March 4, 2005 | MICHAEL A. WIRTZ |

*Via Facsimile 781.735.0228*
Kevin R. McCarthy, Esquire
155 Fair Oaks Lane
Cohasset, MA 02025

**ROCHELLE NELSON MIKELS**
**JANELL E. DE GENNARO**
*ATTORNEYS AT LAW*

     Re:    Carneiro Donuts, Inc.

Dear Kevin:

    I am in receipt of your letter of February 28, 2005. I cannot comply with your request to rescind the termination notice, as the notice follows a series of defaults which the franchisee has failed to cure. We do agree that a meeting may be helpful and we are hopeful that we can get this relationship back on track. If so, we would be willing to enter into a mutually agreeable Reinstatement Agreement.

    Mr. Bowen and I have reserved 10:30 a.m. on Tuesday, March 8, 2005 for a meeting in my office. If this date is not convenient, please let me know immediately.

    Mr. Carneiro's letter of March 1, 2005 requested a copy of the real estate tax bill. I will ask Mr. Bowen to bring a copy to the closing.

    My assistant also advises that we have written several times to request an insurance certificate from Mr. Carneiro. In advance of the meeting, I would appreciate you arranging to have his insurer fax me certificates of insurance for both locations covering the period from the beginning of the operation for Park Avenue, closure of the operation and for Allen's Avenue, going forward.

    Your client has forwarded several payments. Please note that these are being accepted without waiver of our rights pursuant to the Notice of Termination and the various notices of default.

    I look forward to seeing you.

            Very truly yours,

            Jack J. Mikels

JJM/ela
cc:   Robert P. Bowen, President – Via Fax
f/cv/j/05/030505

**EXHIBIT F**

<div align="center">

**Kevin R. McCarthy**
**Attorney at Law**
**155 Fairoaks Lane**
**Cohasset, Massachusetts  02025**

</div>

| **Telephone** | **E-mail** | **Fax** |
|---|---|---|
| **781-383-0639** | **kemccar68@comcast.net** | **781-735-0228** |

Mail

March 8, 2005

Mr. Jack J. Mikels
1 Batterymarch Park
Suite 309
Quincy, MA  02169-7454

<div align="center">

**Re:  Termination Notice to Carneiro Donuts, Inc.**

</div>

Dear Jack:

      As you know, Mr. Carneiro could not make the meeting date of March 8 you suggested I your March 4 letter due to a medical appointment.  Mr. Carneiro still requests the meeting in order to address misunderstandings regarding his operations, specify all the corrections which may need to be remedied and lay the framework for a productive and prosperous franchisee/franchisor relationship going forward.

      Please provide us with two dates and times which are best for you and Mr. Carneiro and myself will make ever effort to pick one of the dates.  Thank you.

Sincerely,

Kevin R. McCarthy

Cc:  Manuel Carneiro
     Robert P. Bowen

EXHIBIT F

# CARNEIRO DONUTS, INC.

460 Allens Avenue – Providence, RI  02905
(401) 785-4524

Attorney Jack J. Mikels
1 Batterymarch Park – Suite 309
Quincy, MA  02169

Dear Mr. Mikels:

Enclosed are checks in the amount of $ 3,349.11.   These checks are for royalties, service fees and rent for the weeks ending 2/13/05 and 2/20/05 as you listed in your February 22, 2005 Notice of Default and hereby cures any remaining defaults noted in your letter.   Below is a list of each item being paid or which has been paid, and which you specified, along with the amount you noted.

The water and sewer bills noted in the Notice of Default in the amount of $121.28, $194.38 and $89.20 have already been paid.  Also, real estate taxes in the amount of $1,386.90 were mentioned as being delinquent.  I do not recall receiving this bill and would appreciate it if you could send me another copy so that I am aware of what these taxes are for and will immediately remit any payments I owe.

If you wish to discuss this matter please feel free to contact me at 401-225-6608 or my attorney Kevin R. McCarthy at 781-383-0639.   Thank you.

| Item | Amount Paid |
|---|---|
| Bowen Investments, Inc. – w/e 2/13/05 | $ 1,364.10 |
| Honey Dew Advertising – w/e 2/13/05 | 217.44 |
| Bowen Investments, Inc. – 21st Equipment Payment | 100.00 |
| Bowen Investments, Inc. – w/e 2/20/05 | $ 1,353.07 |
| Honey Dew Advertising – w/e 2/20/05 | 214.50 |
| Bowen Investments, Inc. – 22nd Equipment Payment | 100.00 |

Sincerely,

Manuel Carneiro
President

Cc:  Kevin R. McCarthy



# JACK MIKELS & ASSOCIATES, LLP

E-MAIL COVER SHEET

Date: March 16, 2005

To: Kevin McCarthy, Esq.

From: Jack J. Mikels

Phone: (617) 472-5600 Fax: (617) 472-5875 E-Mail: jmikels@gis.net

Re: Carneiro Donuts, Inc.

<u>Message</u>: Kevin

This matter appears to be taking a turn for the worse. Unless there has been payment since I last communicated with Mr. Bowen, the store will be three weeks behind this Friday. There are also $1386.90 in real estate taxes, $14.00 in bank charges, $161.69 for a sewer bill and $1002.60 for AA Sign, all overdue, plus $7,479.85 due for DMX. We also have not been provided with proof of insurance, repeatedly requested.

Mr. Bowen was willing to meet, a meeting Mr. Carneiro cancelled. We offered again to meet, if the defaults were cured, and they were not. Although the door is open for negotiations, I see no evidence that Mr. Carneiro is interested in or has the ability to correct this situation. If not, please let me know whether the keys will be turned over voluntarily or whether litigation will be required.

Jack J. Mikels
031605jjm

cc: RPB, President

*If you do not receive all of the above pages, please call (617) 472-5600 (collect, if a toll call) and ask for the above-named operator.*

CONFIDENTIALITY NOTICE

*The documents accompanying this page contain confidential information, which may be legally privileged. The information is intended only for the use of the listed recipient named above. If you are not the named recipient above, you are hereby notified that any disclosure, copying, distribution or taking of any action in reliance upon the contents hereof, except direct delivery to the intended recipient named above, is strictly prohibited. If you have received this E-Mail in error, please notify us immediately by telephone or arrange for return of the original documents to us.*

3/16/2005

# EXHIBIT

**Kevin R. McCarthy**
**Attorney at Law**
**155 Fairoaks Lane**
**Cohasset, Massachusetts  02025**

| Telephone | E-mail | Fax |
|---|---|---|
| 781-383-0639 | kemccar68@comcast.net | 781-735-0228 |

MAIL

March 18, 2005

Mr. Jack J. Mikels
1 Batterymarch Park
Suite 309
Quincy, MA  02169-7454

**Re:  Termination Notice to Carneiro Donuts, Inc.**

Dear Jack:

In response to your March 16, 2005 letter to me:

1. Mr. Carneiro advises me that he has fully paid all franchise fees that are due.  The last two weeks of which have been sent to Mr. Bowen's office.  Please advise if you want the fees sent to your office or to Bowen Investments in the future.

2. You again mention a $ 1386.90 bill for real estate taxes and Mr. Carneiro again asks you for a copy of this bill and an explanation as to what its for and for what period of time.  He needs to see what is due for the period of time he has occupied the shop.  Reviewing and discussing this bill is one of the matters he wants to resolve at his requested meeting with Mr. Bowen.

3. The $ 161.69 sewer bill you note is a new demand on your part.  It seems that each time Mr. Carneiro pays monies you demand you then seek new monies and make new demands.  This is unacceptable and unfair.  Please send the new sewer bill to Mr. Carneiro.

4. You note and demand payment of $ 1002.60 for AA Sign.  Again this is a new demand.  Apparently, Bowen Investments instructed AA Sign to remove the Honey Dew sign from Mr. Carneiro's  Cranston location.  This was done after your client did not renew the lease and several days before the lease and franchise expired.  This bill was generated at Mr. Bowen's initiation and without consultation with or advisement to Mr. Carneiro.  This unilateral action beached Mr. Carneiro's franchise agreement and has caused him financial damage.  We wish to discuss this matter and the bill at our oft requested meeting with Mr. Bowen.

5.  Mr. Carneiro never cancelled a meeting with Mr. Bowen.  He advised you that the one meeting date you offered, on 4 days notice, was impossible due to a medical appointment.   For the third time, we again ask for a meeting with Mr. Bowen to review and resolve all operational and financial matters so that both parties can move ahead in a profitable and prosperous manor.   Any reasonable concept of good faith and fair dealing with a franchisee encompasses meeting and communicating clearly and consistently with that franchisee – and you are failing to meet or discuss the resolution of important business matters with Mr. Carneiro – which is a breach of his right to be dealt with fairly and in good faith by Honey Dew Associates and Bowen Investments.  Again, please provide me with at least two times and dates which would be convenient for you to meet with Mr. Carneiro and we will make every reasonable effort to accommodate one of them.

6.  Your letter also makes a new demand for $ 7,479.85 due for DMX.   Again, please explain what this new matter is all about.  Mr. Carneiro can not and will not simply send you monies upon your demand and threat to immediately terminate his franchise agreement without an understanding, explanation and back-up documentation to show what the money is for and the basis of your demand for payment.

7.  Unfortunately, in your letter, you threaten litigation with Mr. Carneiro over the above noted matters.  I would urge you, Mr. Bowen, Honey Dew Investments and Honey Dew Associates, Inc. to take pause and reflect carefully before you initiate litigation with Mr. Carneiro.   As you know, such litigation often involves complaints, answers, counterclaims, motions, discovery, summary judgment etc. etc.  Such litigation is often very expensive, time consuming and stressful for all parties.  We wish to seek and avoid protracted litigation and again ask for a meeting with Mr. Bowen in order to move ahead together and in harmony.   Your demands that Mr. Carneiro resolve all your alleged violations before meeting with him is unfair, if not unconscionable, as a productive and consultative meeting is necessary in order to help him understand and formulate a clear resolution to any alleged violations of his franchise agreement.

    Please provide us with two dates and times which are best for you and Mr. Carneiro and myself will make every reasonable effort to pick one of the dates.   Mr. Carneiro can not and does not accept the validity of your termination notices and hereby reserves all his legal rights.  Thank you.

Sincerely,

Kevin R. McCarthy

Cc:  Manuel Carneiro
     Robert P. Bowen
     Richard J. Bowen, HDA

**EXHIBIT** 7

## Kevin R. McCarthy
**Attorney at Law**
**155 Fairoaks Lane**
**Cohasset, Massachusetts 02025**

| Telephone | E-mail | Fax |
|---|---|---|
| 781-383-0639 | kemccar68@comcast.net | 781-735-0228 |

MAIL

March 22, 2005

Ms. Janell E. De Gennaro
1 Batterymarch Park
Suite 309
Quincy, MA 02169-7454

**Re: Cease and Desist Notice to Carneiro Donuts, Inc.**

Dear Janell:

In response to your March 17, 2005 letter to Carneiro Donuts, Inc:

1.  Mr. Carneiro has cured the items related to the January 27, 2005 Notice of Default and his shop operations are not in default of the franchise agreement. Any termination of his franchise based on such inspection defaults is unjust, unfair and unwarranted. Mr. Carneiro is not in default of his franchise agreement.

