UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11709 NMG

BOWEN INVESTMENT, INC. and HONEY DEW
ASSOCIATES, INC.,
         Plaintiffs,
v.

CARNEIRO DONUTS, INC. and MANUEL M.
CARNEIRO,
         Defendants.

## AFFIDAVIT OF ATTORNEY MICHAEL A. WIRTZ

Now comes Attorney Michael A. Wirtz and deposes and states as follows:

1.    I represent the Plaintiffs Bowen Investment, Inc. and Honey Dew Associates, Inc. in this action.

2.    Attached hereto at Tab A are true and accurate copies of excerpts from the Deposition of Manuel M. Carneiro, taken on November 22, 2005.

3.    Attached hereto at Tab B is a true and accurate copy of Defendants' First Supplemental Response to the Plaintiffs' Request for Production of Documents, Request No. 2, served on November 11, 2005.

Signed under the penalties of perjury this 9th day of December, 2005.

                                                                                            Attorney Michael A. Wirtz

BII/Litigation/Carneiro/Pleadings/SJ/Aff_MAW.doc

# TAB - A

```
                                        VOLUME   I
                                        PAGES    1-264
                                        EXHIBITS 1-18
```

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * * * *
                              *
BOWEN INVESTMENT, INC. and    *
HONEY DEW ASSOCIATES, INC.,   *
                              *
      Plaintiffs,             *
                              *
v.                            *     Civil Action
                              *     No. 05-11709 NMG
CARNEIRO DONUTS, INC. and     *
MANUEL M. CARNEIRO,           *
                              *
      Defendants.             *
                              *
* * * * * * * * * * * * * * *
```

Deposition of **MANUEL M. CARNEIRO**, taken on behalf of the Plaintiffs, pursuant to Notice under the applicable Rules of the Federal Rules of Civil Procedure, before Rochelle D. Baron, a Professional Shorthand Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the Offices of Jack Mikels & Associates, LLP, 1 Batterymarch Park, Quincy, Massachusetts on Tuesday, November 22, 2005, commencing at 11:10 a.m.

```
              ROCHELLE D. BARON
              6 MARCUS ROAD
         SHARON, MASSACHUSETTS 02067
              (781) 784-6542
```

```
 1       APPEARANCES:

 2            MICHAEL A. WIRTZ, ESQUIRE
              [Jack Mikels & Associates, LLP]
 3            1 Batterymarch Park
              Quincy, Massachusetts 02169
 4                 For the Plaintiffs.