2.  Mr. Carneiro has asked for a meeting with Mr. Mikels and Mr. Bowen to review any and all operational or financial concerns related to his franchise agreement so that any remaining issues can be resolved and both parties can to co-operate and prosper. We expect to have this meeting shortly and are awaiting dates from Mr. Mikels.

3.  Mr. Carneiro is not " willfully", or in any other manor, infringing on any of HDA's Marks.

Please contact me with any questions.

Sincerely,

Kevin R. McCarthy

Cc: Manuel Carneiro
Robert P. Bowen
Richard J. Bowen
Jack Mikels

**EXHIBIT**

# JACK MIKELS & ASSOCIATES, LLP

1 BATTERYMARCH PARK • SUITE 309 • QUINCY, MASSACHUSETTS 02169-7454
*Telephone: 617.472.5600 • Telecopier: 617.472.5875 • E-Mail: jmikels@gis.net*

JACK J. MIKELS
MICHAEL A. WIRTZ

ROCHELLE NELSON MIKELS
JANELL E. DE GENNARO
*ATTORNEYS AT LAW*

April 5, 2005

*VIA U.S. MAIL*

Kevin R. McCarthy, Esq.
155 Fairoaks Lane
Cohasset, MA 02025

*Re: Carneiro Donuts, Inc.*

Dear Attorney McCarthy,

I am in receipt of your letter to this office dated March 18, 2005, in which you indicate that your client, Mr. Carneiro, does not have copies of the bills for the real estate taxes and sewer bill. I have enclosed herein copies of these bills and the cover letters by which they were previously sent to your client. Additionally, I have enclosed the sign removal bill and cover letter and the letters regarding amounts owed for DMX Music and the restaurant equipment. Please send payment in full of these bills immediately.

Mr. Bowen has made efforts to meet with you and your client in the past, but the meeting was cancelled at your client's request. He is not interested in having a meeting with your client at the time. As you are aware, Mr. Carneiro has been terminated as of February 22, 2005. I want to take this opportunity to re-emphasize that Mr. Carneiro's right and license to operate under the name and trademarks of Honey Dew Associates, Inc. at 460 Allens Avenue, Providence, RI (the "Premises"), has ended. Our investigation reveals that Mr. Carneiro continues to operate at the Premises using our Marks, despite this cessation of the right to do so. Mr. Carneiro should cease and desist from this unauthorized infringement and turn over the keys because your client has consistently failed to cure payment defaults.

If Mr. Carneiro does not make full payment to Bowen Investment, Inc. ("BII") immediately on the aforementioned bills and cease and desist operating at the Premises, BII will take steps to enforce its legal rights and Mr. Carneiro's obligations.

Very truly yours,

Janell E. De Gennaro

cc: Bob Bowen, *President, Bowen Investment, Inc.*
F:cv/jan05/033005

**EXHIBIT K**

## Bowen Investment, Inc.
1215 Reservoir Avenue
Cranston, Rhode Island 02920
Tel: (401) 228-6828 • Fax: (401) 228-6829

March 7, 2005

Mr. Manny Carneiro
Honey Dew Donuts
460 Allen's Avenue
Providence, RI 02905

Dear Manny:

Enclosed is a copy of an invoice from AA Sign for taking down Honey Dew Donut signs at your Park Avenue, Cranston franchise. As we have already paid this invoice, please remit payment of $1002.60 directly to Bowen Investment.

Thank you for your prompt attention to this matter. If you have any questions, please do not hesitate to call.

Sincerely,

Roberta J. Porter
Accountant

Enc.



Enjoy
The Loc
Flavor

17:22    FROM: BOWEN           401-228-6829           TO: 16174725875        P.8

ntact Name:  BOB BOWEN
ntact Number: 401 228-6828
Customer No.:  BOWENB
Salesperson:

Invoice Date:  02/28/05
Invoice No.:  5021703H
PO Number:



AUBURN SIGN
CENTREDALE SIGN
DARLINGTON AWNING & NEON    221 JEFFERSON BOULEVARD ▲ WARWICK, RI 02888

sign & awning
SIGNING NEW ENGLAND SINCE 1946

401.738.8055/voice
401.738.8244/fax

accounting@aathriftysign.com
www.aathriftysign.com

Bill To:

BOWEN INVESTMENT
ATTN: BOB BOWEN
1215 RESEVOIR AVENUE
CRANSTON, RI 02920

Job Location:

HONEY DEW
939 PARK AVENUE
CRANSTON, RI

| Quantity | Description | Unit Price | Extended Amount |
|---|---|---|---|
| | **REPLACE TWO FACES FROM PYLON AND REPLACE WITH BLANK LEXAN PANEL. REPLACE ONE FACE FROM BLDG. & REPLACE WITH BLANK LEXAN PANEL. REMOVE SCRAP INTERIOR ALUMINUM SOFFIT PANEL.** | | |
| | **NO TRAVEL CHARGES.** | | |
| 1.00 | **ONE 2 X 10 LEXAN PANEL.** | 200.00 | 200.00 |
| 2.00 | **TWO 3 X 8 LEXAN PANELS.** | 240.00 | 480.00 |
| | **TWO MAN AERIAL @ 1.6 HRS.** | | 275.00 |
| | Item Total | | 955.00 |
| | Plus Sales Tax | | 47.60 |
| | Invoice Total | | 1,002.60 |
| | Less Payments Received | | 0.00 |
| | Total Due    $ | | 1,002.60 |

TERMS:  **BALANCE DUE**
         **UPON COMPLETION**

Please Make Checks Payable to: AA/THRIFTY SIGN-AWNING INC.

**CUSTOMER**

**EXHIBIT**

<div align="center">

**Kevin R. McCarthy**
**Attorney at Law**
**155 Fairoaks Lane**
**Cohasset, Massachusetts  02025**

</div>

| **Telephone** | **E-mail** | **Fax** |
|---|---|---|
| **781-383-0639** | **kemccar68@comcast.net** | **781-735-0228** |

MAIL

April 20, 2005

Ms. Janell E. De Gennaro
1 Batterymarch Park
Suite 309
Quincy, MA  02169-7454

<div align="center">

**Re:  Carneiro Donuts, Inc.**

</div>

Dear Janell:

In response to your April 5, 2005 letter to Carneiro Donuts, Inc:

1.  We are perplexed at the DMX Music bill you say is due.   Mr. Carneiro advises me that he is current on his $100 weekly payments to Bowen Investments.  Please advise me of what specific weeks are overdue.   Additionally, there is no provision in the letter you enclosed that would allow you to call the note if it was overdue. On what basis are you asking for payment of this bill to Bowen Investment under the franchise agreement?   This is a separate matter and it appears highly improper for you to attempt collection of an alleged debt under your franchise agreement when the alleged debt was not incurred under the franchise agreement.

2.  In the future, please communicate with Mr. Carneiro under separate cover about any matter regarding DMX Music or Rhode Island Restaurant.   As well, if you have any contract or arrangement with DMX and Rhode Island Restaurant please send us a copy of any such agreement or advise us immediately if you have an arrangement by which Bowen Investment profits in any manor from the sale of their goods to Mr. Carneiro.

3.  You continue to misrepresent the facts regarding  Mr. Carneiro's request for a meeting with his franchisor.   He never cancelled a scheduled meeting and he again requests to meet with his franchisor, Bowen Investments or Mr. Bowen, to discuss franchise related operational and financial business issues.   Please be advised that we consider your client's refusal to meet with a franchisee to be a serious breach of the franchise agreement as well as an unfair business practice.

4.  Why do you send Mr. Carneiro the AA Sign bill of $ 1002.60?   As we previously advised you, Mr. Bowen incurred this bill at his own unilateral initiative and had the signs removed from the Park Street shop several days before the franchise ended.   This bill is the responsibility of Mr. Bowen, however Mr. Carneiro is open to making a contribution toward this bill and will gladly discuss  this issue when we meet.

5.  Again Mr. Carneiro does not accept and contests your unlawful termination of his franchise agreement and hopes to meet with Mr. Bowen to clarify and resolve any outstanding issues.

    Mr. Carneiro reserves all his legal rights in this or any matter related to his Honey Dew franchise agreement.

        Please contact me with any questions.

                            Sincerely,

                            Kevin R. McCarthy

Cc:  Manuel Carneiro
     Robert P. Bowen

2

FROM : MARIO J.CARNEIRO,C.P.A., Ltd.    FAX NO. : 4014353130    Apr. 29 2005 09:28AM  P1

## MARIO J. CARNEIRO, C.P.A., LTD
577 WARREN AVENUE, SUITE 200
EAST PROVIDENCE, RI 02914
TEL: (401) 434-6996 FAX: (401) 435-3130

# facsimile transmittal

| | | | |
|---|---|---|---|
| **To:** | Mr. Kevin McCarthy, Esquire | **Fax:** | (781) 735-0228 |
| **From:** | Mario J. Carneiro | **Date:** | April 29, 2005 |
| **Re:** | Manuel Carneiro | **Pages:** | 2  (including cover sheet) |
| **CC:** | | | |

☐ **Urgent**   ☐ **For Review**   ☐ **Please Comment**  ☐ **Please Reply**       ☐ **Please Recycle**

**Please note:** If you do not receive all copies or not legible, please call me as soon as possible.

### MESSAGE OR INSTRUCTIONS

Dear Kevin,

To follow is a one page report from the Rhode Island Department of Health that Manuel Carneiro received on April 25, 2005.  As noted on the report, there were only two minor issues.   Please review the report.

I look forward to speaking with you today at our 3:00 conference call.

KEVIN,
MANNY PASSED THE HEALTH
INSPECTION AND ALREADY
RECEIVED THE HEALTH
DEPT. LICENSE.