 5            KEVIN R. McCARTHY, ESQUIRE
              155 Fairoaks Lane
 6            Cohasset, Massachusetts 02025
                   For the Defendants.
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

```
 1              the date that you signed the document?
 2                   MR. McCARTHY:  Objection.
 3   A     I don't recall, sir.  I've never been
 4         in possession of a circular.  I've
 5         never been in possession.
 6   Q     You've never seen an operating
 7         circular?
 8                   MR. McCARTHY:  Objection.
 9   A     No.
10                   MR. WIRTZ:  I'm going to have
11        this document marked as Exhibit No. 4.
12                            [A copy of
13                            "Receipt" of
14                            Offering Circular
15                            was marked as
16                            Carneiro Exhibit
17                            No. 4 for
18                            identification.]
19                   MR. WIRTZ:  Actually, I'm going
20        to also mark this next document as
21        Exhibit No. 5 and then I'll ask
22        questions.
23                   MR. McCARTHY:  Could I get a
24        copy of that, counsel?
```

```
 1           MR. WIRTZ:  I can give that to
 2    you, but I don't have a copy available
 3    for right now.
 4           MR. McCARTHY:  Before you
 5    question Mr. Carneiro, I need to have a
 6    copy so I can follow.
 7           MR. WIRTZ:  You can mark this
 8    as Exhibit 5.
 9                         [A copy of
10                         Defendant's First
11                         Supplemental
12                         Response to the
13                         Plaintiffs'
14                         Request for
15                         Production of
16                         Documents was
17                         marked as Carneiro
18                         Exhibit No. 5 for
19                         identification.]
20  Q    What we've marked as Exhibit No. 5 is
21    Defendants' First Supplemental Response
22    to Plaintiff's Request for Production
23    of Documents.  And the specific
24    supplement noted is Request No. 2,
```

```
 1    which requests a copy of all offering
 2    circulars in your possession, custody,
 3    and control.  And the response is, "The
 4    uniform franchise offering circular
 5    dated February 6, 2003.  Enclosed is a
 6    cover page -- a full copy is in
 7    possession of the plaintiffs, who
 8    originally produced and published it."
 9    And ask you -- and your counsel is free
10    to take a look at it with you -- if you
11    recognize that response.
12                MR. McCARTHY:  Counsel, I ask
13    you to make me a copy of that so I can
14    have a copy now.
15                MR. WIRTZ:  I'm not going to
16    ask any other questions other than if
17    he recognizes it, counsel.  So I don't
18    see any reason to interrupt this
19    proceeding to make copies.
20                MR. McCARTHY:  I want a copy of
21    it now before he answers the questions,
22    please, and I would object strenuously
23    if you don't comply with my request.
24    It's reasonable and I've done it for
```

```
 1            all the depositions that you have
 2            represented clients in.
 3                  MR. WIRTZ:  Counsel, we're
 4            talking about a three-page document
 5            that he produced.  All I'm asking is
 6            one question.
 7                  MR. McCARTHY:  I want the copy
 8            of it before you ask him any questions,
 9            counsel, or of any document that you
10            give him that you're asking questions
11            on.  It's the same courtesy I've given
12            you in all the previous depositions,
13            and I want that now, please.
14      Q     Mr. Carneiro, with respect to your
15            statement about the offering circular,
16            having been advised of your response to
17            request for production of documents, do
18            you wish to change your answer as to
19            whether or not you received an offering
20            circular?
21                  MR. McCARTHY:  Objection.  I
22            have not been provided a copy of
23            whatever document he's talking about.
24                  MR. WIRTZ:  Kevin, it's sitting
```

```
 1            on the table in front of you. You can
 2            take a look at it. It's a three page
 3            document. If you can't handle that,
 4            then I think we have bigger problems
 5            here.
 6                    MR. McCARTHY: I object to you
 7            not providing me with a copy of the
 8            document you're questioning the witness
 9            on.
10      Q     Let me ask this, Mr. Carneiro, since I
11            haven't received a response from you.
12            Did you ever read the offering circular
13            that was provided to you by Bowen
14            Investment, Inc.?
15                    MR. McCARTHY: Objection.
16      A     No, sir.
17      Q     Okay. Do you know if your attorney
18            ever read the offering circular that
19            was provided to you by Bowen
20            Investment, Inc.?
21                    MR. McCARTHY: Objection.
22      A     If he did, I don't recall, sir. I
23            don't remember.
24      Q     Do you know if you ever provided the
```

```
1              by the name of Tracy Botelho?
2     A        Pretty well, sir.
3     Q        Okay.  Was that pretty much your
4              day-to-day contact with respect to the
5              ongoings of the weekly reporting?
6     A        More than correct, sir.
7     Q        Do you know if it, in fact, was her
8              that cut the check for you on a weekly
9              basis to sign?
10                     MR. McCARTHY:  Objection.
11    A        I believe so.
12    Q        Was there a procedure in place in which
13             you would be notified when the check
14             was available to be signed?
15    A        Yes.
16    Q        Okay.  And what was that procedure?
17    A        Well, he just called me and just,
18             Manny, the checks are done, just come
19             in and sign them.
20    Q        And who would call you, Ms. Botelho?
21    A        Botelho pretty much, yes.
22    Q        Other than her, was there anybody else
23             that would call you on a regular basis?
24    A        A secretary sometime.
```

```
 1    Q    And on a general basis, then what would
 2         you do?
 3              MR. McCARTHY:  Objection.
 4    A    I just -- well, I have to go there
 5         every week or every Friday, pick up the
 6         payroll.  That's when I signed the
 7         checks pretty much, 90 percent of the
 8         times on a Friday.
 9    Q    Okay.  So 90 percent of the times you
10         signed the checks on that Friday, is
11         that correct?
12    A    Yes.
13              MR. McCARTHY:  Objection.
14    Q    Was that the Friday that the payments
15         were supposedly due?
16    A    Yes, sir.
17    Q    Okay.  And on the days that you signed
18         the checks or the 90 percent of the
19         time that you signed the checks on a
20         Friday, would you then leave the checks
21         for Carneiro's office to send out or
22         would you then mail them out?
23              MR. McCARTHY:  Objection.
24    A    Carneiro's office, he mail them the
```

```
 1              checks.
 2    Q    So at least 90 percent of the time the
 3         checks were not mailed out until the
 4         day that they were due, is that
 5         correct?
 6              MR. McCARTHY:  Objection.
 7    A    Sir, you want to repeat that again,
 8         please, sir?
 9    Q    Sure.  According to what you're telling
10         me, at least 90 percent of the time the
11         checks were not mailed out until the
12         date that they were due, is that right?
13              MR. McCARTHY:  Objection.
14         You're putting words in the mouth of
15         the witness.  I ask you not to do so.
16    A    I -- I signed the check on a Friday and
17         he mails the checks.
18    Q    Okay.  And that's your understanding?
19    A    Because every Friday I have to go
20         there, pick up my payroll, and that's
21         the day I signed the checks.  He puts
22         the checks in the mail, I sign them.
23    Q    And do you know if the checks were then
24         sent out my mail, hand delivered, how
```