MARIO

TALK TO YOU AT 3 PM

FROM : MARIO J.CARNEIRO,C.P.A., Ltd.   FAX NO. : 4014353130          Apr. 29 2005 09:28AM  P2



Rhode Island Department of Health
Office of Food Protection
Inspection Narrative

Phone: (401) 222-2750
Fax: (401) 222-4775

| ESTABLISHMENT NAME | | | OUT | 9:30 | F.F. | RISK TYPE | COMPLETE | MONTH | DAY | YEAR |
|---|---|---|---|---|---|---|---|---|---|---|
| Honeydew Donuts | | | IN | 9:00 | 188 | 20 | C  I | 4 | 25 | 05 |
| ADDRESS | | | TOTAL | | KIND | FIND | ACTION 1 | ACTION 2 | PREFIX | NUMBER |
| 404 Pleasant | | | TRAVEL TIME | 30 min | 12 | 2 | 1 | D  E  VC  C | FSV | Pending |
| CITY        Pov. RI | | | | | | | | | | |
| Critical (X) | Repeat (X) | Code Reference | | Explanation of Citations | | | | | | Correction Date |

|  |  |  | FSV pending, Change of owner | |
|---|---|---|---|---|
| | | | Owner: Manny Carneiro | |
| | | | — Coffee Donut Shop in Providence — | |
| | | | Temperatures: | |
| | | | Front Door Ambient 40°F. | |
| | | | Freezer Ambient    10°F | |
| | | | American Cheese   36°F | |
| | | | Ham        40°F | |
| | | | Front Cream Cheese ambient 38°F | |
| | | | Cream Cheese  38°F | |
| | | | — Facility uses deli tissue for | |
| | | | retail serving donuts/muffins/bagels | |
| | | | — Using gloves for sandwich assembly | |
| | | | — 3 Bay Sink using chlorine as | |
| | | | sanitizer to 100 ppm. | |
| | | | — Service Sink in place — | |
| | | | — Ice Machine has air gap | |
| | 4-6 | | • Door on ice machine has some | 4/25 |
| | | | Accumulation of mold. | |
| | 6-3 | | • No paper towel in back hand sink | 4/25/05 |
| | | | Establishment met minimum requirements at | |
| | | | RIDOH at time of inspection — | |

☐Follow-up ☑Super Meeting Request ☐Official Warning ☐Formal Admin. Hearing ☐File ☐Other  Date:_____ Super:_____

Report Acknowledged By                          Agent Signature                          Page of Pgs

All local permits must
be obtained

Inspection Narrative                          IN-A (Rev. 02/03 TN)

EXHIBIT N

**Kevin R. McCarthy**
**Attorney at Law**
**155 Fairoaks Lane**
**Cohasset, Massachusetts  02025**

| Telephone | E-mail | Fax |
|-----------|--------|-----|
| 781-383-0639 | kemccar68@comcast.net | 781-735-0228 |

MAIL

April 25, 2005

Mr. Jack J. Mikels
1 Batterymarch Park
Suite 309
Quincy, MA  02169-7454

**Re:  Carneiro Donuts, Inc.**

Dear Jack:

Attached is the April 12, 2005 letter, and attachments, from Amy Monahan which Mr. Carneiro forwarded to me.   With regard to 935 Park Ave.:

1.  You are requesting that Mr. Carneiro add the property owner, Park Place Properties, Inc. as an additional insured.  I do not see where this is a requirement under Section IX of the franchise agreement.   Please advise me as soon as possible on what legal or any other basis Mr. Carneiro is required to provide insurance coverage to the property owner at 935 Park. Ave.

2.  This location was closed and the franchise terminated several months ago – please advise if you still even need any of the requested information for a closed and terminated franchise, and on what basis.

With regard to 460 Allens Ave.:

3.  You are requesting that Mr. Carneiro add Bowen Investment Inc., as the property owner, and Citizens Bank as additional insureds.  I do not see where this is a requirement under Section IX of the franchise agreement.   Please advise me as soon as possible on what legal or any other basis Mr. Carneiro is required to provide insurance coverage to the Bowen Investment Inc., as the property owner, and Citizens Bank as additional insureds.

Finally, it is to discuss and clarify such issues as these that Mr. Carneiro has been requesting a meeting with yourself and Mr. Bowen.  Mr. Carneiro wishes to comply with his franchise agreement and seeks a meeting to clarify and understand all operational and financial issues

with Honey Dew Donuts.   Until you agree to such a meeting we request that you answer our above questions in writing.  As well, feel free to call me anytime to discuss.

Sincerely,

Kevin R. McCarthy


Cc:  Manuel Carneiro
      Amy Monahan
      Tracy Botelho

2

EXHIBIT C

# JACK MIKELS & ASSOCIATES, LLP

**E-MAIL COVER SHEET**

**Date:** May 12, 2005

**To:** Kevin McCarthy, Esq.

**From:** Jack J. Mikels

**Phone:** (617) 472-5600 **Fax:** (617) 472-5875 **E-Mail:** jmikels@gis.net

**Re:** Carneiro

<u>Messa</u>ge: Kevin

  I understand that Mr. Carneiro never did bring his account up to date, but he did come within a week and he repaid the other bills we had requested. We took this as a sign of his good faith and initiated the inspection. This time, the shop passed.

  Under the circumstances, we are willing to offer reinstatement. A proposed Reinstatement Agreement is enclosed for your review. A copy has also been sent to Mr. Bowen for his comments.

  On the insurance issue, we are checking with BII's insurer, but Mr. Bowen believes he and Mr. Carneiro decided that Mr. Carneiro could obtain fire insurance, rather than our obtaining the coverage and billing him for it. If Mr. Carneiro's recollection is the same, then we need proof of coverage, listing both BII and its lender as insureds. If not, let me know.

  Jack
  051205jjm

*If you do not receive all of the above pages, please call (617) 472-5600 (collect, if a toll call) and ask for the above-named operator.*

*CONFIDENTIALITY NOTICE*
*The documents accompanying this page contain confidential information, which may be legally privileged. The information is intended only for the use of the listed recipient named above. If you are not the named recipient above, you are hereby notified that any disclosure, copying, distribution or taking of any action in reliance upon the contents hereof, except direct delivery to the intended recipient named above, is strictly prohibited. If you have received this E-Mail in error, please notify us immediately by telephone or arrange for return of the original documents to us.*

**EXHIBIT Q**

<div align="center">

**Kevin R. McCarthy**
**Attorney at Law**
**155 Fairoaks Lane**
**Cohasset, Massachusetts 02025**

</div>

| **Telephone** | **E-mail** | **Fax** |
|---|---|---|
| 781-383-0639 | kemccar68@comcast.net | 781-735-0228 |

MAIL

May 4, 2005

Mr. Jack J. Mikels
1 Batterymarch Park
Suite 309
Quincy, MA  02169-7454

<div align="center">

**Re:  Carneiro Donuts, Inc.**

</div>

Dear Jack:

In response to your April 27, 2005 letter allow me first to correct several of your misstatements:

1. Mr. Carneiro has never cancelled any meeting that was mutually scheduled with Bowen Investment, Inc.  Mr. Bowen and Bowen Investment have consistently refused Mr. Carneiro's  repeated requests for a meeting in order to resolve all operational and financial issues between the parties.   In fact, Ms. De Gennaro specifically repeated the refusal to meet in her April 5, 2005 letter to me.

2. Your April 27, 2005 states that your unchanging goal is a negotiated mutual reinstatement.   This is the first time you have made such a statement and, in fact, your previous correspondence has emphasized turning over the keys or litigation.   Please send me a copy of your proposed Reinstatement Agreement so that I may review it on Mr. Carneiro's behalf.

3. I am advised that Mr. Carneiro is not several weeks in arrears – please advise us of exactly what weeks you claim Mr. Carneiro is in arrears.  He advises me that he either has or will shortly pay you any outstanding bills.

4. Mr. Carneiro's shop is now and always has been operating according to the Honey Dew standards.  You do not need a written invitation to inspect.  You are welcome to inspect his shop at any reasonable business time and hopefully with a helpful attitude and the proper goal of enhancing his profits and customer satisfaction

Attorney Mikels                    Page 2                          5/3/2005

With regard to the other items in your letter:

5.  We are still concerned about the DMX, Rhode Island Restaurant and AA Sign bills. These items add up to over $ 10,000 in amounts you have been unjustifiably trying to make Mr. Carneiro pay under the threat of terminating his franchise agreement and initiating litigation.  These amounts dwarf the other financial items you have been asserting as due.  **We again repeat our request that you advise us immediately if Mr. Bowen, Bowen Investments or Honey Dew Associates has any contract or arrangement with DMX, AA Sign and/or Rhode Island Restaurant by which Mr. Bowen, Bowen Investments or Honey Dew Associates profits or has profited in any manor from the sale of these company's goods to Mr. Carneiro or any other franchisee.  As you know, Mr. Carneiro is entitled to this information and the prompt disclosure which he is now requesting pursuant to the FTC Rule and the UFOC guidelines.**

Again, Mr. Carneiro does not accept and contests your unlawful termination of his franchise agreement and hopes to meet with Mr. Bowen to clarify and resolve any outstanding issues. We demand that you immediately rescind the improper termination of Mr. Carneiro's franchise agreement. The actions of your clients implicate several causes of action including, but not limited to, G. L. c. 93A unfair and deceptive acts and practices, commercial extortion, violation of the FTC Rule and the Rhode Island Franchise Investment Act, violations of the implied covenant of good faith and fair dealing and breach of contract.  Accordingly, Mr. Carneiro reserves all his legal rights in this or any matter related to his Honey Dew franchise agreement.

Feel free contact me anytime to discuss this situation.

Sincerely,

Kevin R. McCarthy

cc:  Manuel Carneiro
     Janell De Gennaro
     Robert P. Bowen

**EXHIBIT**

FROM : MARIO J.CARNEIRO,C.P.A., Ltd    FAX NO. : 4014353130    May. 12 2005 12:53PM P2



# HONEY DEW DONUTS
## CUSTOMER SATISFACTION STANDARDS EVALUATION

SHOP LOCATION                                                DATE: 05-11-05

_Allen's Ave._

_(R2A)_

| | TOTAL POINTS | - N/A | = TOTAL AVAILABLE | TOTAL RECEIVED | % |
|---|---|---|---|---|---|
| **Maintenance & Cleanliness** | | | | | |
| Exterior Building, Signage, and Landscaping | 39 | 0 | 39 | 13 | 33 |
| Retail Area | 42 | 2 | 40 | 37 | 93 |
| Service and Prep | 72 | 2 | 70 | 68 | 89 |
| Rest Rooms | 47 | 0 | 47 | 42 | 89 |
| Kitchen and Storage | 101 | 14 | 87 | 69 | 79 |
| Delivery | 20 | 20 | 0 | 0 | 0 |
| **Maintenance & Cleanliness Subtotal** | 321 | 38 | 283 | 223 | 79 |
| **Service** | | | | | |
| Acknowledgement, Greeting and Communication | 46 | 0 | 46 | 46 | 100 |
| Uniform, Grooming and Policies | 75 | 0 | 75 | 55 | 73 |
| Selling Technique | 10 | 0 | 10 | 10 | 100 |
| Filling the Order | 45 | 0 | 45 | 45 | 100 |
| Closing the Sale | 30 | 0 | 30 | 15 | 50 |
| **Service Subtotal** | 206 | 0 | 206 | 171 | 83 |
| **Merchandising and Marketing** | | | | | |
| Exterior | 23 | 0 | 23 | 14 | 61 |
| Interior | 32 | 6 | 26 | 17 | 65 |
| Menu Boards | 23 | 5 | 18 | 13 | 72 |
| Product Merchandising | 135 | 0 | 135 | 120 | 89 |
| **Merchandising and Marketing Subtotal** | 213 | 11 | 202 | 164 | 81 |
| **Product Quality** | | | | | |
| Coffee | 132 | 8 | 124 | 116 | 94 |
| Other Beverages | 35 | 0 | 35 | 35 | 100 |
| Donuts | 142 | 47 | 95 | 85 | 100 |
| Dew Drops | 32 | 6 | 26 | 26 | 100 |
| Muffins | 30 | 6 | 24 | 24 | 100 |
| Bagels | 23 | 10 | 13 | 13 | 100 |
| Sandwiches | 20 | 0 | 20 | 20 | 100 |
| Pastries | 30 | 0 | 30 | 20 | 67 |
| **Product Quality Subtotal** | 444 | 77 | 367 | 349 | 95 |
| **TOTAL** | 1184 | 126 | 1058 | 907 | 86 |