COMMONWEALTH OF MASSACHUSETTS

Norfolk, ss.

I, Rochelle D. Baron, a Shorthand Reporter and Notary Public duly commissioned and qualified within and for the Commonwealth of Massachusetts do hereby certify that there came before me on the 22nd day of December 2005 at 11:10 a.m. the person hereinbefore named who was duly sworn by me to testify to the truth and nothing but the truth of his knowledge touching and concerning the matters in controversy in this cause; that he was thereupon carefully examined upon his oath and his examination reduced to typewriting; and that the deposition is a true record of the testimony given by the witness to the best of my skill and ability. I further certify that I am not interested in the event of the action.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal this 2nd day of December 2005.



Rochelle D. Baron

PLEASE NOTE:

THE FOREGOING CERTIFICATION OF THIS TRANSCRIPT DOES NOT APPLY TO ANY REPRODUCTION OF THE SAME BY ANY MEANS UNLESS UNDER THE DIRECT CONTROL AND/OR DIRECTION OF THE CERTIFYING REPORTER.

**TAB - B**

Case 1:05-cv-11709-NMG   Document 33   Filed 12/09/2005   Page 14 of 20

PENGAD 800-631-6989

EXHIBIT
Carneiro
5
mb 11/22/05



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOWEN INVESTMENT, INC.<br>HONEY DEW ASSOCIATES, INC.<br>    Plaintiffs and Counterdefendants<br><br>v.<br><br>CARNEIRO DONUTS, INC and<br>MANUEL M. CARNEIRO<br>    Defendants and Counterclaimants | C.A. No. 05 – 11709 NMG |

## DEFENDANTS' FIRST SUPPLEMENTAL RESPONSE TO THE PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, the defendants hereby supplement their response to Plaintiffs Request for Production of Documents as follows:

### GENERAL OBJECTIONS

The following general objections are applicable to all requests here and in all past document discovery disclosures as if fully set forth to each and all responses:

A. Defendant objects to each and every "definition" and "instruction" to the extent that they seek to impose any obligation or burden upon defendant not provided for in the Federal Rules of Civil Procedure.
B. Defendant objects to the definition of "you" or "your" to the extent that it seeks to compel defendant to produce documents not in its possession, custody or control.
C. Defendant objects to each request to the extent that it seeks production of documents protected by the attorney-client privilege, attorney work product or any other recognized privilege. To the extent that defendant produces documents, it does not intend to provide documents protected from disclosure by the attorney-client or attorney work product privilege, and any production of a privileged document shall be deemed <u>inadvertent</u>.
D. Defendant objects to plaintiff's use of the word "all" with respect to their request that plaintiff produce "all" documents of a certain description. Defendant objects to each request on the basis that plaintiff's request for "all" such documents in the context of this litigation is overbroad and unduly burdensome, and seeks documents which are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Further, plaintiff's request for "all" documents of certain

1

description may include the production of documents beyond the scope of defendant's immediate possession, custody and/or control.