HONEY DEW REPRESENTATIVE                    FRANCHISEE/SHOP MANAGER

(SIGNATURES)                                                (SIGNATURES)

Mark Wright 161

(PRINT NAME)          (DATE)              (PRINT NAME)          (DATE)

**EXHIBIT R**

<div align="center">

**Kevin R. McCarthy**
**Attorney at Law**
**155 Fairoaks Lane**
**Cohasset, Massachusetts  02025**

</div>

| **Telephone** | **E-mail** | **Fax** |
|---|---|---|
| **781-383-0639** | **kemccar68@comcast.net** | **781-735-0228** |

MAIL

May 20, 2005

Mr. Jack J. Mikels
1 Batterymarch Park
Suite 309
Quincy, MA  02169-7454

<div align="center">

**Re:  Carneiro Donuts, Inc.**

</div>

Dear Jack:

In response to your May 4, 2005 and May 12, 2005 letters to me:

1.  We do not consider the issues we have raised as "meaningless side issues". They are of significant importance to Mr. Carneiro.  We remain very concerned about the DMX, Rhode Island Restaurant and AA Sign bills.   These items add up to over  $ 10,000 in amounts you have been unjustifiably trying to make Mr. Carneiro pay under the threat of terminating his franchise agreement and initiating litigation.   These amounts dwarf the other financial items you have been asserting as due.   We again repeat our request that you advise us immediately if Mr. Bowen, Bowen Investments or Honey Dew Associates has any contract or arrangement with DMX, AA Sign and/or Rhode Island Restaurant by which  Mr. Bowen, Bowen Investments or Honey Dew Associates profits or has profited in any manor from the sale of these company's goods to Mr. Carneiro or any other franchisee.

    As you know, Mr. Carneiro is entitled to this information and it appears that it should have been disclosed to Mr. Carneiro in the UFOC guidelines pursuant to the FTC Rule and the Rhode Island Franchise Investment Act.   We are complaining specifically about your client's business practices regarding improper conduct relating to vendors and we want answers to our legitimate questions and concerns.

2.  An equipment bill of $4333.50 from the Rhode Island Restaurant Equipment Co. was included in the April 5, 2005 payment demand letter from Ms. DeGennaro.

Attorney Mikels                    Page 2                    5/20/2005

3.  You demanded payment of the DMX bill in your February 22, 2005 letter to me. Your demands for the payment of monies not due, unrelated to the franchise agreement and under the threat of termination is unlawful.

4.  As you know, Mr. Carneiro could not attend the meeting you scheduled because he had a prior medical appointment.  You have refused his frequent requests for a meeting.

5.  With regard to the fire insurance, Mr. Carneiro is researching this with his insurance carrier.  He does not recall any agreement with Mr. Bowen regarding his responsibility to obtain and pay for fire insurance.   Please advise me of the results of Mr. Bowen's inquiry with his insurance company.

6.  Mr. Carneiro declines to sign your proposed reinstatement agreement.   Mr. Carneiro does not accept and contests your unlawful termination of his franchise agreement and hopes to meet with Mr. Bowen to clarify and resolve any outstanding issues.  We demand that you immediately rescind the improper termination of Mr. Carneiro's franchise agreement and compensate Mr. Carneiro for all his damages and costs.

    As always, Mr. Carneiro reserves all his legal rights in this or any matter related to his Honey Dew franchise agreement.  Feel free contact me anytime to discuss this situation.


                              Sincerely,

                              Kevin R. McCarthy



cc:  Manuel Carneiro

                                                                      2

EXHIBIT C

**Kevin R. McCarthy**
**Attorney at Law**
**155 Fairoaks Lane**
**Cohasset, Massachusetts 02025**

| Telephone | E-mail | Fax |
|---|---|---|
| **781-383-0639** | **kemccar68@comcast.net** | **781-735-0228** |

MAIL

June 3, 2005

Mr. Jack J. Mikels
1 Batterymarch Park
Suite 309
Quincy, MA 02169-7454

**Re: Carneiro Donuts, Inc. and BII**

Dear Jack:

    In response to your May 24, 2005 letter and Mr. Bowen's May 27, 2005 Notice of Default and Notice of Termination:

  1.  I understand that Mr. Carneiro is current on his $ 100.00 weekly equipment payment to you.  Please advise exactly what weeks you believe are overdue.  Any defaults should be cured.

  2.  With regard to the AA sign bill, I understand that the sign was pulled down several days before the shop was closed -- creating a considerable hardship and loss to Mr. Carneiro.  Also, Mr. Bowen did this unilaterally and without consultation or notice to Mr. Carneiro.  In light of this, Mr. Carneiro will offer to split the cost of this sign removal and pay Mr. Bowen $500.00 on the bill.  Please advise if this is agreeable and a check will be sent to Mr. Bowen disposing of this issue.

  3.  With regard to the improper vendor relationship issues, you have never responded to our legitimate questions.  Mr. Carneiro has a right to this inquiry as he never anticipated or expected to be making equipment payments to    Mr. Bowen and BII when he signed his franchise.  Such equipment payments to the franchisor were not disclosed in the UFOC he signed.

    We again repeat our questions to you about the DMX, Rhode Island Restaurant and AA Sign bills.  These items add up to  over $ 10,000 in amounts you have been unjustifiably trying to make Mr. Carneiro pay under the threat of terminating his franchise agreement and initiating litigation.  These amounts dwarf the other financial items you have been asserting as due.  We request that you advise us immediately if Mr. Bowen, Bowen Investments or Honey Dew Associates has any contract or arrangement with DMX, AA Sign and/or Rhode Island Restaurant by which  Mr. Bowen, Bowen Investments or Honey Dew Associates profits or has

Attorney Mikels                    Page 2                    6/3/2005

profited in any manor from the sale of these company's goods to Mr. Carneiro or any other franchisee.

Your refusal to answer legitimate business and franchise related questions from a franchisee is of considerable concern to Mr. Carneiro.

4.  Your reinstatement agreement was rejected largely because it was grossly unreasonable and oppressive.  You ask for inappropriate payments and place Mr. Carneiro in an unfavorable position that allows you to force him to sell his business or relinquish it to you – and also to unjustifiably pay you large sums of money.

5.  Mr. Bowen's May 27, 2005 Notice of Default unfairly and unreasonably asserts default for franchise fees which were apparently due 12 days before the letter.  We will hold Mr. Bowen accountable for any harassment of Mr. Carneiro – especially harassment which closely follows Mr. Carneiro's rejection of an unfair, oppressive "reinstatement agreement".

6.  Mr. Carneiro denies the validity of and rejects Mr. Bowen's May 27, 2005   Notice of Termination.  In previous correspondence you have verified that he has cured any defaults that were valid under the February 22, 2005 default notice – which allowed you to offer reinstatement (please refer to your May 12, 2005 letter).

7.  On the subject of the fees you mention, Mr. Carneiro is concerned about his Advertising Fees.  He has been paying his 2% of sales into the HDA Ad Fund which HDA is supposed to match and then spend on advertising and marketing activities.  However, Mr. Carneiro has never heard from BII or HDA on what these monies are being expended for.  Mr. Carneiro has never received a periodic statement of receipts and expenditures of the Advertising Fund as required by Section X of the franchise agreement.  Pursuant to Section X please send him the most recent Ad Fund statement along with any Ad Fund statement issued by BII or HDA in the last nine (9) months so that he can better understand how his monies are being spent and how his business is being marketed per the franchise agreement.

As always, Mr. Carneiro reserves all his legal rights and feel free contact me anytime to discuss this situation.

Sincerely

Kevin R. McCarthy

cc:  Manuel Carneiro
     Robert P. Bowen, President BII

2

EXHIBIT T

## REINSTATEMENT AGREEMENT

Now come Bowen Investment, Inc. ("BII"), a Massachusetts corporation doing business at with a principal place of business at 1215 Reservoir Avenue, Cranston, RI 02920, Carneiro Donuts, Inc. ("CDI"), a Rhode Island corporation doing business at 460 Allens Avenue, Providence, RI 02905, Cranston East Donuts, Inc. ("CED"), a Rhode Island corporation and Manuel M. Carneiro, a citizen of Rhode Island, residing at 564 Hunt Street, Central Falls, RI 02863 A355 Broad Street, Central Falls, RI ("Carneiro"), and state as follows:

### Recitals

WHEREAS, BII is engaged in the business of operating and franchising coffee and donut shops in Rhode Island known as Honey Dew Donuts® Shops;

WHEREAS, CDI is a franchisee of BII, by its purchase of the Honey Dew Donuts® Shop at 460 Allens Avenue, Providence RI from Allens Avenue Donuts, Inc., Inc., and in connection therewith, CDI executed a Franchise Agreement, and an Agreement Regarding Transfer of Honey Dew Donut Franchise, both dated June 1, 2004 (collectively, the "Franchise Agreement");

WHEREAS, contemporaneously with the execution of the Franchise Agreement, CED purchased the Honey Dew Donuts® Shop at 935 Park Avenue, Cranston, RI (together with the Franchise Agreement, collectively, the "Transaction"),

WHEREAS, in connection with the Transaction, CDI, CEI and Carneiro executed one or more Covenants Not to Compete and Covenants to Protect Trade Secrets and Proprietary Information, dated June 1, 2004 (collectively, the "Covenants");

WHEREAS, in connection with the Franchise Agreement, Carneiro executed a Liability Agreement dated June 1, 2004 (the "Liability Agreement"), by which he is jointly and severally liable for the obligations of CDI to BII;.

WHEREAS, in connection with the Franchise Agreement, CED and CDI executed a Liability and Cross Default Agreement dated June 1, 2004 (the "Cross Liability Agreement"), by which each is jointly and severally liable for the obligations of the other to BII;

WHEREAS, pursuant to the Franchise Agreement, CDI is required to operate in compliance with the provisions of the Operational Excellence Procedure Manual in effect from time to time and to maintain passing grades inspections in accordance with then-applicable store inspection policies;

WHEREAS, CDI defaulted in its obligations to BII by failing to pass various store inspection, which has resulted in BII's forwarding a Notice of Default dated January 27, 2005;

WHEREAS, CDI failed to cure the default specified in said Notice within the time period provided in said Notice and in the Franchise Agreement;

WHEREAS, on February 22, 2005, BII, though counsel, served CDI with a Termination Notice due to its failure to cure its default;

WHEREAS, CDI and Carneiro have requested that the franchise be reinstated and BII is willing to do so, subject to the provisions hereof.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is hereby agreed as follows:

1.      The parties acknowledge and agree that the foregoing Recitals are true and accurate and the said Recitals are hereby incorporated herein by reference.