### SPECIFIC SUPPLEMENT

**Request 2:** A copy of all Offering Circulars in your possession, custody or control.

**Response:** The Uniform Franchise Offering Circular dated February 6, 2003. Enclosed is the cover page – a full copy is in the possession of the Plaintiffs who originally produced and published it.

Respectfully submitted,

The Defendants,

By their Attorney

Kevin R. McCarthy
BBO No. 640788
Law Office of Kevin R. McCarthy
155 Fairoaks Lane
Cohasset, MA 02025
781-383-0639

### CERTIFICATE OF SERVICE

I hereby certify that this 11th day of November, 2005, I served a copy of the within and foregoing **DEFENDANTS' FIRST SUPPLEMENTAL RESPONSE TO THE PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS** on all parties by depositing a copy of same in the United States Mail, postage prepaid and addressed to counsel of record as follows:

Jack Mikels
Jack Mikels & Associates, LLP
1 Batterymarch Park, Suite 309
Quincy, MA 02169

Kevin R. McCarthy

2

By their Attorney

IG    Document 33    Filed 12/0



Kevin R. McCarthy



Document 33   Filed 12

Kevin R. McCarthy

## FRANCHISING OFFERING CIRCULAR



The Franchisor is Bowen Investment, Inc., a Massachusetts Corporation with a principal place of business at 2 Taunton Street, Plainville, MA 02762. The phone number is 508-695-3666. This is an offering of a franchise to operate a Honey Dew Donuts® Shop. The Franchisee will manufacture and sell donuts and other donut shop products to the general public.

The types of stores franchised are full producing stores, and, for owners of full producing stores, satellite stores, in which product is not cooked, and cart locations, smaller units for locations within convenience marts, gas stations and the like. The initial franchise fees are $35,000 for a full producing store, $20,000 for a satellite and $50.00 per week for a Cart. The estimated initial investment required ranges from approximately $240,000- $540,000 for a full producing store, $185,000-$475,000 for a satellite and approximately $50,000-$60,000 for a cart. These sums do not include rent for the business location. The cash investment does not represent the Franchisee's total investment. The Franchisee should refer to Disclosure Items 5-7 inclusive in the Offering Circular for further information regarding the investment.

Information comparing franchisors is available. Call the state administrators at the RI Dept. of Business Regulation, 233 Richmond Street, Suite 232, Providence, RI 02903-4232 or your public library for sources of information.

Registration of this franchise by a state does not mean that the state recommends it or has verified the information in this offering circular. If you learn that anything in the offering circular is untrue, contact the Federal Trade Commission and the RI Dept. of Business Regulation, 233 Richmond Street, Suite 232, Providence, RI 02903-4232.

THE FRANCHISE AGREEMENT PERMITS THE FRANCHISOR TO ELECT TO HAVE ANY LITIGATION WITH THE FRANCHISEE SUBMITTED TO THE COURTS OF THE COMMONWEALTH OF MASSACHUSETTS. OUT OF STATE LITIGATION MAY FORCE YOU TO ACCEPT A LESS FAVORABLE SETTLEMENT FOR DISPUTES. IT MAY ALSO COST MORE TO SUE BOWEN INVESTMENT, INC. IN MASSACHUSETTS THAN IN YOUR HOME STATE. UNDER RHODE ISLAND LAW, THIS PROVISION MAY NOT BE APPLICABLE IN ALL CASES. SEE THE <u>RHODE ISLAND ADDENDUM A</u> ATTACHED HERETO.

THE FRANCHISE AGREEMENT STATES THAT MASSACHUSETTS LAW GOVERNS THE AGREEMENT, AND THIS LAW MAY NOT PROVIDE THE SAME PROTECTIONS AND BENEFITS AS LOCAL LAW. YOU MAY WANT TO COMPARE THESE LAWS. EVEN THOUGH THE FRANCHISE AGREEMENT PROVIDES THAT MASSACHUSETTS LAW APPLIES, RHODE ISLAND LAW MAY SUPERSEDE THIS PROVISION. SEE THE <u>RHODE ISLAND ADDENDUM A</u> ATTACHED HERETO.

THERE MAY BE OTHER RISKS CONCERNING THIS FRANCHISE.

The effective date of the offering circular is: February 6, 2003

i