2.      The provisions of this Agreement shall supersede the provisions of the Franchise Agreement.

3.      <u>Inspections</u>.

(a)     Contemporaneously with the execution hereof, CDI has paid BII the sum of $450.00 for the cost of three inspections, plus $2900.00 for legal fees in connection with its defaults and this Agreement, plus $1062.60 to reimburse BII for costs relating to CED's signage, and agrees to pay $100 per week to BII until it has been reimbursed in full for the bill of DMX Music;

(b)     Following execution, the Franchise Agreement shall be deemed reinstated, except that, for a one year probationary period (the "Probationary Period") from the date hereof, if CDI fails any subsequent inspection, then CDI shall pay BII $300.00 for the cost of the inspection and for a re-inspection and the store will be re-inspected no less than five days thereafter:

(i) If CDI receives a passing score on the re-inspection provided in subparagraph (b), the Probationary Period shall be extended to run one year from the date of said passing score;

(ii)  If CDI does not receive a passing store on any re-inspection, or if, during the Probationary Period, any payment required pursuant to this Agreement or the Franchise Agreement is not made when due, then: (a)  BII and its agents shall be given access to the Premises to clean, repair and restore CDI's business premises to its reasonable satisfaction and CDI shall immediately pay the charges incurred for such work; and (b) CDI shall immediately upon completion for the work actively market its business for sale, utilize its best efforts to sell the business and shall enter into a Purchase

2

and Sale Agreement, to a Buyer reasonably acceptable to BII, within 120 days and must complete the sale within 180 days (the "Sale Period");

        (iii)    During the sale period, CDI shall pay all sums due to BII when due and shall pass any inspections performed in the ordinary course of BII's business; and

        (iv)    Should CDI default in any of the provisions hereof, then it shall relinquish the business to BII (a "Relinquishment"). At the time of any Relinquishment hereunder, CDI shall remain liable to BII for any amounts owed through Relinquishment. The Relinquishment shall be deemed full satisfaction of any and all post-termination monetary obligations of CDI to BII. After Relinquishment, the Covenants shall remain in full force and effect as if the franchise expired as of the date of Relinquishment. As utilized herein, a "Relinquishment" shall mean that CDI shall give the keys to the premises to BII and place BII in possession of the premises, and give BII possession and title to all equipment and inventory therein.

        (c)    All inspections hereunder shall be performed by BII's independent contractor and shall be consistent with the inspection standards applicable to each of BII's comparable franchises. At the time of each inspection, CDI or its employees shall be put in possession of a copy of the report, consistent with BII's current procedures.

        4.    This agreement shall not be interpreted or construed as a waiver of any default in the operation of the shops or violation of the Franchise Agreement which may have existed or which may exist as of the date hereof, other than as provided herein.

        5.    CDI, CED and Carneiro hereby release and discharge BII and Honey Dew Associates, Inc., their successors in interest, assigns, officers, directors, shareholders, agents, servants, attorneys and employees of and from any suits, debts, sums of money, interest, attorney's fees, judgments, accounts, promises, contracts, agreements, actions, causes of action, claims or demands for damages, costs, loss of use, loss of services, expenses, compensation, consequential damage, claims in law or equity, or any other thing whatsoever on account of, or in any way growing out of transactions between the parties including, without limitation, those pertaining arising out of, or in any way relating to the Transaction and/or operation of any franchise by them, such claims being known or unknown, from the beginning of the world to this date, which they ever had, now have or which they, their heirs, executors, administrators, successors or assigns, hereafter can, shall or may have, from the beginning of the world to this date, including, without limitation, claims for breach of contract, breach of fiduciary responsibilities, breach of implied or express covenants, claims relating to HDA's Advertising Fund, violations or alleged violations of Mass. G.L. c. 93A, violations or alleged violations of any law relating to franchising and/or the relationship of the parties hereto, or any claim of any nature whatsoever, and specifically releasing any claims alleged against HDA and BII in United States District Court civil action no: 03-10965-RCL, and the undersigned

3

acknowledge and agree that they shall not participate in said action, either as a Plaintiff or a class member, said claims having been expressly released hereunder.

6.     BII hereby releases and discharges CDI, CED and Carneiro their successors in interest, assigns, officers, directors, shareholders, agents, servants, attorneys and employees of and from any suits, debts, sums of money, interest, attorney's fees, judgments, accounts, promises, contracts, agreements, actions, causes of action, claims or demands for damages, costs, loss of use, loss of services, expenses, compensation, consequential damage, claims in law or equity, or any other thing whatsoever on account of, or in any way growing out of CED's franchising and/or operation of the Honey Dew Donuts® Shop at 935 Park Avenue, Cranston, RI such claims being known or unknown, from the beginning of the world to this date, which they ever had, now have or which the they, their heirs, executors, administrators, successors or assigns, hereafter can, shall or may have, from the beginning of the world to this date, including, without limitation, claims for breach of contract, breach of fiduciary responsibilities, breach of implied or express covenants, or any claim of any nature whatsoever.

7.     CDI, CED and Carneiro hereby ratify and confirm the Franchise Agreement and the Covenants, the Liability Agreement and the Cross Liability Agreement  and agree that such contracts are valid and binding obligations, enforceable in accordance with their terms, and are in full force and effect.

8.     Each of the parties hereto acknowledges that this Agreement has been entered into of his, her or its own volition with full knowledge of the facts as to their respective rights and liabilities and that each is individually familiar and in agreement with these various terms and provisions, and each of the parties hereto further acknowledges and represents that this Agreement is, in all respects, fair, reasonable and proper and that it correctly reflects the wishes and intentions of each party and that each party has had an opportunity to be represented by independent counsel.

9.     This agreement shall be governed and construed pursuant to the laws of the Commonwealth of Massachusetts.

Executed under seal in duplicate, each of which shall be deemed an original, this _____day of _____, 2005.

Bowen Investment, Inc.                    Carneiro Donuts, Inc.


By:_____          By:_____
Duly Authorized                              Duly authorized

4

Carnston East Donuts, Inc.

By:_____          _____
Duly Authorized                                          Manuel Carneiro

f:/amik/bii/forms/rein-Ciummo

5

EXHIBIT U

**Roberta Porter**

| | |
|---|---|
| **From:** | Monica Keaffer [mkeaffer@honeydewdonuts.com] |
| **Sent:** | Sunday, July 17, 2005 11:38 AM |
| **To:** | Roberta Porter |
| **Subject:** | RE: Advertising Fund |

Hi Roberta,

Just wanted to let you know that I received a check #1623 from store #28, Carneiro Donuts, Inc., in the last batch that you sent up that paid only 2% of the sales for w/e 6/26/05.  Can you check into this and see if maybe the other 2% was paid to Bowen Investments.  If it was, it needs to be reimbursed to the ad fund in the amount of $127.38.  If it wasn't, can you get in touch with Manuel and let him know that he owes it?

Thanks,

Monica

*Manny,*

*You owe $127.37 Payable to Honey Dew Associates. Please forward to us @ Bowen & we will record & send to Monica.*

*Thanks,*
*Roberta*

1

**EXHIBIT V**

<div align="center">

**Kevin R. McCarthy**
**Attorney at Law**
**155 Fairoaks Lane**
**Cohasset, Massachusetts 02025**

</div>

| **Telephone** | **E-mail** | **Fax** |
|---|---|---|
| 781-383-0639 | kemccar68@comcast.net | 781-735-0228 |

MAIL

July 25, 2005

Mr. Jack J. Mikels
1 Batterymarch Park
Suite 309
Quincy, MA 02169-7454

<div align="center">

**Re: Carneiro Donuts, Inc. Advertising Fees**

</div>

Dear Jack:

Apparently, shortly after Mr. Carneiro purchased his Honey Dew franchise, Robert Bowen asked or advised Mr. Carneiro to pay his weekly fees as 5% for royalty and 4 % for advertising instead of 7% for royalty and 2% for advertising as stated in his franchise agreement.   As I am not familiar with the practice of paying fees in amounts and percentages other than as required under a franchise agreement, I have advised Mr. Carneiro to immediately begin paying his fees per the percentages stated in the franchise agreement. I believe he began doing so commencing the week ending 6/26/05.

If necessary, please advise your accountant that the weekly fee payments will henceforth be coming as per the terms of the franchise agreement – 7% for royalty and 2% for advertising.

If there is some written or other agreement which requires the weekly fees be paid as requested by Robert Bowen, please contact me immediately so that Mr. Carneiro can continue to conduct himself properly per his franchise agreement.   Thank you.

Sincerely,

Kevin R. McCarthy

Cc: Manuel Carneiro
    Robert P. Bowen
    Tracy Botelho

EXHIBIT W

# JACK MIKELS & ASSOCIATES, LLP

**1 BATTERYMARCH PARK • SUITE 309 • QUINCY, MASSACHUSETTS 02169-7454**
*Telephone: 617.472.5600 • Telecopier: 617.472.5875 • E-Mail: jmikels@xis.net*

JACK J. MIKELS
MICHAEL A. WIRTZ

ROCHELLE NELSON MIKELS
JANELL E. DE GENNARO
*ATTORNEYS AT LAW*

August 1, 2005

*Via Facsimile 781.735.0228*
Kevin R. McCarthy, Esquire
155 Fair Oaks Lane
Cohasset, MA  02025

      Re:   Bowen Investment, Inc./Carneiro Donuts, Inc.

Dear Kevin:

     I was surprised and disappointed in your letter of July 25, 2005.  In our last communication, about six weeks ago, I indicated that Bowen Investment, Inc. prefers to avoid litigation and invited your proposal for a mutually acceptable reinstatement of your client.  I had given you a week to respond to my letter, due to summer vacation schedules.  The courtesy of the additional time was so that we could attempt to work out the resolution.  Your letter does not make any proposal.  Accordingly, I have no alternative but to proceed with litigation.

     As for your changing the weekly payment schedule to 7% for royalty and 2% for advertising, I find your letter insulting.  You are well aware that Bowen Investment, Inc. is required to match the franchisee's advertising contribution.  For this reason, for everyone's convenience, we request that franchisees deliver their weekly checks to Bowen Investment, Inc. in the amount of the 5% royalty and a separate check for 4%, representing both the franchisee's and the franchisor's contributions to the Advertising Fund.  You do not need a legal background to know that 5 + 4 and 7 + 2 both equal 9%.  In light of Mr. Carneiro's persistent violations of the Franchise Agreement, it is clear that this change in the check amounts is not so that Mr. Carneiro can "conduct himself properly per his Franchise Agreement" as you suggest.  Clearly, it is intended to inconvenience Bowen Investment, Inc., which now must take the 7% check, deposit it, and cut a 2% check back to the Advertising Fund.  I will not engage in protracted discussion of this childishness.  Rather, I will look forward to seeing you in Court.

                  Very truly yours,

                  Jack J. Mikels

JJM/ela
cc:   Robert P. Bowen, President

Drew5/05/080105

# EXHIBIT X

## Kevin R. McCarthy
### Attorney at Law
### 155 Fairoaks Lane
### Cohasset, Massachusetts 02025

| Telephone | E-mail | Fax |
|---|---|---|
| 781-383-0639 | kemccar68@comcast.net | 781-735-0228 |

MAIL

August 2, 2005

Mr. Jack J. Mikels
1 Batterymarch Park
Suite 309
Quincy, MA 02169-7454

### Re: Unorthodox and Irregular Advertising Fund Practices

Dear Jack:

In response to your August 1, 2005 letter:

1. Mr. Bowen's and BII's request and requirement that the weekly franchise and advertising fees be submitted in amounts and forms different than clearly designated in the franchise agreement is an accounting practice I have never heard of. The fact that Mr. Bowen would approach Mr. Carneiro or his accountant with this requirement soon after he has entered the system and on a verbal basis is a disturbing business practice. This accounting procedure was not disclosed in the UFOC presented to Mr. Carneiro which, as you well know, is an equally serious matter. Be certain, Mr. Carneiro wants no part of this unorthodox and irregular accounting practice and refuses to participate in it.

2. If you are aware of some agreement, industry practice or case law that condones your Ad Fund accounting practice at issue please make that information available to me immediately.

3. It's further disturbing that your letter was accompanied by a Notice of Termination. We reject your termination notice – which is another example of your attempt to punish Mr. Carneiro for asking legitimate business questions and for his refusal to participate in unorthodox accounting practices relative to the Honey Dew Advertising Fund.

Attorney Mikels                    Page 2                    8/2/2005

4. On June 3, 2005 Mr. Carneiro asked you for the periodic statement of receipts and expenditures of the Advertising Fund as required by Section X of the franchise agreement.   Pursuant to Section X please send him the most recent Ad Fund statement along with any Ad Fund statement issued by BII or HDA in the last twelve (12) months so that he can better understand how his monies are being spent and how his business is being marketed per the franchise agreement.   He has been a franchisee for more that a year and the franchise agreement states he will receive this report at least every 12 months.   **This is Mr. Carneiro's second request for the periodic statement of receipts and expenditures of the Advertising Fund as required by Section X of the franchise agreement.**

As always, Mr. Carneiro reserves all his legal rights and feel free contact me anytime to discuss this situation.

Sincerely,

Kevin R. McCarthy

cc:  Manuel Carneiro
     Robert P. Bowen, President BII

2

**EXHIBIT 2**

 **Trial Court Information Center**

Home  » County Inquiry » Civil Party Search » Search Results

## Party Search Results

**29 Cases Returned**  |  Click Docket Number to View Details

| No. | Docket Number: | Last Name: | First Name: | Role: |
|-----|----------------|------------|-------------|-------|
| 11 | NOCV1991-00898 | Bowen Francis | | Defendant |
| 12 | NOCV1996-01110 | Bowen Frank | | Defendant |
| 13 | NOCV2000-00879 | Bowen Investment Inc | | Plaintiff |
| 14 | NOCV2000-00430 | Bowen Investment Inc | | Plaintiff |
| 15 | NOCV2000-01185 | Bowen Investment Inc | | Plaintiff |
| 16 | NOCV1999-00693 | Bowen Investment Inc | | Plaintiff |
| 17 | NOCV1999-00709 | Bowen Investment Inc | | Plaintiff |
| 18 | NOCV2000-00313 | Bowen Investment Inc | | Plaintiff |
| 19 | NOCV2003-01649 | Bowen Investment Inc | | Plaintiff |
| 20 | NOCV1992-01003 | Bowen Janet A | | Plaintiff |

**Scroll Results:**        « First    ‹ Previous    Next ›    Last »

Massachusetts Administrative Office of the Trial Court
© Copyright, 2000-2001                                                    Terms of Use
» Logout                                                    System data reflects current activity.

 **Trial Court Information Center**

Home  » County Inquiry » Civil Party Search » Search Results » Docket Details

# Bowen Investment Inc v Antonucci Donuts Inc et al

**Details for Docket: NOCV2000-00879**

**Case Information**

| | | | |
|---|---|---|---|
| **Docket Number:** | NOCV2000-00879 | **Caption:** | Bowen Investment Inc v Antonucci Donuts Inc et al |
| **Filing Date:** | 06/02/2000 | **Case Status:** | Dismissed |
| **Status Date:** | 04/29/2002 | **Session:** | Civil B-CtRm 3 |
| **Lead Case:** | NA | **Case Type:** | Most |

**Tracking Deadlines**

| | | | |
|---|---|---|---|
| **TRK:** | A | **Discovery:** | 07/22/2002 |
| **Service Date:** | 08/31/2000 | **Disposition:** | 06/02/2003 |
| **Rule 15:** | 08/26/2001 | **Rule 12/19/20:** | 10/30/2000 |
| **Final PTC:** | 01/18/2003 | **Rule 56:** | 09/20/2002 |
| **Answer Date:** | 10/30/2000 | **Jury Trial:** | NO |

**Case Information**

| | | | |
|---|---|---|---|
| **Docket Number:** | NOCV2000-00879 | **Caption:** | Bowen Investment Inc v Antonucci Donuts Inc et al |
| **Filing Date:** | 06/02/2000 | **Case Status:** | Dismissed |
| **Status Date:** | 04/29/2002 | **Session:** | Civil B-CtRm 3 |
| **Lead Case:** | NA | **Case Type:** | Specific performance of contract |

**Tracking Deadlines**

| | | | |
|---|---|---|---|
| **TRK:** | A | **Discovery:** | 07/22/2002 |
| **Service Date:** | 08/31/2000 | **Disposition:** | 06/02/2003 |
| **Rule 15:** | 08/26/2001 | **Rule 12/19/20:** | 10/30/2000 |
| **Final PTC:** | 01/18/2003 | **Rule 56:** | 09/20/2002 |
| **Answer Date:** | 10/30/2000 | **Jury Trial:** | NO |

| Docket Details: | Parties | Attorneys | Docket Entries | Calendar Events |
|---|---|---|---|---|
| | | | | Print Docket |

 **Trial Court Information Center**

Home » County Inquiry » Civil Party Search » Search Results » Docket Details

# Bowen Investment Inc v Deluca et al

**Details for Docket: NOCV2000-00430**

## Case Information

| | | | |
|---|---|---|---|
| **Docket Number:** | NOCV2000-00430 | **Caption:** | Bowen Investment Inc v Deluca et al |
| **Filing Date:** | 03/20/2000 | **Case Status:** | Disposed: by Settlement |
| **Status Date:** | 07/09/2001 | **Session:** | Civil B-CtRm 3 |
| **Lead Case:** | NA | **Case Type:** | Most |

## Tracking Deadlines

| | | | |
|---|---|---|---|
| **TRK:** | A | **Discovery:** | 05/09/2002 |
| **Service Date:** | 06/18/2000 | **Disposition:** | 03/20/2003 |
| **Rule 15:** | 06/13/2001 | **Rule 12/19/20:** | 08/17/2000 |
| **Final PTC:** | 11/05/2002 | **Rule 56:** | 07/08/2002 |
| **Answer Date:** | 08/17/2000 | **Jury Trial:** | NO |

## Case Information

| | | | |
|---|---|---|---|
| **Docket Number:** | NOCV2000-00430 | **Caption:** | Bowen Investment Inc v Deluca et al |
| **Filing Date:** | 03/20/2000 | **Case Status:** | Disposed: by Settlement |
| **Status Date:** | 07/09/2001 | **Session:** | Civil B-CtRm 3 |
| **Lead Case:** | NA | **Case Type:** | Specific performance of contract |

## Tracking Deadlines

| | | | |
|---|---|---|---|
| **TRK:** | A | **Discovery:** | 05/09/2002 |
| **Service Date:** | 06/18/2000 | **Disposition:** | 03/20/2003 |
| **Rule 15:** | 06/13/2001 | **Rule 12/19/20:** | 08/17/2000 |
| **Final PTC:** | 11/05/2002 | **Rule 56:** | 07/08/2002 |
| **Answer Date:** | 08/17/2000 | **Jury Trial:** | NO |

| Docket Details: | Parties | Attorneys | Docket Entries | Calendar Events |
|---|---|---|---|---|
| | | | | Print Docket |

 **Trial Court Information Center**

Home » County Inquiry » Civil Party Search » Search Results » Docket Details

# Bowen Investment Inc v Dala Inc et al

**Details for Docket: NOCV2000-01185**

**Case Information**

| | | | |
|---|---|---|---|
| **Docket Number:** | NOCV2000-01185 | **Caption:** | Bowen Investment Inc v Dala Inc et al |
| **Filing Date:** | 08/03/2000 | **Case Status:** | Dismissed |
| **Status Date:** | 05/13/2002 | **Session:** | Civil B-CtRm 3 |
| **Lead Case:** | NA | **Case Type:** | Most |

**Tracking Deadlines**

| | | | |
|---|---|---|---|
| **TRK:** | A | **Discovery:** | 09/22/2002 |
| **Service Date:** | 11/01/2000 | **Disposition:** | 08/03/2003 |
| **Rule 15:** | 10/27/2001 | **Rule 12/19/20:** | 12/31/2000 |
| **Final PTC:** | 03/21/2003 | **Rule 56:** | 11/21/2002 |
| **Answer Date:** | 12/31/2000 | **Jury Trial:** | NO |

**Case Information**

| | | | |
|---|---|---|---|
| **Docket Number:** | NOCV2000-01185 | **Caption:** | Bowen Investment Inc v Dala Inc et al |
| **Filing Date:** | 08/03/2000 | **Case Status:** | Dismissed |
| **Status Date:** | 05/13/2002 | **Session:** | Civil B-CtRm 3 |
| **Lead Case:** | NA | **Case Type:** | Specific performance of contract |

**Tracking Deadlines**

| | | | |
|---|---|---|---|
| **TRK:** | A | **Discovery:** | 09/22/2002 |
| **Service Date:** | 11/01/2000 | **Disposition:** | 08/03/2003 |
| **Rule 15:** | 10/27/2001 | **Rule 12/19/20:** | 12/31/2000 |
| **Final PTC:** | 03/21/2003 | **Rule 56:** | 11/21/2002 |
| **Answer Date:** | 12/31/2000 | **Jury Trial:** | NO |

| Docket Details: | Parties | Attorneys | Docket Entries | Calendar Events |
|---|---|---|---|---|
| | | | | Print Docket |

 **Trial Court Information Center**

Home  » County Inquiry » Civil Party Search » Search Results » Docket Details

## Bowen Investment Inc v Boston Neck Donuts Inc

**Details for Docket: NOCV1999-00693**

**Case Information**

| | | | |
|---|---|---|---|
| **Docket Number:** | NOCV1999-00693 | **Caption:** | Bowen Investment Inc v Boston Neck Donuts Inc |
| **Filing Date:** | 04/28/1999 | **Case Status:** | Disposed: by Settlement |
| **Status Date:** | 02/04/2000 | **Session:** | Civil A-CtRm 10 |
| **Lead Case:** | NA | **Case Type:** | Most |

**Tracking Deadlines**

| | | | |
|---|---|---|---|
| **TRK:** | A | **Discovery:** | 06/16/2001 |
| **Service Date:** | 07/27/1999 | **Disposition:** | 04/27/2002 |
| **Rule 15:** | 07/21/2000 | **Rule 12/19/20:** | 09/25/1999 |
| **Final PTC:** | 12/13/2001 | **Rule 56:** | 08/15/2001 |
| **Answer Date:** | 09/25/1999 | **Jury Trial:** | NO |

**Case Information**

| | | | |
|---|---|---|---|
| **Docket Number:** | NOCV1999-00693 | **Caption:** | Bowen Investment Inc v Boston Neck Donuts Inc |
| **Filing Date:** | 04/28/1999 | **Case Status:** | Disposed: by Settlement |
| **Status Date:** | 02/04/2000 | **Session:** | Civil A-CtRm 10 |
| **Lead Case:** | NA | **Case Type:** | Specific performance of contract |

**Tracking Deadlines**

| | | | |
|---|---|---|---|
| **TRK:** | A | **Discovery:** | 06/16/2001 |
| **Service Date:** | 07/27/1999 | **Disposition:** | 04/27/2002 |
| **Rule 15:** | 07/21/2000 | **Rule 12/19/20:** | 09/25/1999 |
| **Final PTC:** | 12/13/2001 | **Rule 56:** | 08/15/2001 |
| **Answer Date:** | 09/25/1999 | **Jury Trial:** | NO |

| Docket Details: | Parties | Attorneys | Docket Entries | Calendar Events |
|---|---|---|---|---|
| | | | | Print Docket |

 **Trial Court Information Center**

Home » County Inquiry » Civil Party Search » Search Results » Docket Details

# Bowen Investment Inc v S G B Ltd

**Details for Docket: NOCV1999-00709**

## Case Information

| | | | |
|---|---|---|---|
| **Docket Number:** | NOCV1999-00709 | **Caption:** | Bowen Investment Inc v S G B Ltd |
| **Filing Date:** | 04/30/1999 | **Case Status:** | Disposed: by Settlement |
| **Status Date:** | 10/01/1999 | **Session:** | Civil B-CtRm 3 |
| **Lead Case:** | NA | **Case Type:** | Most |

## Tracking Deadlines

| | | | |
|---|---|---|---|
| **TRK:** | A | **Discovery:** | 06/18/2001 |
| **Service Date:** | 07/29/1999 | **Disposition:** | 04/29/2002 |
| **Rule 15:** | 07/23/2000 | **Rule 12/19/20:** | 09/27/1999 |
| **Final PTC:** | 12/15/2001 | **Rule 56:** | 08/17/2001 |
| **Answer Date:** | 09/27/1999 | **Jury Trial:** | NO |

## Case Information

| | | | |
|---|---|---|---|
| **Docket Number:** | NOCV1999-00709 | **Caption:** | Bowen Investment Inc v S G B Ltd |
| **Filing Date:** | 04/30/1999 | **Case Status:** | Disposed: by Settlement |
| **Status Date:** | 10/01/1999 | **Session:** | Civil B-CtRm 3 |
| **Lead Case:** | NA | **Case Type:** | Specific performance of contract |

## Tracking Deadlines

| | | | |
|---|---|---|---|
| **TRK:** | A | **Discovery:** | 06/18/2001 |
| **Service Date:** | 07/29/1999 | **Disposition:** | 04/29/2002 |
| **Rule 15:** | 07/23/2000 | **Rule 12/19/20:** | 09/27/1999 |
| **Final PTC:** | 12/15/2001 | **Rule 56:** | 08/17/2001 |
| **Answer Date:** | 09/27/1999 | **Jury Trial:** | NO |

| Docket Details: | Parties | Attorneys | Docket Entries | Calendar Events |
|---|---|---|---|---|
| | | | | Print Docket |



Home  » County Inquiry » Civil Party Search » Search Results » Docket Details

# Bowen Investment Inc v S G B Ltd et al

**Details for Docket: NOCV2000-00313**

### Case Information

| | | | |
|---|---|---|---|
| **Docket Number:** | NOCV2000-00313 | **Caption:** | Bowen Investment Inc v S G B Ltd et al |
| **Filing Date:** | 02/29/2000 | **Case Status:** | Dismissed |
| **Status Date:** | 06/12/2001 | **Session:** | Civil B-CtRm 3 |
| **Lead Case:** | NA | **Case Type:** | Most |

### Tracking Deadlines

| | | | |
|---|---|---|---|
| **TRK:** | A | **Discovery:** | 04/19/2002 |
| **Service Date:** | 05/29/2000 | **Disposition:** | 02/28/2003 |
| **Rule 15:** | 05/24/2001 | **Rule 12/19/20:** | 07/28/2000 |
| **Final PTC:** | 10/16/2002 | **Rule 56:** | 06/18/2002 |
| **Answer Date:** | 07/28/2000 | **Jury Trial:** | NO |

### Case Information

| | | | |
|---|---|---|---|
| **Docket Number:** | NOCV2000-00313 | **Caption:** | Bowen Investment Inc v S G B Ltd et al |
| **Filing Date:** | 02/29/2000 | **Case Status:** | Dismissed |
| **Status Date:** | 06/12/2001 | **Session:** | Civil B-CtRm 3 |
| **Lead Case:** | NA | **Case Type:** | Specific performance of contract |

### Tracking Deadlines

| | | | |
|---|---|---|---|
| **TRK:** | A | **Discovery:** | 04/19/2002 |
| **Service Date:** | 05/29/2000 | **Disposition:** | 02/28/2003 |
| **Rule 15:** | 05/24/2001 | **Rule 12/19/20:** | 07/28/2000 |
| **Final PTC:** | 10/16/2002 | **Rule 56:** | 06/18/2002 |
| **Answer Date:** | 07/28/2000 | **Jury Trial:** | NO |

| Docket Details: | Parties | Attorneys | Docket Entries | Calendar Events |
|---|---|---|---|---|
| | | | | Print Docket |

 **Trial Court Information Center**

Home  » County Inquiry » Civil Party Search » Search Results » Docket Details

# Bowen Investment Inc v S G B ltd et al

**Details for Docket: NOCV2003-01649**

**Case Information**

| | | | |
|---|---|---|---|
| **Docket Number:** | NOCV2003-01649 | **Caption:** | Bowen Investment Inc v S G B ltd et al |
| **Filing Date:** | 09/05/2003 | **Case Status:** | Disposed: by Settlement |
| **Status Date:** | 09/02/2004 | **Session:** | Civil B-CtRm 3 |
| **Lead Case:** | NA | **Case Type:** | Complex |

**Tracking Deadlines**

| | | | |
|---|---|---|---|
| **TRK:** | F | **Discovery:** | 07/01/2004 |
| **Service Date:** | 12/04/2003 | **Disposition:** | 10/29/2004 |
| **Rule 15:** | 02/02/2004 | **Rule 12/19/20:** | 02/02/2004 |
| **Final PTC:** | 08/30/2004 | **Rule 56:** | 07/31/2004 |
| **Answer Date:** | 02/02/2004 | **Jury Trial:** | NO |

**Case Information**

| | | | |
|---|---|---|---|
| **Docket Number:** | NOCV2003-01649 | **Caption:** | Bowen Investment Inc v S G B ltd et al |
| **Filing Date:** | 09/05/2003 | **Case Status:** | Disposed: by Settlement |
| **Status Date:** | 09/02/2004 | **Session:** | Civil B-CtRm 3 |
| **Lead Case:** | NA | **Case Type:** | Misc equitable remedy |

**Tracking Deadlines**

| | | | |
|---|---|---|---|
| **TRK:** | F | **Discovery:** | 07/01/2004 |
| **Service Date:** | 12/04/2003 | **Disposition:** | 10/29/2004 |
| **Rule 15:** | 02/02/2004 | **Rule 12/19/20:** | 02/02/2004 |
| **Final PTC:** | 08/30/2004 | **Rule 56:** | 07/31/2004 |
| **Answer Date:** | 02/02/2004 | **Jury Trial:** | NO |

| Docket Details: | Parties | Attorneys | Docket Entries | Calendar Events |
|---|---|---|---|---|
| | | | | Print Docket |

# EXHIBIT A

## Item 10

### FINANCING

DISCLOSE THE TERMS AND CONDITIONS OF EACH FINANCING ARRANGEMENT THAT THE FRANCHISOR, ITS AGENT OR AFFILIATES OFFERS DIRECTLY OR INDIRECTLY TO THE FRANCHISEE, INCLUDING:

**Item 10 Instructions:**

i. "Financing" includes leases and installment contracts.

ii. Payments due within 90 days on open account financing need not be disclosed under this Item.

iii. A written arrangement between a franchisor or its affiliate and a lender for the lender to offer financing to the franchisee or an arrangement in which a franchisor or its affiliate receives a benefit from a lender for franchisee financing is an "indirect offer of financing" and must be disclosed under this Item.  The franchisor's guarantee of a note, lease or obligation of the franchisee is an "indirect offer of financing" and must be disclosed under this Item.

iv. If financing of the initial fee is disclosed in the Item 7 disclosure, a cross reference to Item 7 is sufficient if all the disclosure which Item 10 requires is provided in Item 7.

v. If an affiliate offers financing, identify the affiliate and its relationship to the franchisor.

vi. The franchisor may summarize the terms of each financing arrangement in tabular form, using footnotes to entries in the chart to provide additional information required by these instructions that does not fit in the chart.

vii. If a financing arrangement is for the establishment of the franchised business, disclose what the financing covers, including:

a) Initial franchise fee;

b) Site acquisition;

c) Construction or remodeling;

d) Equipment or fixtures; and

e) Opening inventory or supplies.

-36-

Adopted by NASAA on
April 25, 1993

## RESTRICTIONS ON SOURCES
## OF PRODUCTS AND SERVICES

DISCLOSE FRANCHISEE OBLIGATIONS TO PURCHASE OR LEASE FROM THE FRANCHISOR ITS DESIGNEE OR FROM SUPPLIERS APPROVED BY THE FRANCHISOR OR UNDER THE FRANCHISOR'S SPECIFICATIONS.  FOR EACH OBLIGATION DISCLOSE:

A.  THE GOODS, SERVICES, SUPPLIES, FIXTURES, EQUIPMENT, INVENTORY, COMPUTER HARDWARE AND SOFTWARE OR REAL ESTATE RELATING TO ESTABLISHING OR OPERATING THE FRANCHISED BUSINESS.

B.  THE MANNER IN WHICH THE FRANCHISOR ISSUES AND MODIFIES SPECIFICATIONS OR GRANTS AND REVOKES APPROVAL TO SUPPLIERS.

C.  WHETHER, AND FOR WHAT CATEGORIES OF GOODS AND SERVICES, THE FRANCHISOR OR ITS AFFILIATES ARE APPROVED SUPPLIERS OR THE ONLY APPROVED SUPPLIERS.

D.  WHETHER, AND IF SO, THE PRECISE BASIS BY WHICH THE FRANCHISOR OR ITS AFFILIATES WILL OR MAY DERIVE REVENUE OR OTHER MATERIAL CONSIDERATION AS A RESULT OF  REQUIRED PURCHASES OR LEASES.

E.  THE ESTIMATED PROPORTION OF THESE REQUIRED PURCHASES AND LEASES TO ALL PURCHASES AND LEASES BY THE FRANCHISEE OF GOODS AND SERVICES IN ESTABLISHING AND OPERATING THE FRANCHISED BUSINESS.

F.  THE EXISTENCE OF PURCHASING OR DISTRIBUTION COOPERATIVES.


**Item 8 Instructions:**

   i.  An obligation includes those imposed by written agreement or by the franchisor's practice.  The franchisor may include the reason for the requirement.

   ii.  Do not include goods or services provided as part of the franchise and without a separate charge (for example, a fee for initial training when the cost is included in the franchise fee). These fees should be described in Item 5.  Do not include fees disclosed in response to Item 6.

   iii.  For "precise basis," disclose the franchisor's total revenues and the franchisor's revenues from all required purchases and leases of products and services.  Also, disclose the percentage of the franchisor's total revenues represented by the franchisor's revenues from required purchases or leases.  If the franchisor's affiliates also sell or lease products or services to franchisees, disclose affiliate revenues from those

<div align="center">-29-</div>

Adopted by NASAA on
April 25, 1993

# Select A Case

**This person is a party in 3 cases.**

| | | |
|---|---|---|
| 1:98-cv-00175-ML | Honeydew Associates, et al v. M&K Food Corporation, et al | filed 03/30/98 |
| 1:99-cv-00032-T | Honey Dew Assoc., et al v. Nakielny Sales, et al | filed 01/22/99 |
| 1:99-cv-00463-T | Honey Dew Assoc., et al v. A&F Management, Inc., et al | filed 09/23/99 |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/20/2005 15:22:17 | | |
| **PACER Login:** | **Client Code:** | |
| **Description:** | Search | **Search Criteria:** | Last Name: bowen |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

Query    •    Reports    •    Utilities    •    Logout    ?

**1:99-cv-00463-T** Honey Dew Assoc., et al v. A&F Management, Inc., et al
Ernest C. Torres, presiding
**Date filed: 09/23/1999**
**Date terminated: 07/12/2001 Date of last filing: 07/12/2001**

# Case Summary

**Office:** Providence
**Jury Demand:** Defendant

**Nature of Suit:** 840

**Jurisdiction:** Federal Question

**County:** Providence
**Origin:** 1
**Lead Case:** None
**Related Case:** None

**Def Custody Status:**
**Flags:** CLOSED, RWL

**Filed:** 09/23/1999
**Demand:** $0
**Cause:** 15:1051 Trademark
Infringement

**Disposition:** Dismissed - Voluntarily

**Terminated:** 07/12/2001
**Reopened:**

**Other Court Case:**
None

| | | | |
|---|---|---|---|
| Plaintiff **Honey Dew Associates, Inc.** | represented by | **Jack Mikels** | **Phone:** 1-617-472-5600 |
| Plaintiff **Honey Dew Associates, Inc.** | represented by | **Charles D. Wick** | **Phone:** 274-3770 **Fax:** 273-4749 |
| Plaintiff **Bowen Investments, Inc.** | represented by | **Jack Mikels** | **Phone:** 1-617-472-5600 |
| Plaintiff **Bowen Investments, Inc.** | represented by | **Charles D. Wick** | **Phone:** 274-3770 **Fax:** 273-4749 |
| Defendant **A&F Management, Inc.** | represented by | **Robert E. Flaherty** | **Phone:** 781-7200 **Fax:** 781-0110 |
| Defendant **A&F Management, Inc.** | represented by | **Kathleen M. Hagerty** | **Phone:** 781-7200 **Fax:** 781-0110 |
| Defendant **Antonio Andrade** | represented by | **Robert E. Flaherty** | **Phone:** 781-7200 **Fax:** 781-0110 |
| Defendant **Antonio Andrade** | represented by | **Kathleen M. Hagerty** | **Phone:** 781-7200 **Fax:** 781-0110 |
| Defendant **Marie Andrade** | represented by | **Robert E. Flaherty** | **Phone:** 781-7200 **Fax:** 781-0110 |
| Defendant **Marie Andrade** | represented by | **Kathleen M. Hagerty** | **Phone:** 781-7200 **Fax:** 781-0110 |
| Counter Claimant **A&F Management, Inc.** | represented by | **Robert E. Flaherty** | **Phone:** 781-7200 **Fax:** 781-0110 |
| Counter Claimant **A&F Management, Inc.** | represented by | **Kathleen M. Hagerty** | **Phone:** 781-7200 **Fax:** 781-0110 |
| Counter Claimant **Antonio Andrade** | represented by | **Robert E. Flaherty** | **Phone:** 781-7200 **Fax:** 781-0110 |

Query    •    Reports    •    Utilities    •    Logout    

**1:99-cv-00032-T** Honey Dew Assoc., et al v. Nakielny Sales, et al
Ernest C. Torres, presiding
**Date filed:** 01/22/1999
**Date terminated:** 02/22/2000 **Date of last filing:** 02/22/2000

# Case Summary

**Office:** Providence
**Jury Demand:** None
**Nature of Suit:** 840
**Jurisdiction:** Federal Question

**County:** Providence
**Origin:** 1
**Lead Case:** None
**Related Case:** None

**Def Custody Status:**
**Flags:** CLOSED, DLM

**Filed:** 01/22/1999
**Demand:** $0
**Cause:** 15:1114 Trademark
Infringement

**Disposition:** Dismissed - Settled

**Terminated:** 02/22/2000
**Reopened:**

**Other Court Case:**
None

| | | | |
|---|---|---|---|
| Plaintiff **Honey Dew Associates, Inc.** | represented by | **Jack Mikels** (Designation Retained) | **Phone:** 1-617-472-5600 |
| Plaintiff **Honey Dew Associates, Inc.** | represented by | **Charles D. Wick** (Designation Retained) | **Phone:** 274-3770 **Fax:** 273-4749 |
| Plaintiff **Bowen Investments, Inc.** | represented by | **Jack Mikels** (Designation Retained) | **Phone:** 1-617-472-5600 |
| Plaintiff **Bowen Investments, Inc.** | represented by | **Charles D. Wick** (Designation Retained) | **Phone:** 274-3770 **Fax:** 273-4749 |
| Defendant **Nakielny Sales Associates, Inc.** | represented by | **Joseph J. Recupero** | **Phone:** 453-2300 **Fax:** 453-2345 |
| Defendant **Richard E. Nakielny** | represented by | **Joseph J. Recupero** | **Phone:** 453-2300 **Fax:** 453-2345 |
| Defendant **Marie A. Nakielny** | represented by | **Joseph J. Recupero** | **Phone:** 453-2300 **Fax:** 453-2345 |
| Defendant **Jonathan A. Nakielny** | represented by | **Joseph J. Recupero** | **Phone:** 453-2300 **Fax:** 453-2345 |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/20/2005 15:26:31 | | |
| **PACER Login:** km0166 | **Client Code:** | |
| **Description:** | Case Summary | **Search Criteria:** 1:99-cv-00032-T |



Query · Reports · Utilities · Logout

**1:98-cv-00175-ML** Honeydew Associates, et al v. M&K Food Corporation, et al
Mary M Lisi, presiding
**Date filed: 03/30/1998**
**Date terminated: 10/10/2001 Date of last filing: 11/12/2003**

# Case Summary

**Office:** Providence
**Jury Demand:** None
**Nature of Suit:** 840
**Jurisdiction:** Federal Question
**County:** Providence
**Origin:** 3
**Lead Case:** None
**Related Case:** None

**Filed:** 03/30/1998
**Demand:** $0
**Cause:** 15:1051 Trademark Infringement
**Disposition:** Judgment - Court Trial
**Terminated:** 10/10/2001
**Reopened:** 04/06/2001

**Other Court Case:** None

**Def Custody Status:**
**Flags:** CLOSED, RWL

| | | | |
|---|---|---|---|
| Plaintiff **Honey Dew Associates, Inc.** | represented by | **Charles D. Wick** (Designation Retained) | **Phone:** 274-3770 **Fax:** 273-4749 |
| Plaintiff **Honey Dew Associates, Inc.** | represented by | **Scott I. Wolf** (Designation Retained) | **Phone:** 617-426-5858 |
| Plaintiff **Bowen Investments, Inc.** | represented by | **Jack Mikels** (Designation Retained) | **Phone:** 1-617-472-5600 |
| Plaintiff **Bowen Investments, Inc.** | represented by | **Charles D. Wick** (Designation Retained) | **Phone:** 274-3770 **Fax:** 273-4749 |
| Plaintiff **Bowen Investments, Inc.** | represented by | **Scott I. Wolf** (Designation Retained) | **Phone:** 617-426-5858 |
| Defendant **M&K Food Corporation** | represented by | **Carl S. Levin** | **Phone:** 331-2191 **Fax:** 331-2991 |
| Defendant **Irwin Kay** | represented by | **Carl S. Levin** | **Phone:** 331-2191 **Fax:** 331-2991 |
| Defendant **Adele Kay** | represented by | **Carl S. Levin** | **Phone:** 331-2191 **Fax:** 331-2991 |
| Counter Claimant **M&K Food Corporation** | | | |
| Counter Claimant **Irwin Kay** | | | |
| Counter Claimant **Adele Kay** | | | |
| Counter Defendant **Honey Dew Associates, Inc.** | represented by | **Charles D. Wick** (Designation Retained) | **Phone:** 274-3770 **Fax:** 273-4749 |
| Counter Defendant **Honey Dew Associates, Inc.** | represented by | **Scott I. Wolf** (Designation Retained) | **Phone:** 617-426-5858 |
| Counter Defendant **Bowen Investments, Inc.** | represented by | **Jack Mikels** (Designation Retained) | **Phone:** 1-617-472-5600 |