UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                        )
BOWEN INVESTMENT, INC.                  )
HONEY DEW ASSOCIATES, INC.              )        C.A. No. 05 – 11709 NMG
        Plaintiffs and Counterdefendants )
                                        )        Judge Nathaniel M. Gorton
v.                                      )
                                        )
CARNEIRO DONUTS, INC and                )
MANUEL M. CARNEIRO                      )
        Defendants and Counterclaimants )
_____)

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

On August 12, 2005, the Plaintiffs filed a complaint against the Defendants alleging

breach of their franchise contract, trademark violations and asking for post termination damages.

On October 20, 2005 the Defendants filed their first amended answers and alleged in

counterclaim breach of contract, breach of the warranty of good faith and fair dealing, fraud

through material misrepresentation and failure to disclose material facts, violation of the Rhode

Island Franchise Investment Act and violation of M.G.L. c. 93A.   On December 9, 2005, the

Plaintiffs filed a for motion summary judgment which the Defendants hereby oppose.

## ARGUMENT

## I.    GENUINE AND TRIABLE FACTS REMAIN REGARDING WHETHER DEFENDANTS WERE PROPERLY TERMINATED AND THE PLAINTIFFS HAVE FAILED TO SHOW THEY ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW

Plaintiffs have failed, as required by Fed. R. Civ. P. 56 (c), to show that there is no

genuine issue as to any material fact.   There are at least several material, disputed and triable

issues regarding whether the Defendants violated their payment obligations and thus whether the

Plaintiffs' termination of their franchise is legal or valid.  For example:

A.       Paragraph 11(b) of the Plaintiffs' Statement of Undisputed Material Facts states that " A Notice of Default was served on the Defendants, on or about February 22, 2005, for failure to make required payments.  Defendants did not timely cure the Default.  <u>Verified Complaint</u>, ¶ 26, <u>Robert Bowen Aff.</u>, ¶ 7(b)."   However, the Defendants point to the <u>Second Affidavit of Manuel Carneiro</u>, ¶ 17 and related Exhibit A which contains copies (front and back) of the actual checks dated 2/10/05 and 2/20/05 for the royalty fees, rent and taxes that are the subject of the 2/22/05 default notice.   As the default notice was sent on 2/22/05, two (2) of the weeks which were allegedly in default were the weeks ending 1/30/05 and 2/6/05 as stated in the default letter.  See <u>Verified Complaint,</u> ¶ 26,  Exhibit I.   However, the two dated checks for the royalty fees to Bowen Investment, Inc. ("BII")   show that they were sent on 2/10/05 and 2/20/05 respectively and most importantly the fronts show the bank's stamp showing that they were deposited on 3/01/05 which is clear material proof that the Defendants cured the 2/22/07 default letter within 7 days because 7 days from 2/22/05 is 3/01/05 and thus these checks were received and deposited by the Plaintiffs within 7 days of the date of their default notice.[1]   The default letter provided seven (7) days to cure per the franchise agreement.  <u>Id.</u>   This brings into serious question and dispute whether the termination notice of 5/27/05 ( <u>Id.</u> at Exhibit K) is a valid and legal termination as it is predicated on an allegedly valid uncured 2/22/05 default notice which, in fact, had been timely cured.   As well, this is assuming the Defendants even received the default letter on 2/22/05, which is improbable because it's dated 2/22/05 – thus they had even more time to cure, but there is nothing on the record as to when they received the 2/22/05 Notice to Cure – which would be another triable material factual issue.

        Additionally, the 2/22/05 default notice should have specified each payment (at least the

---

[1] Actually the backside shows a date of "02282005" under Citizens Riverside so the original deposit date was probably 02/28/05 making the Defendants' cure even sooner than 3/01/05.

specific weeks that were due) that were being defaulted.   See <u>Verified Complaint</u> at Exhibit B

(Franchise Agreement,  XX (3) (Termination) which states:  "However, in the event of a

Payment Default, we will, prior to termination, forward to you a Notice of Default, specifying

each payment overdue".   This specification was not made in the 2/22/05 Notice of Default with

regard to what weeks fees and royalties were actually due.  However, if the default notice were

found to cover the weekending 2/13/04 (making 2/18/05 the due date) the Defendants' point to

the <u>Second Affidavit of Manuel Carneiro</u> ¶ 18 and related Exhibit B which contains copies of the

actual checks dated 2/24/05 and 2/25/05 which were sent to the Plaintiffs' attorney in response to

the 2/22/05 "default letter" (along with a letter from the Defendants showing that the water and

sewer bills noted in the 2/22/05 default letter had been paid and that the supposedly delinquent

real estate bill had not been sent to the Defendants).   The dates of the checks in Exhibit B are

within the default cure period of seven (7) days which, at a minimum, is document evidence that

a material dispute viably exists as to the triable issue of whether the Defendants cured the

2/22/04  "default" in a timely manor.    The bank stamp on these checks indicate they were

deposited on 3/15/05 but bear in mind these checks were sent to the Plaintiffs' attorney who is

located in Quincy, MA.   These weekly fee, rent and tax payments were usually sent to the

Defendants' office in Cranston, RI. so there was an unknown lag time until they were deposited

by the Defendants after receiving them from their Massachusetts attorney.

       The above clearly shows that, at minimum, there are material factual issues related to

whether the Defendants' timely cured the "defaults" noted in the 2/22/05 Default Notice or

whether they were even in default.   A reasonable jury could well find that the Defendants timely

cured the 2/22/05 Default Notice and may find they were not even in default because the moving

Plaintiffs have not shown the Court that the Defendants had not paid their 2/22/05 weekly fees,

rents and taxes on time.   In contrast, the Defendants are presenting clear and conclusive evidence that at least two (2) weeks of royalty fees, rent and taxes were timely cured if not timely paid.   The Plaintiff movants are showing no evidence beyond mere pleadings and a self-serving affidavit that the Defendants did not timely pay or cure any of the "defaults" noted in the 2/22/05 Default Notice and have thus failed to meet their burden of production anyways.   Thus, the moving Plaintiffs have failed to show the Court, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c);   Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574, 587 (1986) (Court must view all evidence in light most favorable to nonmoving party).

Furthermore, the Robert Bowen Aff., ¶ 7 (b)  relied upon in the Plaintiffs' Statement of Material Facts regarding the 2/22/05 Default Notice states: "Not only was the arrearage not timely cured, but by the cure date, the arrearage had not been reduced.   As a result, a Notice of Termination dated May 27, 2005 was served on the Defendants."    However, the document evidence the Defendants are pointing to above conclusively demonstrates this to be false – or at a bare minimum to clearly be in dispute.   The facts as to what was or was not in default and/or cured are central and material to the Plaintiffs' Summary Judgment Motion.   *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986) (A fact is material if it "might affect the outcome of the suit under the governing law.").  If a jury were to find that the Defendants' timely cured the "defaults" noted in the 2/22/05 Default Notice (or were not in default in the first place) then the Defendants' May 27, 2005 "Termination" would be invalid (as it is directly predicated on a valid uncured 2/22/05 Notice of Default) and the Defendants should or at least could prevail in this suit on that basis alone.

**B.**     Paragraph 11(c) of the Plaintiffs' Statement of Material Facts states that  "A Notice of Default was served on the Defendants, on or about May 27, 2005, for failure to make required payments.  Defendants did not timely cure the Default.  <u>Verified Complaint</u>, ¶ 26, <u>Robert Bowen Aff.</u>, ¶ 7(c)."   This purported default notice (See <u>Verified Complaint</u>; Exh. J) states that it is for failure "… to make timely payments of royalties , service fees and rent due for the weeks (sic) ending May 15, 2005."   This default notice was sent for (1) one week of back royalties, rent and service fees.   However, the Robert <u>Bowen</u>., Aff.  ¶ 7 (c) relied upon in the Plaintiffs' Statement of Material Facts states: "At the time of the issuance of the Notice of Default, the Defendants were two weeks in arrears.  Not only was the arrearage not timely cured, but by the cure date, the arrearage had not been reduced.   As a result, a Notice of Termination dated June 8, 2005 was served on the Defendants."   First, the default notice was dated May 27, 2005 which means the Defendants could not have been more that one week late in fees which would have been for the week ending 5/15/05.   At a minimum, the weekly fees for the week of May 22, 2005 would have been due by end of day May 27, 2005 – thus the default notice was written and dated before the week of 5/22/05 could have even been in default.   Additionally, Defendants point to the <u>Second Affidavit of Manuel Carneiro</u> ¶ 19 and related Exhibit C which contains copies of the actual checks dated 5/26/05 which, as indicated on the checks, were for the 5/15/05 advertising, rent and royalty fees cited in the "default letter".   The dates of the checks are well within the default cure period of seven (7) days from 5/27/05 which, at a minimum, is document evidence that a material dispute viably exists as to the issue of whether the Defendants cured the 5/15/05 "default" in a timely manor - thus placing in dispute the validity of the 6/8/05 "Notice of Termination".

Finally, the 5/22/05 weekly advertising, rent and royalty fees from the Defendants is paid

and dated 6/01/05 which would have been within the 7 day cure period even if they were late and a legitimate part of the 5/27/05 default notice.   Defendants point to the <u>Second Affidavit of Manuel Carneiro</u> ¶ 20 and related Exhibit D that contains copies of the actual checks dated 6/01/05 which, as indicated on the checks, were for the 5/22/05 advertising, rent and royalty fees. If a jury were to find that the Defendants' timely cured the purported 5/15/05 and 5/22/05 defaults then the Defendants' 6/8/05 Termination would be invalid and a reasonable jury could find that the Defendants should or at least could prevail in this suit.   Even if the Plaintiffs had satisfied their burden (which they have not) that there is no genuine issue as to any material fact and that the Plaintiffs are entitled to a judgment as a matter of law, the Defendants have clearly set forth above additional specific facts showing that there are genuine, triable issues and thus summary judgment is not appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).   In fact, the Defendants deny the Plaintiffs' assertion that they have been routinely late in making payments and then failed to cure legitimate defaults.  See <u>Second Affidavit of Manuel Carneiro</u> ¶ 5 and state that they have timely cured any defaults that could justify termination of their franchise agreement.   See <u>Second Affidavit of Manuel Carneiro</u> ¶ 6.

**C.**    A Notice of Default dated January 27, 2005 was sent to the Defendants calling for the fees due for week ending 1/09/05.   As 1/27/05 is a Thursday, the only week that could possibly have been due was 1/09/05 as the 1/22/05 payments would have been due at the earliest on 1/28/05. Defendants point to the <u>Second Affidavit of Manuel Carneiro</u> ¶ 21 and related Exhibit E  which contains copies of the actual checks dated 1/20/05 for the weekly advertising, rent and royalty fees due for 1/09/05.   At a minimum, these checks present a genuine dispute as to when the 1/27/2005 default notice was cured – assuming it was legitimate, for they are dated before the time to cure and the Plaintiffs make no showing to the Court as to when they were received by

the Plaintiffs and thus they again fail to prove a necessary element of their claim.   Also, the

Robert Bowen., Aff.  ¶ 7 (a) relied upon in the Plaintiffs' Statement of Material Facts states that

at the time of the 1/27/05 default notice the Defendants were two (2) weeks in arrears, however

the Defendants have already shown that to be impossible.   Finally, the 1/27/05 default notice is

not mentioned or relied upon in the May 27, 2005 Notice of Termination so it's irrelevant to the

Plaintiffs summary judgment motion anyways.

## II.    THE DEFENDANTS WILL PREVAIL ON THEIR DEFENSES AND ALL SIX (6) OF THEIR COUNTERCLAIMS

With respect to the Defendants' six (6) Counterclaims the Plaintiffs' assert they are

entitled to summary judgment on all of them.  The burden is upon the Plaintiffs to show, based

upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Plaintiffs have failed on both of these summary judgment prongs with respect to all six (6)

Counterclaims.   Below, the Defendants will show there is either at least one genuine material

and triable issue for each Counterclaim or if there is no such remaining triable dispute on a

Counterclaim then why the Defendants, not the Plaintiffs, are entitled to summary judgment.

## A.    THE PLAINTIFFS BREACHED THE FRANCHISE AGREEMENT BY NOT PROPERLY TRAINING THE DEFENDANTS

The Plaintiffs contend that they did not properly train the Defendants because they

waived the training and no training was required or offered to the Defendants.   However, the

Defendants point to the deposition of Robert Bowen, President of BII, where he admitted to

providing training to the Defendants by stating:  "I arranged for Mr. Carneiro to train with Joe

Garcia who was a franchisee on Warwick Avenue.".   Robert Bowen/BII Deposition, Affidavit

of Kevin R. McCarthy (" McCarthy Aff.)  <u>Tab 1</u> at page 31, lines 15-18.   As well, Robert

Bowen, President if BII, he admitted to paying franchisee Joseph Garcia $ 2000.00 to train the

Defendants in the Honey Dew Donut business system.  <u>Id.</u> at page 32 lines 8-11; 22-25 and page

33 lines 19-23.   Additionally, Joseph Garcia testified to receiving $ 2000.00 for training the

Defendants  ( <u>Joseph Garcia Deposition</u>,  <u>McCarthy Aff.</u>,  <u>Tab 2</u>  at page 25, lines 8-14)  and that

he was asked to train the Defendants by Robert Bowen.  <u>Id.</u> at page 18, lines 8 -11.   The above is

clear evidence that the training of the Defendants was not waived by the Plaintiffs as they claim.

At a minimum, this is a disputed material, triable issue and a reasonable jury will, or at least

could, find that the Plaintiffs' (without waiver) trained the Defendants' and then the jury could

go onto the material issue of whether the training provided the Defendants fulfilled the Plaintiffs'

obligations under Section V of the franchise agreement.

     The Defendants point to the deposition of Joseph Garcia, the BII/Honey Dew designated

trainer of the Defendants', to show that the Defendants' training was grossly inadequate.

Joseph Garcia testified that:  (1)  He never trained any franchisee for BII/Honey Dew before or

after he trained the Defendants.  <u>Joseph Garcia Deposition</u>, McCarthy Aff.,  <u>Tab 2</u> at page 17

lines  17-24 and page 18 lines 1-4.   (2) The Defendants were never tested or given any

evaluations during their training. <u>Id</u>. at page 26, lines 14 - 23.  (3)  The Defendants' had no

training schedule. <u>Id</u>. at page 22 lines  4 – 11.   (4)   No Honey Dew manuals were used in the

training of the Defendants.  <u>Id.</u> at page 28, lines 22-24.   (5)  Mr. Garcia can not confirm that the

Defendants received customer service training.  <u>Id.</u> at page 71, lines  2-5.   (6)  The Defendants

did not receive any training on the cleaning of a Honey Dew shop. <u>Id.</u> at page 71, lines 6 – 22.

and  (7)  The administrative management training was never completed.  <u>Id</u>. at pages 71, lines

23-24 and page 72, lines 1-16.   Additionally, See <u>Second Affidavit of Manuel Carneiro</u> ¶'s 13 –

14 where the Defendant states he was not trained on how to manage, maintain or administer a Honey Dew franchise shop by Joseph Garcia or by BII.   The above deposition and affidavit testimony provides clear factual evidence from which a reasonable jury could conclude that the Defendants were not properly trained by the Plaintiffs, as required by Section V of the franchise agreement, and thus the Plaintiffs breached the franchise agreement as the Defendants charge in their Counterclaim I.   Moreover, BII's inadequate training seriously inhibited the Defendants' efforts to properly manage a Honey Dew franchise shop.   See <u>Second Affidavit of Manuel Carneiro</u> ¶'s 15.

**B.    <u>PLAINTIFFS ILLEGALY  DEMAND AND TRAIN OPERATORS TO PAY THEIR WEEKLY AD FUND AND ROYALTY FEES DIFFERENTLY THAN STATED IN THE FRANCHISE AGREEMENT AND DO NOT DISCLOSE THIS MATERIAL  AND UNORTHODOX  ACCOUNTING PRACTICE IN THEIR OFFERING CIRCULAR</u>**

The Plaintiffs' claim that, "for convenience", BII requests that its franchisees issue two checks, 5% to BII and 4% to the Advertising Fund instead of 7% and 2% as required by the franchise agreement.   <u>Robert Bowen Aff</u>. at ¶ 6.".   However, BII does not request but tells franchisees that they have to pay their weekly franchise and advertising fees in this manor despite contrary language in the franchise agreement.   The Defendants point to the deposition testimony of Donal Smith, the franchisee from whom the Defendants purchased their franchise, for clear testimony that Bob Bowen, President of BII, told Mr. Smith that he had to pay his weekly fees as 5% and 4% instead of the 7% and 2% called for in the franchise agreement.   See <u>Donal Smith Deposition</u>, <u>McCarthy Aff.</u>, <u>Tab 3</u>  line 18 at page 53 until line  24 at page 55. The Defendants also point to the <u>Joseph Garcia Deposition</u>, <u>McCarthy Aff.</u>,  <u>Tab 2</u>  at page 54, lines  5- 21.   These depositions show that BII tells franchisees that they "have to" to pay their weekly fees as 5% and 4% and that BII actually trains their new franchisees to pay their fees as

5% and 4% - thus they do not "request" this of their franchisees, rather they tell them they must pay their fees as 5% and 4% and train them to do so.

Why the Plaintiffs require that their weekly fees be paid in amount and percentages significantly contrary to the franchise agreement is unknown to the Defendants.   However, when the Defendants, in a July 25, 2005 letter[2], advised the Plaintiffs that they would refuse to pay their fees contrary to the terms of the franchise agreement, the Plaintiffs responded with another Notice of Termination (dated August 1, 2005 - for receipt of three Notices of Default in a one year period ) .   Manuel Carneiro Aff. at ¶ 22.   On August 2, 2005 the Defendants replied and further explained their position regarding the payment of weekly fees (Manuel Carneiro Aff. at ¶ 23) but on August 12, 2005, the Plaintiffs filed the present suit.   The Defendants assert that the August 1, 2005 Notice of Termination and this present lawsuit are, at least in part, in retaliation for the Defendants' refusal to participate in an unorthodox accounting practice related to the payment of their weekly fees and this would be a question for a jury.  See Lipsett v. University of Puerto Rico, 864 F.2d 881, 895 (1st Cir.1988) (test for granting summary judgment is "particularly rigorous when the disputed issue turns on a question of motive").   A reasonable jury could find that the Plaintiffs' undisclosed and irregular business practices relative to the payment of weekly fees, and their apparent retaliation against the Defendants when they refused to participate despite contrary language in their franchise agreement,  supports the Defendants' defenses of unclean hands, estoppel and unjust enrichment as well as the Defendants' counterclaims for breach of contract (Counterclaim I), breach of the warranty of good faith and fair dealing ( Counterclaim II), fraudulent misrepresentation and failure to disclose (Counterclaims III and IV), violation of the Rhode Island Franchise Investment Act (Counterclaim V) and violation of  M.G.L c.  93 A (Counterclaim VI).   Again, the question of

---

[2]  See Manuel Carneiro Aff. at ¶ 31 and related Exhibit.

retaliation would be one of intent and motive which is a question for a factfinder not to be judged

on summary judgment.   See Caro v. Aponte-Roque, 878 F.2d 1,2-4 ( 1st Cir. 1989).

**C.    PLAINTIFF BII CLEARLY FINANCES EQUIPMENT AND DOES NOT DISCLOSE THIS PRACTICE AS REQUIRED BY THE FTC FRANCHISE RULE AND THE RHODE ISLAND FRANCHISE INVESTMENT ACT**

The Plaintiffs' forced the Defendants, and have forced other franchisees, to accept

equipment they procure from vendors and then require the franchisee to sign financing

agreements which incur additional weekly payments to Bowen Investment, Inc. – above and

beyond what is called for in the franchise agreement.   The Plaintiffs state in their Offering

Circular that they do not provide direct or indirect financing to franchisees.  Manuel Carneiro

Aff. at ¶ 24 (Item 10 of BII UFOC).   As well, the Plaintiffs deny that they finance franchisee

equipment or engage in the above noted equipment related business practices.   See Plaintiffs'

Statement of Material Facts  ¶ 14.   But the Defendants point to and state:

1.    See Manuel Carneiro Aff. at ¶ 25 which is documentation of equipment financing

initiated by BII.   The cover letter clearly calls for re-payment of monies to Bowen Investment

by the Defendants.  The subject of the document is shop equipment.   The Rhode Island

Restaurant invoice of 8/06/04 designates Bob Bowen as the buyer.    The DMX invoice of

7/30/04 shows Bowen Investments as the buyer.    Also, See Robert Bowen/BII Deposition,

McCarthy Aff., Tab 1  at page 84, lines 5-15, and  page 85, lines 1-8, where Bob Bowen/BII

clearly testify to providing equipment financing to franchisees.    As well, See Manuel Carneiro

Deposition, McCarthy Aff., Tab 4  at starting at page 27, line 2 to page 29 line 17 which

describes how Bob Bowen, President of BII, forced equipment purchases on the Defendants and

then arranged to finance that equipment.  Also see  Mario Carneiro Deposition, McCarthy Aff.,

Tab 5 at page 99 starting at line 6 to page 106 ending at line 3 for even more factual details as to

how and when BII finances equipment purchases for other franchisees as well as the Defendants.

Clearly, BII is provides "equipment financing" to its franchisees or, at a minimum, there is a

genuine dispute as to the material issue of whether or not BII provides equipment financing to its

franchisees (and to the Defendants) as well as to whether or not BII sold equipment to the

Defendants.

2.       This issue is material to this case because the 2/06/03 Offering Circular disclosed to the

Defendants clearly states at Item 10 - FINANCING:  "BII does not offer direct or indirect

financing, … ".   If a franchisor provides any direct or indirect financing to its franchisees then

the FTC Rule and the Rhode Island Franchise Investment Act both mandate that such financing

be disclosed in its Offering Circular.    See NASAA UFOC Guidelines - Item 10 (1993).    The

Defendants point to the above affidavit and deposition testimony which clearly verifies and

describes the equipment financing practices of BII and which place their denial of such practices

in clear dispute and, in fact, clearly refutes their denial.    This material factual dispute is

important to this case because a reasonable jury will or could determine that BII does offer direct

or indirect financing, in violation of  its Item 10 Offering Circular disclosure, and thus BII

would, or at least could, be found to violate the Rhode Island Franchise Investment Act  sections

19-28.1-17; 19-28.1 1-2 (Counterclaim V);  M.G.L c 93A (Counterclaim VI);   Count III (fraud

through material misrepresentation),  Count IV (fraud through failure to disclose material facts),

Counterclaim I ( breach of contract) and Count II (breach of warranty of good faith and fair

dealing).   Additionally, BII forced the Defendants to accept unwanted equipment and make

additional $100.00 a week payments to BII which significantly strained the Defendants' financial

condition and made it more difficult to pay their weekly fees on time which supports the

Defendants' defenses of unclean hands, estoppel, duress, fraud and unjust enrichment as well as

all six (6) of their Counterclaims.    See Manuel Carneiro Deposition, McCarthy Aff., Tab 4 at

page 27, lines 6-18; Manuel Carneiro Aff. at ¶ 12.

## D.   PLAINTIFFS FAILED TO DISCLOSE MATERIAL LITIGATION IN THEIR 2/06/03 AND 2/06/04 OFFERING CIRCULARS

Plaintiffs made two (2) Uniform Franchise Offering Circular (hereafter "UFOC")

disclosures to the Defendants – one dated 2/06/03 and the other 2/06/04.    See Robert Bowen

Aff., ¶ 6) (admitting disclosure of the 2/06/03 UFOC; See also  Exhibit 4 of Memorandum of

Defendants to Compel Plaintiffs' Production of Documents Related to the Plaintiffs' Present and

Past History of Litigation which is the 2/23/2004 letter from the Plaintiffs' attorney to the

Defendants' attorney that accompanied the 2/06/04 Offering Circular disclosure and which

specifically states  "Enclosed please find the updated Offering Circular of Bowen Investment

Inc., …".   [3]  Also  See Manuel Carneiro Aff. at  ¶'s 24, 26 and 27.    Additionally, the 2/06/04

UFOC is clearly referenced in the First Amended Defendants' Answer and Counterclaims

(allegations 42,48,52,54,58,61 and 70).   The Defendants' allege that BII failed to disclose in its

updated 2/06/04 UFOC the two (2) counterclaims of former franchisee in *Honey Dew Associates,*

*Inc.* v. *Yazbek*, Norfolk Superior Court, NOCV2003-02110 ( filed 11/13/2003 and presently

ongoing) – as required by the FTC Franchise Rule and the NASAA  guidelines.   See NASAA

UFOC Guidelines - Item 3 Litigation (1993).    The Defendants point to Exhibit 1 which is a

court certified copy of this case that shows these two counterclaims, against the Plaintiffs BII and

HDA, alleging misrepresentations, breaches of contract and unfair and deceptive trade practices.

See *Knight V. Schulman*, 102 F. Supp. 2d 867, 871 ( S.D. Ohio 1999) (certified copy of

---

[3] Celotex Corp. v. Catrett, 477 U.S. 317, 322-324 (1986) (although Fed. R. Civ. P. 56(e) requires opponent to respond to properly made summary judgment motion with "specific facts", nonmovant may discharge this burden by designating portions of record that demonstrate existence of genuine dispute of material fact).

Certificate of Judgment from county court did not require further authentication).

For an even more obvious and egregious failure to disclose litigation, the Defendants point to the court certified January 4, 1995 complaint filed by franchisees specifically alleging fraud, conspiracy and breach of contract against Honey Dew Associates, Inc which is attached as Exhibit 2 herein.  Id; Also see *United States v. Wittje*, 333 F. Supp. 2d 737, 745 (N.D. Ill.. 2004) This complaint is styled as *Cohen Maria Rocha  et al v. Honey Dew Associates, Inc.,* PLCV1995-00019 (1995) and its franchisee claims were not disclosed to the Defendants in BII's 2/06/03 and 2/06/04 UFOC disclosures.   This is clearly a serious violation of the FTC Franchise Rule and the Rhode Island Franchise Investment Act.   See *United States v. Building Inspector of America,* 894 F. Supp. 507, 515-518 (D. Mass. 1995) ("The FTC has placed an absolute obligation on franchisors to disclose information to prospective franchisees.");  Rhode Island Franchise Investment Act, Sections 19-28. 1-3 (6); 1-17 (2) (3) and 1-2.

Additionally, Defendants point to the attached Exhibit 3 which is a court certified copy of another case where BII failed to disclose in its UFOC  (2) counterclaims filed against both BII and HDA.   This case is styled *Honey Dew Associates, Inc. and Bowen Investments, Inc. v. A&F Management, Inc,* C.A. No. 99-463T, (USDC of RI) and it was settled and dismissed on July 3, 2001.  See Exhibit 3.   The undisclosed counterclaims were for wrongful termination, breach of contract and breach of the covenant of good faith and fair dealing.    And again, Defendants point to a fourth court certified copy of a complaint, settlement stipulation, answer and counterclaim, and BII and HDA 's  answers to the counterclaim which BII failed to disclose in its 2/06/03 and 2/06/04 UFOC disclosures.  See Exhibit  4.    This fourth example is styled *Honey Dew Associates, Inc. et al. v. M & K Food Corp, et al.*, Bus. Franchise Guide (CCH) Para. 11,813 (D. R.I. Jan. 31, 2000) and the counterclaim alleged various breaches of contract by BII.

Moreover, BII made a fraudulent material misrepresentation in Item 3 (Litigation) of its 2/06/03 and 2/06/04 UFOC disclosures which states: "Other than as specified, no litigation is required to be disclosed in this offering circular".   See <u>Manuel Carneiro Aff.</u> at ¶'s24, 26 and 27 (copies of the 2/06/03 and 2/06/04 BII UFOCs) at Item 3.   Also, contrary to Plaintiffs' assertions that no disclosure of the above litigation is required and that " A settlement which is not adverse need not be disclosed" please note DOC, BUSINESS FRANCHISE GUIDE  ¶5800, Commentary dated June 21, 1994 regarding Item 3 disclosure requirements, which states: "The last sentence of section ii of Item 3, Definitions, allows the omission of an action which is dismissed as a result of a concluded adversarial proceeding, but is not intended to cover dismissal of an action in connection with a settlement."

The Plaintiffs' failure to properly disclose its history of litigation supports four (4) of the Defendants counterclaims.   These Counterclaims are: Count III – Fraud Through Material Misrepresentation, Count IV – Fraud Through Failure to Disclose Material Facts, Count V – Violation of the Rhode Island  Franchise  Investment Act and Count VI – Violations of M.G.L. c. 93A.   As well, the Plaintiffs' failure to properly disclose its history of litigation supports at least four (4) of the Defendants' defenses which are: 1. Illegality 2.  Fraud 3. Unclean Hands and 4. Estoppel.   Finally, the Plaintiffs' failure to properly disclose the above litigation history is relevant and material to this case because the Defendants would never have signed a BII or Honey Dew franchise agreement if they knew about the above noted undisclosed claims, counterclaims and lawsuits involving the Plaintiffs.   See <u>Manuel Carneiro Aff.</u> at ¶ 28.   Also see *United States v. Building Inspector of America,* 894 F. Supp. 507, 515-518 (D. Mass. 1995) ("The materiality of the counterclaims here is self-evident" … "Rather, TBIA admits that it settled these claims for an undisclosed amount.   This is clearly the kind of information that a

'reasonable prospective franchisee would consider important in making a decision relating' to buying a TBIA franchise".).  Moreover, if the Defendants had been informed of even one of the above noted 4 lawsuits that would have been a significant disclosure to them which would have negatively influenced their decision whether or not to sign a BII franchise agreement. See Manuel Carneiro Aff. at ¶ 29.


### E.    DEFENDANTS ARE THIRD PARTY BENEFICIARIES OF HDA'S ADMINISTRATION OF THE ADVERTISING FUND

HDA claims no contractual obligations to the Defendants with respect to the Honey Dew Advertising Fund but the franchise agreement states otherwise at Section X (d): "HDA's obligations with respect to administration of the Advertising Fund shall be contractual and not fiduciary".   The UFOCs and franchise agreement at Section X state that  "…HDA shall retain sole control over the use of the Advertising Fund and all issues relating thereto.".  The Defendants', like franchisees in other franchise chains, are clearly third-party beneficiaries of the Advertising Fund.  See Oil Exp. Nat., Inc. v. Latos, 966 F.Supp. 650 (N.D. Ill., 1997) ("[f]ranchisees of Oil Express are the clear beneficiaries of such advertising, and they are consequently direct beneficiaries under the Citgo-Oil Express agreement.").  Additionally, the franchise agreement directly references the Ad Fund Policy Statement which is contained in the UFOCs as Addendum C.   See Manuel Carneiro Aff. at ¶'s 24; 27.  The Ad Fund Policy Statement is the document which created the Ad Fund and defines the relationship between HDA and all franchisees.   The Defendants point to these documents to show that HDA has a direct contractual obligation to the Defendants in addition to the third party beneficial relationship.  However, whether direct or as a third party beneficiary the Defendants' also point toward the following:

1.  See <u>Richard Bowen/HDA Deposition</u>, McCarthy Aff., <u>Tab 6</u> at pages 71 line 8 to page 74, line 4 in which he admits that no Annual Advertising Fund Report has been provided by HDA to franchisees for the year 2004 and that he can not remember (even though he is responsible for producing the Annual Report) if HDA had produced any of the required annual reports for the years 1998-2003. At a minimum, this shows a material triable issue because a reasonable jury could find that HDA had breached its third party and/or direct contractual obligations to the Defendants to provide "… periodic statements, at least annually, as to receipts and expenditures of the Advertising Fund" as promised at Section X of the franchise agreement.

2.  See <u>Manuel Carneiro Aff.</u> at ¶ 30. which points to an e-mail showing that HDA was asking for and expected his advertising contribution to be 4% and not 2%. Richard Bowen confirms that the e-mail is originally from Monika Keiffer who works for HDA as their bookkeeper. See <u>Richard Bowen/HDA Deposition</u>, McCarthy Aff., <u>Tab 6</u> at page 58, lines 20-23. This e-mail supports Defendants' allegation that HDA knew about, participated in and supported the illegal requirement that the Defendants' pay their weekly Ad fees in a manor contrary to their franchise agreement and thus HDA is also liable to the Defendants for the contractual breaches and damages resulting from their refusal to participate in unorthodox and undisclosed accounting practices pertaining to the payment of weekly fees.

**F.     HONEY DEW ASSOCIATES, INC. HAS FAILED TO REGISTER IN RHODE ISLAND UNDER THE RHODE ISLAND FRANCHISE INVESTMENT ACT**

Defendants' admit that HDA is not registered with the state of Rhode Island under the Rhode Island Franchise Investment Act (hereafter "RIFIA"). See <u>Richard Bowen/HDA Deposition</u>, McCarthy Aff., Tab <u>6</u> at page 49, lines 4-8. HDA also admits that BII is a subfranchisor of HDA's in Rhode Island and that there is a written subfranchise agreement

between HDA and BII.   <u>Id.</u> at page 20, line 16 to page 21, line 24.    The RIFIA defines a

subfranchisor as the franchisee of the original "parent" franchisor which, in this case, is HDA.

See RIFIA §19-28.1-3 (8)**.**   RIFIA also states at  § 19-28.1-5 that: "It is unlawful for any

person to offer or sell a franchise unless the offer is registered under this act or is exempt from

registration under § 19-28.1-6.".

     Clearly, HDA is a franchisor in Rhode Island because it has a subfranchisor in BII and

there can not be a subfranchisor without a "parent" franchisor which is HDA in this case.    As a

franchisor, HDA is required to register under RIFIA in the state of Rhode Island.   <u>Id.</u>   If this

Court were to Rule that HDA is not required to register then HDA or any other franchisor would

be able to evade the RIFIA (and thus oversight by the state of Rhode Island) simply by setting up

a second affiliated corporation and only register that second affiliated corporation thereby

evading the franchise statute.   If that were the case then the door would be open to every

franchisor setting up affiliated subfranchisor corporations and completely evading the RIFIA.

Bear in mind, there are 13 other states that have similar franchise registration statutes such as

RIFIA so a Federal Court decision supporting HDA's position would most probably be used as

precedent for franchisors to evade legitimate franchise statutes in 14 states in the same manor

HDA is presently doing in Rhode Island.    Also, BII has only full-time employee (its President,

Robert Bowen) and only one part-time employee  – thus HDA considerably reduces its liability

under RIFIA by only having BII registered in Rhode Island under RIFIA.   See <u>Robert</u>

<u>Bowen/BII Deposition</u>, <u>McCarthy Aff.</u>, <u>Tab 1</u>  at page 17 line 6 to page 18 line 25.

     As well, the General Instructions for the UFOC as adopted and amended by the NASAA

in 1994 states at # 220:  "The offer of subfranchises is an offer separate from the offer of

franchises and usually requires a separate registration or exemption.  A single application may

register the sale of single unit and multi-unit franchises if the offering circular is not confusing."
See Policy, Business Franchise Guide [¶5751] General Instructions.   The NASAA requirements
clearly contemplate two (2) registrations or a clear and not confusing joint registration when a
subfranchisor is involved as is the case here with BII as a subfranchisor to HDA.   HDA has not
properly registered and is evading state regulation under RIFIA and this Court should so Rule.

      HDA's failure to properly register, or register at all, in the state of Rhode Island under the
RIFIA subjects the franchise agreement between the parties to rescission pursuant to the RIFIA.
See RIFIA § 19-28.1-21  Private Civil Actions  ("In the case of a violation of §§ 19-28.1-5, 19-
28.1-8, or 19-28.1-17(1) – (5), the franchisee may also sue for rescission.)"; Also see US-BNK-
CT, Business Franchise Guide ¶9483, 1989 (A bakery franchisor's failure to register under the
Rhode Island disclosure/registration law entitled its franchisee to rescind the franchise agreement
and to recover $36,342 in damages.).

**G.**              **M.G.L C. 93A CLEARLY APPLIES TO THIS CASE**

      Defendant BII is incorporated in Massachusetts and its main office was located in
Taunton, Massachusetts when the franchise agreement was being negotiated and when it was
signed.   The franchise agreement and other related documents were signed at BII's main office
in Taunton, Massachusetts on or about June 1, 2004.   The weekly franchise and advertising fees
were for several months sent to BII at its Taunton, Massachusetts office.   HDA has at all times
been headquartered and incorporated in Massachusetts and is the owner of all the trademarks
which are the subject of this suit.   The advertising fees has been managed and controlled at all
times in Massachusetts and the weekly Advertising Fees are always sent to HDA's headquarters
in Massachusetts.  The franchise agreement at Section XXV- Applicable Law states that "The
parties agree that this contract is executed in Massachusetts and is to be interpreted and governed

in accordance with the laws of the Commonwealth of Massachusetts without regard to the conflict of laws provision thereof".    Robert Bowen, President of BII, admits that he takes direction from Richard Bowen, President of HDA, whom her refers to as "the boss" and HDA as the "parent company".    See <u>Robert Bowen/BII Deposition</u>, <u>McCarthy Aff.</u>, <u>Tab 1</u> at page 21, lines 15-25.    BII is a subfranchisor of HDA.  The "center of gravity" of the circumstances that give rise to the Defendants' counterclaims are primarily and substantially within Massachusetts and thus M.G.L  c.  93A (Counterclaim VI) clearly applies to this case.   See *Kuwatti Danish Computer Co., v. Digital Equip. Corp.,* 438 Mass. 459, 472-73 (2003).

### III.                                          <u>CONCLUSION</u>

      WHEREFORE, for all the above reasons, the Defendants ask that the Plaintiffs' motion for summary judgment be DENIED in all respects.

### <u>REQUEST ORAL ARGUMENT</u>

Respectfully,
MANUEL M. CARNEIRO
CARNEIRO DOUNTS, INC.
By their Attorney,

<u>/s/ Kevin R. McCarthy</u>
 Kevin R. McCarthy
(BBO # 640788)
155 Fairoaks Lane
Cohasset, Ma  02025
Date:   12/23/05                              781-383-0639

## CERTIFICATE OF SERVICE

I, Kevin R. McCarthy, certify that on this date I served a true copy the foregoing DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT to counsel for all other parties by electronic means (CM/ECF) to Jack J. Mikels, counsel for the plaintiff, Jack Mikels and Associates LLP, 1 Batterymarch Park, Suite 309, Quincy, MA 02169.

Date:  12/23/05

/s/ Kevin R. McCarthy
Kevin R. McCarthy

**Exhibit 1**

## COMMONWEALTH OF MASSACHUSETTS

Norfolk, SS.                                    C. A. NO. 2003-

03  62110

---

HONEY DEW ASSOCIATES, INC.
                              Plaintiff

vs.

ALI K. YAZBEK,
                              Defendant.

---

### VERIFIED COMPLAINT

1.    Honey Dew Associates, Inc. ("HDA") is a corporation duly organized and existing pursuant to the laws of the Commonwealth of Massachusetts with its principal place of business at 35 Braintree Hill Office Park, Braintree, Massachusetts. At all times relevant hereto, HDA has been in the business of franchising donut and coffee shops known as Honey Dew Donuts® Shops.

2.    Defendant, Ali K. Yazbek ("Yazbek"), is a citizen of the Commonwealth of Massachusetts, residing at 5140 Washington Street, West Roxbury, MA.

3.    On or about March 13, 2000, HDA granted a franchise (the "Franchise") to operate a Honey Dew Donuts® Shop to operate at 2075 Willow Street, Triangle Mall, Manchester, NH (the "Premises") to Wehbi, Inc. pursuant to a Franchise Agreement and an Addendum to Franchise Agreement executed June 14, 2000, as of March 13, 2000, a copy of which is attached hereto as Exhibit "A" (collectively, the "Franchise Agreement").

4.    On or about June 5, 2001, Wehbi, Inc. assigned the Franchise Agreement to Sweet Donuts, Inc., pursuant to an Assignment of Franchise Agreement to Corporate Franchisee (the "Assignment Agreement"), a copy of which is attached hereto as Exhibit "B".

5.    At all times relevant hereto, defendant Yazbek was the sole owner of Sweet Donuts, Inc. and Yazbek was a party to the said Assignment Agreement.

6.    In connection with the Franchise Agreement, Wehbi, Inc. and its owner had executed a Covenant Not to Compete (the "Covenant") dated June 14, 2000, as of March 13, 2000, a copy of which is attached hereto as Exhibit "C".

7.    Pursuant to paragraph 4 of the Assignment Agreement, Yazbek agreed to be jointly and severally liable to HDA for all obligations of Sweet Donuts, Inc. pursuant to the Franchise Agreement and to be personally bound by the Covenant.

8.    In relevant part, Section XXV of the Franchise Agreements provide that they are to be interpreted and governed pursuant to the laws of the Commonwealth of Massachusetts, that claims arising out of or relating to the Agreements shall be submitted, at HDA's option, to the jurisdiction of the Courts of the Commonwealth of Massachusetts and that any rights to the adjudication of such claims in any other jurisdiction is waived.

**COUNT I**

9.    The Plaintiff repeats and reavers the allegations of Count I as if expressly rewritten and set forth herein.

10.    Section II of the Franchise Agreement requires the franchisee to report sales to HDA weekly and to make weekly payments to HDA, such reports and payments due each Friday for the week ending the preceding Sunday, of 7% of gross sales as a Royalty and of 2% of gross sales for the Honey Dew Advertising Fund.

11.    Yazbek owes HDA reports and payments for the weeks ending from June 6, 2003 until the business closed on or about August 31, 2003 and, pursuant to Section XXI of the Franchise Agreement, HDA's costs and legal fees.

2

WHEREFORE, plaintiff prays:

(A)    That a Preliminary injunction issue requiring Yazbek to provide to HDA weekly sales figures for the weeks ending from April 6, 2003 through the cessation of the franchised business;

(B)    that this Court determine the amounts due to HDA for the weeks ending from April 6, 2003 though cessation of the franchised business, including interest, costs of collection and counsel fees and enter judgment against defendant; and

(C)    for such other relief as this Court may deem just.

## COUNT II

12.    Plaintiff repeats and reavers the allegations of Count I as if expressly rewritten and set forth herein.

13.    Pursuant to Addendum paragraph 12 of the Franchise Agreement, the Franchise was to run concurrently with the Franchisee's right to utilize the subject premises, and self-renewing every five years beginning March 13, 2005.

14.    On or about September 1, 2003, Sweet Donuts, Inc. permanently closed its Honey Dew Donuts® Shop at the Premises.

15.    Yazbek owes HDA, pursuant to Section XXI of the Franchise Agreement, all lost royalties, advertising fees, and renewal fees which would have come due but for the improper closure of the business and, pursuant to Section XXI(B), HDA costs and legal fees.

16.    On or about October 27, 2003, HDA forwarded to Sweet Donuts, Inc. a formal Notice of Termination.

17.    Pursuant to Section XXI of the Franchise Agreement, post termination damages are calculated utilizing the average of weekly gross sales for the 26 highest sales weeks in the year ending prior to termination.

WHEREFORE, plaintiff prays:

(A)    That the Defendant be Ordered to return to HDA the Operational Excellence Procedure Manual and all proprietary papers related to the operation of the Honey Dew system as set forth in Section XXI(A)(4) of the Franchise Agreement;

(B)    That a Court determine the term of the underlying Lease of the subject premises and the term of the Franchise Agreement;

(C)    that the Court determine the amounts due to HDA from the time the business closed through the expiration of the Franchise Agreement, including lost royalties, advertising fees, costs, post-termination damages and HDA's expenses and counsel fees and enter judgment against defendant; and

(D)    for such other relief as this Court may deem just.

## COUNT III

18.    Plaintiff repeats and reavers the allegations of Counts I and II as if expressly rewritten and set forth herein.

19.    In September, 2003, Triangle Café opened upon the Premises.

20.    Yazbek is the owner, operator and/or is otherwise involved in the operation of the Triangle Café.

21.    The Franchise Agreement and the Covenant impose limitations on Yazbek as follows:

4

(a)     The Covenants and Section XIII of the Franchise Agreement provide that, "for one year after ... termination of this Agreement, (Yazbek) shall not directly or indirectly engage or be financially interested in, nor associated with any business of the same or similar nature as a Honey Dew Donuts™ Shop within a radius of one half mile of the (Premises)" . . .

(b)     The Covenant and Section XXI of the Franchise Agreement define a business of the same or similar nature as a Honey Dew Donuts Shop as being ":engaged, in whole or in part, in the business of selling fresh donuts, pastries, baked goods, coffee and other products sold in the franchise to which this Franchise Agreement pertains" provides that for one year, defendant "shall not directly or indirectly utilize the premises on which the franchise operates as a donut shop or bakery, except as a Honey Dew Donut Shop, during the intended term of this Agreement and one year thereafter."

22.     The Triangle Café sells fresh coffee and fresh baked goods.

23.     Yazbek's involvement in the Triangle Café is in violation of his obligations pursuant to the Covenants:

WHEREFORE, Plaintiff prays that this Honorable Court:

A.     Enter preliminary and permanent injunctions:

(i)     Enjoining the Defendant from utilizing or allowing to be utilized the premises at 2075 Willow Street, Triangle Mall, Manchester, NH, or any space within one half mile of the stated location, for the sale of coffee, baked goods and any other product sold at the premises as a Honey Dew Donuts® Shop for one year;

5

B.    Enter judgment for the Plaintiff, plus costs of enforcement and counsel

fees; and

C.    For such other relief as may be deemed just.

> HONEY DEW ASSOCIATES. INC.
> By its Attorneys,

10/29/03    _Jack J. Wirtz_ (signature)

Jack J. Mikels, BBO# 345560
Michael A. Wirtz, BBO# 636587
JACK MIKELS & ASSOCIATES
1 Batterymarch Park, Suite 309
Quincy, MA  02169-7454
Tel:  617.472.5600

A TRUE COPY

Attest: _Mary E. Kenney_ (signature)
Deputy Assistant Clerk

10/12/05

6

## **VERIFICATION**

I, Richard J. Bowen, on oath, do hereby certify that I am President of Honey

Dew Associates, Inc., that I have read the foregoing, and that it is true to the best of

my knowledge, information and belief.

Richard J. Bowen, President
Honey Dew Associates, Inc.

/amik/hda/lit/manchester/(Federal)Complaint

7

RECEIVED & FILED
CLERK OF THE COURTS
NORFOLK COUNTY



COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS.                      SUPERIOR COURT
                                 CIVIL ACTION NO.: CV03-2110-A


HONEY DEW ASSOCIATES, INC.,      )
     Plaintiff and Defendant-    )
     In-Counterclaim             )
                                 )
v.                               )        ANSWER AND JURY CLAIM
                                 )    OF THE DEFENDANT, ALI YAZBEK
ALI K. YAZBEK,                   )              AND
     Defendant and              )          COUNTERCLAIM
     Counterclaimant             )

### FIRST DEFENSE

The defendant, Ali K. Yazbek, pursuant to the provisions of the Massachusetts Rules of Civil Procedure, hereby makes this his answer to each and every claim and averment of the plaintiff, Honey Dew Associates, Inc:

1.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 1 of the plaintiff's complaint and calls upon the plaintiff to prove same.

2.    The defendant denies the allegations of paragraph 2 of the plaintiff's complaint.

3.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 3 of the plaintiff's complaint as to what and when the plaintiff entered into certain agreements with Wehbi, Inc. but denies that the documents referred to are attached to the complaint as alleged.

4.    The defendant denies the allegations of paragraph 4 of the plaintiff's complaint.

5.    The allegations of paragraph 5 of the plaintiff's complaint constitute legal conclusions which require no response.

6.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 6 of the plaintiff's complaint and calls upon the plaintiff to prove same.

7.    The allegations of paragraph 7 of the plaintiff's complaint constitute legal conclusions which require no response.

8.    The allegations of paragraph 8 of the plaintiff's complaint constitute legal conclusions which require no response.

### COUNT I

9.    The defendant incorporates herein by reference his answers to paragraphs 1 through 8 above.

10.    The allegations of paragraph 10 of the plaintiff's complaint constitute legal conclusions which require no response.

11.    The defendant denies the allegations set forth in paragraph 11 of the plaintiff's complaint.

WHEREFORE, the defendant says that Count I of the plaintiff's complaint should be dismissed and judgment should be entered thereon for the defendant, together with his costs and attorney's fees.

### COUNT II

12.    The defendant incorporates herein by reference his answers to paragraphs 1 through 11 above.

13.    The allegations of paragraph 13 of the plaintiff's complaint constitute legal conclusions which require no response.

2

14. The defendant denies the allegations set forth in paragraph 14 of the plaintiff's complaint.

15. The defendant denies the allegations set forth in paragraph 15 of the plaintiff's complaint.

16. The defendant denies the allegations set forth in paragraph 16 of the plaintiff's complaint.

17. The allegations of paragraph 17 of the plaintiff's complaint constitute legal conclusions which require no response.

WHEREFORE, the defendant says that Count II of the plaintiff's complaint should be dismissed and judgment should be entered thereon for the defendant, together with his costs and attorney's fees.

## COUNT III

18. The defendant incorporates herein by reference his answers to paragraphs 1 through 17 above.

19. The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 19 of the plaintiff's complaint and calls upon the plaintiff to prove same.

20. The defendant denies the allegations set forth in paragraph 20 of the plaintiff's complaint.

21. The allegations of paragraph 21 of the plaintiff's complaint constitute legal conclusions which require no response.

22. The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22 of the plaintiff's complaint and calls upon the

3

plaintiff to prove same.

23.  The allegations of paragraph 23 of the plaintiff's complaint constitute legal conclusions which require no response.

WHEREFORE, the defendant says that Count III of the plaintiff's complaint should be dismissed and judgment should be entered thereon for the defendant, together with his costs and attorney's fees.

### SECOND DEFENSE

And further answering, the defendant says that the plaintiff's claims should be dismissed pursuant to Massachusetts General Laws Chapter 231, Section 6F, insofar as these claims are frivolous in nature and brought in bad faith, and the defendant should be awarded his costs and reasonable attorney's fees as provided.

### THIRD DEFENSE

And further answering, the defendant says that the plaintiff's complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### FOURTH DEFENSE

And further answering, the defendant says that to the extent that he had any obligations to the plaintiff, all such obligations have been fully and properly performed in every respect.

### FIFTH DEFENSE

And further answering, the defendant says that the acts complained of were not committed by a person for whose conduct the defendant was legally responsible.

### SIXTH DEFENSE

And further answering, the defendant says that the complaint should be dismissed pursuant to Rule 12(b)(4) for insufficiency of process.

### SEVENTH DEFENSE

And further answering, the defendant says that the complaint should be dismissed, insofar as the plaintiff comes into this Court with unclean hands.

### EIGHTH DEFENSE

4

**EIGHTH DEFENSE**

And further answering, the defendant says that the plaintiff was guilty of a violation of law which contributed to cause the injury or damage complained of.

**NINTH DEFENSE**

And further answering, the defendant says that the complaint is barred by Laches.

WHEREFORE, the defendant says that the plaintiff's complaint should be dismissed and judgment should be entered thereon for the defendant, together with his costs and attorney's fees.

**COUNTERCLAIMS**

**COUNT I**

1.    The plaintiff in counterclaim, Ali K. Yazbek ("Yazbek"), resides in Manchester, New Hampshire and had a usual place of business in Manchester, New Hampshire until August 11, 2003.

2.    Until August 11, 2003, Yazbek held a lease on a store location at the Triangle Mall in Manchester, New Hampshire.

3.    From on or about June 5, 2001, until August 11, 2003, Yazbek operated a business at the store location that he had under lease in Manchester, New Hampshire.

4.    In connection with Yazbek's undertaking the operation of his business at Triangle Mall, the defendant in counterclaim, Honey Dew Associates, Inc. ("Honey Dew"), which at all times relevant hereto had a usual place of business at 35 Braintree Hill Office Park, Braintree, Massachusetts 02184, made promises and representations to Yazbek concerning the business.

5.    Among other things, Honey Dew promised to provide

5

marketing, advertising and other support for Yazbek's business if he operated the business as a Honey Dew Donut shop.

6.    In reliance on the representations and promises of Honey Dew, Yazbek undertook to operate his business at Triangle Mall as a Honey Dew Donut shop.

7.    After undertaking to operate his business as a Honey Dew Donut shop, Yazbek incurred substantial expenses in the operation of the business in reliance on the promises and representations of Honey Dew, all with the knowledge of Honey Dew.

8.    After undertaking to operate his business as a Honey Dew Donut shop, Yazbek was notified by Honey Dew that it was closing its production facility in Manchester, New Hampshire and that he would then be required to purchase products from Honey Dew's location in Massachusetts at substantially higher prices.

9.    After Yazbek undertook to operate his business as a Honey Dew Donut shop, Honey Dew failed to provide any of the marketing, advertising and other support for Yazbek's business as promised by Honey Dew.

10.    Despite its failure to provide the marketing, advertising and other support for Yazbek's business as promised, Honey Dew charged, collected and received from Yazbek and his business substantial fees for the services that Honey Dew failed to provide.

11.    Because of the failure of Honey Dew to provide the marketing, advertising and other support for Yazbek's business as promised, the business was unable to generate sufficient revenues to continue to operate as a Honey Dew Donut shop and incurred

6

substantial losses.

12.    In June, 2003, pursuant to the promises of Honey Dew, Yazbek delivered to Richard J. Bowen, as president of Honey Dew, a notice requesting its consent to terminate their agreement pursuant to its terms, which provided that Honey Dew could not unreasonably withhold its consent under the circumstances.

13.    Despite the terms of their agreement, Honey Dew refused to consent to the termination of their agreement as requested.

14.    Instead, Honey Dew offered to purchase Yazbek's business for the sum of only $10,000, which was substantially lees than the value of the assets of the business, including the equipment and inventory, at the time

15.    At that time, Honey Dew knew that Yazbek could not continue to incur the losses he was incurring as a Honey Dew Donut shop or continue to operate the business as a Honey Dew Donut shop.

16.    At that time, Honey Dew also knew that the assets of Yazbek's business had a value of more than $45,000.

17.    As a result of Honey Dew's refusal to consent to an early termination of their agreement, Yazbek continued to operate his business as a Honey Dew Donut shop through the remainder of the term of the parties' agreement.

18.    In continuing to operate the business as a Honey Dew Donut shop, Yazbek suffered substantial losses.

19.    On August 11, 2003, Yazbek's lease for his business location expired pursuant to its terms.

20.    The agreement between Yazbek and Honey Dew expressly

7

provided as follows:

> The Franchise Agreement shall terminate upon the termination of your lease arrangements for the premises upon which you are to operate.

21.  The lease arrangements for the premises where Yazbek operated his business terminated pursuant to their terms on August 11, 2003.

22.  Pursuant to the express terms of the agreement between Yazbek and Honey Dew, their agreement expired on August 11, 2003.

23.  As of August 11, 2003, Yazbek ceased operating his business at Triangle Mall in Manchester, New Hampshire and closed the operation.

24.  In or about August 11, 2003, Yazbek agreed to sell the assets of his business to a third-party.

25.  Due to the actions of Honey Dew, Yazbek was unable to obtain a fair market price for the assets of the business.

26.  As a result of the breaches of promises of Honey Dew, Yazbek has suffered substantial damages.

Wherefore, Yazbek respectfully requests that this Court enter a judgment against the defendant in counterclaim, Honey Dew Associates, Inc., for the full amount of damages that he has sustained, plus interest, costs and attorney's fees.

## COUNT II

27.  Yazbek incorporates herein by reference the allegations of paragraphs 1 through 26 of his counterclaim as set forth above.

28.  Honey Dew's actions constitute unfair or deceptive acts or practices in violation of the provisions of Sections 2 and 11 of Chapter 93A of the General Laws of Massachusetts

8

29. Honey Dew's actions were willful or knowing violations of Chapter 93A of the General Laws.

Wherefore, Yazbek respectfully requests that this Court enter a judgment against the defendant in counterclaim, Honey Dew Associates, Inc., for the full amount of damages that he has sustained, multiple damages of three times his actual damages pursuant to Chapter 93A of the General Laws, plus interest, costs and attorney's fees.

### JURY CLAIM

The defendant and plaintiff in counterclaim, Ali K. Yazbek, hereby demands a trial by jury on all issues.

Respectfully submitted,

ALI K. YAZBEK,

By his attorney,

Brian A. Gillis, Esq. BBO# 547767
One Beacon Street, Suite 1601
Boston, Massachusetts 02108
(617) 720-4443

### CERTIFICATE OF SERVICE

I, Brian A. Gillis, certify that I caused to be served on this 15th day of January, 2004, a copy of the within document by first class mail, postage prepaid, to the following:  Jack J. Mikels, Esq., 1 Batterymarch Office Park, Suite 309, Quincy, Massachusetts 02169-7454.

Brian A. Gillis, Esq.

A TRUE COPY
Attest: Mary E. Kenney
Deputy Assistant Clerk
10/12/05

9





**Exhibit 2**

## COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.

Superior Court Department
Civil Action  95-0019 B

Solomon Cohen

Maria Rocha Cohen

Solomon Cohen, President
M & S Donuts, Inc.

Solomon Cohen, President
L & T Donuts, Inc.

Solomn Cohen, President
UMC Donuts, Inc.

**COMPLAINT AND DEMAND FOR INJUNCTIVE RELIEF**

Solomon Cohen & Maria Rocha Cohen
Trustees of MSL & T Realty Trust

Maria Rocha Cohen
Trustee of Kingsley Realty Trust

Solomon Cohen & Maria Rocha-Cohen
Trustees of Rocha-Cohen Realty Trust

Plaintiffs

v.

Honey Dew Associates, Inc., a corporation

Defendant

*******************************************************************

### INTRODUCTION

The plaintiffs in this action seek both judgement as well as an Order enjoining defendant from wrongfully terminating three franchises held by plaintiffs jointly and severally. The plaintiffs seek recovery and injunctive relief pusuant to M.G.L. 93A, sec. 2(a), (b), 9, 11 based  upon the claims of fraud, conspiracy and breach of contract as evidenced in defendant's deceptive and unfair business practices. Plaintiffs seek triple damages as authorized by

M.G.L. 93A in addition to any other damages which this Court deems appropriate.

## PARTIES

1.  Plaintiff Solomon Cohen is an individual residing at 62 Sandy Ridge Road, Stoughton, County of Norfolk, Massachusetts.

2.  Plaintiff Maria Rocha Cohen is an individual residing at 62 Sandy Ridge Road, Stoughton, County of Norfolk, Massachusetts.

3.  Plaintiff Solomon Cohen is president of L & T Donuts, Inc., a Massachusetts corporation operating as Honey Dew Donuts, having a usual place of business at 26 South Street, Whitman, County of Plymouth, Massachusetts.

4.  Plaintiff Solomon Cohen is president of M & S Donuts,Inc. a Massachusetts corporation operating as  Honey Dew Donuts, having a usual place of business at 199 Belmont Street, Brockton, County of Plymouth, Massachusetts.

5.  Plaintiff Solomon Cohen is president of  UMC Donuts,  Inc., a Massachusetts corporation operating as Honey Dew Donuts, having a usual place of business at 281 Bedford Street, Route 18, Whitman, County of Plymouth, Massachusetts.

6.  Plaintiff Solomon Cohen & Maria Rocha Cohen are trustees of MSL & T Realty Trust, executed August 12, 1987. The trust is the owner of the real estate at 26 South Street, Whitman, County of Plymouth, Massachusetts.

7.  Plaintiff Maria Rocha Cohen is trustee of Kingsley Realty Trust, executed February 15, 1985. The trust is the owner of the real estate at 199 Belmont Street, Brockton, County of Plymouth, Massachusetts.

8.  Plaintiff Solomon Cohen & Maria Rocha-Cohen are trustees of Rocha-Cohen Realty Trust, executed December 5, 1989. The trust is the owner of the real estate at 281 Bedford Street, Route 18, Whitman, County of Plmouth, Massachusetts.

9.  Defendant Honey Dew Associates, Inc.,(" Franchisor"), is a Massachusetts corporation d\b\a Honey Dew Donuts and maintaining its principal place of business at 2 Taunton Street, Plainville, Norfolk County, Massachusetts.

10.  Plaintiffs are  aggrieved persons as defined in M.G.L. 93A, sec. 1(a).

FACTS

11. On March 14, 1983, plaintiff M & S Donuts, Inc. entered into a Franchise Agreement with defendant granting plaintiff the right to operate a Honey Dew Donuts shop at 199 Belmont St., Brockton, MA. subject to various rights and responsibilities.

12. In 1987, plaintiff Kingsley Realty Trust leased the real estate located at 199 Belmont St., Brockton, MA. to plaintiff M & S Donuts, Inc. for the purpose of operating a Honey Dew Donuts shop.

13. On August 19, 1987, plaintiff MSL & T Realty Trust leased the real estate located at 26 South St., Whitman, MA. to plaintiff L & T Donuts, Inc. for the purpose of operating a Honey Dew Donuts shop.

14. On March 17, 1990, plaintiff Rocha-Cohen Realty Trust leased the real estate located at 281 Bedford St., Route 18, Whitman, MA. to plaintiff UMC Donuts, Inc. for the purpose of operating a Honey Dew Donuts shop.

15. On August 19, 1987, plaintiff L & T Donuts, Inc. entered into a Franchise Agreement with the defendant granting plaintiff the right to operate a Honey Dew shop at 26 South St., Whitman, MA. subject to various rights and responsibilities.

16. On March 23, 1990, plaintiff UMC Donuts, Inc. entered into a Franchise Agreement with defendant granting plaintiff the right to operate a Honey Dew shop at 281 Bedford St., Route 18, Whitman, MA. subject to various rights and responsibilities.

17. Franchisor granted the UMC Donuts, Inc. franchise subject to M & S Donuts, Inc., L & T Donuts, Inc., UMC Donuts, Inc., Solomon And Maria Cohen, individually, and Solomon and Maria Cohen as trustees of MSL & T Realty Trust, Rocha-Cohen Realty Trust and Maria Rocha Cohen as sole Trustee of Kingsley Realty Trust agreeing to be liable for each of the three stores.

18. Said agreement, entitled "Liability and Cross Default Agreement" includes a provision whereby the termination of any one franchise held by the plaintiffs would operate as a termination of all three franchises.

19. Between June and November, 1994, defendant purported to offer plaintiffs the right of first refusal concerning the placement of a three franchises\kiosks within three miles of franchisee's existing stores. Two were to be located by the South Street store while a third was proposed near the Brockton store.

20. On November 11, 1994, Franchisor sent to Franchisee a Notice of Termination with regard to the L & T Donuts, Inc. store at 26 South Street, Whitman, Massachusetts.

21. On November 28, 1994, Franchisor sent a Notice of Termination to Franchisee's stores, M & S Donuts, Inc. and UMC Donuts, Inc. claiming that the initial termination of November 11, 1994 provided the basis for the termination of these franchises as well.

CAUSES OF ACTION

COUNT I - FRAUD

22. Paragraphs 1 - 21 are realleged and incorporated by reference herein.

23. Plaintiffs allege that defendant has undertaken to fraudulently deprive plaintiffs of their economc interests in these franchises through these improper and illegal terminations.

24. Defendant desires to open additional franchises within the three-mile restricted area protected under Franchise Agreement IV(b) having fraudulently and willfully misled plaintiffs into relying on Franchisor's Disclosure Statement of February 21, 1983 which stated that the option to allow additional franhcises within three miles of any other Honey Dew franchise had never been exercised at any time during the existence of Honey Dew Associates and its franchises.

25. Each Franchise Agreement executed by M & S Donuts, Inc., L & T Donuts, Inc. and UMC Donuts, Inc. contains a provision at Section IV which disallows the operation or granting of the right to operate another Honey Dew shop within three miles of the shop which is the subject of the current Agreement (See Addendums A, B, and C attached as they relate to the respective franchises which are the subject of this complaint).

26. Each Franchise Agreement executed as discussed above contained additional language clearly stating that the only instance in which a subsequent franchise might be allowed to operate within the three-mile protected radius would arise where it could be determined that the <u>sales base within this three-mile area is of sufficient size to justify a second store.</u> Defendant fraudulantly misled plaintiffs into believing that this language would act to bar further franchising that would produce undue economic hardship.

27. Plaintiff's profits at the three franchises have fallen

markedly, a fact mitigating against any valid justification for the granting of additional franchises within three miles of plaintiffs' locations.

## COUNT II - CONSPIRACY

28. Paragraphs 1 - 27 are realleged and incorporated by reference herein.

29. Defendant has conspired with parties heretofore unknown to displace plaintiffs by agreeing to the placement of additional franchises within areas protected by plaintiff's Franchise Agreements.

30. Defendant, fully aware that plaintiffs were unable to afford the expense of purchasing the rights to additional outlets, undertook to seek out other parties to whom it would immediately grant franchise rights upon plaintiffs' foregone conclusion that they could not afford to exercise their option to purchase additional outlets given falling profits.

## COUNT III - BREACH OF CONTRACT

31. Paragraphs 1 - 30 are realleged and incorporated by reference herein.

32. Franchisor breached its contract with plaintiffs by refusing to provide any justification for its decision to allow additional franchises to be placed within three miles of plaintiff's franchises. This failure to provide justification is contrary to the good faith and fair dealing attendant to all contracts in the state of Massachusetts.

33. Franchisor has breached its contractual obligation to refrain from acting in any way to impair plaintiff's ability to fulfill its own financial obligations to defendant as required in their various contracts.

34. The termination of Plaintiff's franchises and subsequent granting of franchise rights to other parties violates M.G.L. 93A in that such actions by Franchisor constitute unfair and deceptive trade practices and fail to recognize the good faith and fair dealing understood and contemplated by the parties at the time of the signing of the Franchise Agreements.

35. Plaintiffs have suffered and continue to suffer irreparable harm for which there exists no adequate remedy at law.

WHEREFORE, Plaintiffs demand:

1. That a temporary restraining order be issued enjoining defendant, Honey Dew Associates Inc., its agents, servants and employees from terminating the franchise granted to M & S Donuts, Inc. or in any way interfering with the orderly operation of M & S Donuts, Inc. during the pendency of this matter now before the court.

2. That a temporary restraining order be issued enjoining defendant, Honey Dew Associates Inc., its agents, servants and employees from terminating the franchise granted to L & T Donuts, Inc. or in any way interfering with the orderly operation of L & T Donuts, Inc. during the pendency of this matter now before the court.

3. That a temporary restraining order be issued enjoining defendant, Honey Dew Associates Inc., its agents, servants and employees from terminating the franchise granted to UMC Donuts, Inc. or in any way interfering with the orderly operation of UMC Donuts, Inc. during the pendency of this matter now before the court.

4. That upon the return of an order of notice, a preliminary injunction be issued in accordance with Demand 1.

5. That upon the return of an order of notice, a preliminary injunction be issued in accordance with Demand 2.

6. That upon the return of an order of notice, a preliminary injunction be issued in accordance with Demand 3.

7. That it be adjudicated that defendant, Honey Dew Associates, Inc. has breached its contractual obligations owing to the plaintiffs and triple damages for aforementioned breaches be assessed against defendant.

8. That Attorney's fees be assessed against defendant.

9. For such other and further relief as this Honorable Court may deem meet and just.

PLAINTIFFS,
BY THEIR ATTORNEY,

*Oct 26, 2005*

A TRUE COPY ATTEST

*Frank R. Fuveis*

CLERK

LAZAR LOWINGER
BBO# 306300
850 Boylston St., Suite 312
Chestnut Hill, MA  02167

(617) 566-6500

_Solomon Cohen_

Solomon Cohen, President
M & S Donuts, Inc.

Solomon Cohen, President
L & T Donuts, Inc.

Solomon Cohen, President
UMC Donuts, Inc.

Solomon Cohen, Trustee
MSL & T Realty Trust

Solomon Cohen, Trustee
Rocha-Cohen Realty Trust

_Maria R. Cohen_
Maria Rocha Cohen

_Maria R. Cohen_
Maria Rocha Cohen, Trustee
MSL & T Realty Trust

_Maria R. Cohen_
Maria Rocha Cohen, Trustee
Kingsley Realty Trust

_Maria R. Cohen_
Maria Rocha Cohen, Trustee
Rocha-Cohen Realty Trust

Oct. 26, 2005

A TRUE COPY ATTEST

_Frank R. Powers_
CLERK

## COMMONWEALTH OF MASSACHUSETTS

Norfolk,ss.                                    January 4, 1995

Then personally appeared Solomon Cohen, as plaintiffs above, and
made oath that he has read the above complaint and demand for
relief and knows the contents thereof, and that the same is true of
his own knowledge, except as to matters which are therein stated to
be on his information and belief, and to these matters, he believes
them to be true, before me,

_Thomas J. Chirokas_
NOTARY PUBLIC
THOMAS J. CHIROKAS
NOTARY PUBLIC
My Commission Expires July 10, 1998

Then personally appeared Maria Rocha Cohen, as plaintiffs above,
and made oath that she has read the above complaint and demand for
relief and knows the contents thereof, and that the same is true of
her own knowledge, except as to matters which are therein stated to
be on her information and belief, and to these matters, he believes
them to be true, before me,

_Thomas J. Chirokas_
NOTARY PUBLIC
THOMAS J. CHIROKAS
NOTARY PUBLIC
My Commission Expires July 10, 1998

29

# COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, SS.

*SUPERIOR COURT DEPARTMENT OF THE*
*TRIAL COURT OF THE COMMONWEALTH*
*CIVIL ACTION*
*NO.95-0019B*

*SOLOMON COHEN, ET AL        VS.    HONEY DEW ASSOC.,, INC.,*

*ORDER FOR ENTRY OF DISMISSAL NISI*
*JURY TRIAL LIST - WITHOUT JURY TRIAL LIST*

The above entitled action was *held - reached for trial - hearing on the Jury Trial List - Without Jury Trial List - before the Court, **O'BRIEN, J.**, presiding, and thereupon was **REPORTED SETTLED** to the Court by counsel of record.

**WHEREFORE**, it is **ORDERED** that the **AGREEMENT FOR JUDGMENT** be filed in the Clerk's Office within **30**    days from the date of this order.  If said Agreement is not filed within said time the Clerk is hereby directed to prepare, sign and enter judgment dismissing the Complaint, without prejudice and without costs.

By the Court, (**O'BRIEN, J.**)

**ENTERED: APRIL 21, 1998**

*Assistant Clerk*

**CC:** LL,RKB,JJM

Oct 26, 2005

A TRUE COPY ATTEST

CLERK

## COMMONWEALTH OF MASSACHUSETTS
### TRIAL COURT OF THE COMMONWEALTH

PLYMOUTH, SS

**SUPERIOR COURT DEPT.**
**CIVIL ACTION**
**NO: 95-0019B**

**SOLOMON COHEN, ET AL    VS.    HONEY DEW ASSOC., INC.,**

### JUDGMENT OF DISMISSAL

The above entitled action having been **REPORTED SETTLED** to the Court and an Order for Entry of Dismissal Nisi having been entered and the time within which to file the Agreement for Judgment having expired, therefore, the Complaint hereby is dismissed without prejudice and without costs.

Dated at Brockton, Massachusetts this 4th Day of June, 1998.

(HELY, J. )

By: _____
Assistant Clerk

CC: LL, RKB,JJM

Oct 26 2005
A TRUE COPY ATTEST
CLERK

NATIONAL ARCHIVES AND RECORDS

**Exhibit 3**

𝕿𝖔 𝖆𝖑𝖑 𝖙𝖔 𝖜𝖍𝖔𝖒 𝖙𝖍𝖊𝖘𝖊 𝖕𝖗𝖊𝖘𝖊𝖓𝖙𝖘 𝖘𝖍𝖆𝖑𝖑 𝖈𝖔𝖒𝖊

By virtue of the authority vested in me by the Archivist of the

under the seal of the National Archives and Records Administration, that the attached reproduction(s) is

a true and correct copy of documents in his custody.

| SIGNATURE | |
|---|---|
| *Paul J. Palermo Jr.* | |
| NAME | DATE |
| Paul J. Palermo | October 12, 2005 |
| TITLE | |
| Supervisory Archives Specialist | |
| NAME AND ADDRESS OF DEPOSITORY | |
| NARA, Northeast Region (Boston) Office of Regional Records Service 380 Trapelo Road Waltham, MA  02452 | |

NA FORM 13040 (10-86)

V.                                                    C.A. No. 99-463T

& F MANAGMENT, INC., ET AL

**STIPULATION OF DISMISSAL**

Upon consideration of a settlement conference held before U.S. Magistrate Judge Hagopian

and by agreement of the parties, it is hereby stipulated that the instant action may be dismissed with

prejudice, no interest, and no costs.

Attorney for Plaintiff(s)                         Attorneys for the Defendant(s)

*Charles Wick*                                    *Robert Flaherty*
Charles Wick, Esq.                                Robert Flaherty, Esq.

RECOMMEND ENTRY:                                  SO ORDERED:

*Jacob Hagopian*                                  *Ernest C. Torres*
Jacob Hagopian                                    Ernest C. Torres
U.S. Magistrate Judge                             Chief Judge  July 12, 200

Dated:  3 July 2001                               ENTERED:

EXHIBIT
Bower
#16
11-28-0 Smd
PENGAD 800-631-6989

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

HONEY DEW ASSOCIATES INC., ET AL

V.                                                    C.A. No. 99-463T

A & F MANAGMENT INC., ET AL

### STIPULATION OF DISMISSAL

Upon consideration of a settlement conference held before U.S. Magistrate Judge Hagopian

and by agreement of the parties, it is hereby stipulated that the instant action may be dismissed with

prejudice, no interest, and no costs.

Attorney for Plaintiff(s)                        Attorneys for the Defendant(s)

_____                        _____
Charles Wick, Esq.                               Robert Flaherty, Esq.

RECOMMEND ENTRY:                                 SO ORDERED:

_____                        _____
Jacob Hagopian                                   Ernest C. Torres
U.S. Magistrate Judge                            Chief Judge  July 12, 2001

Dated:  3 July 2001                              ENTERED:

                                                 _____

JS 44C
(Rev. 12/84)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

*95 405T*

## I (a) PLAINTIFFS

HONEY DEW ASSOCIATES, INC. and
BOWEN INVESTMENTS, INC.

## DEFENDANTS

A&F MANAGEMENT, INC.
ANTONIO ANDRADE
MARIE ANDRADE

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF *Norfolk, Massachusetts*
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT *Providence*
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Charles D. Wick
58 Weybosset St., Ste. 600
Providence, RI  02903
401-274-3770

ATTORNEYS (IF KNOWN)

Robert E. Flaherty
70 Jefferson Blvd.
Warwick, RI  02888
401-781-7200

## II. BASIS OF JURISDICTION (PLACE AN × IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN × IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

15 USC 1051 et seq. The Lanham Act.

## V. NATURE OF SUIT (PLACE AN × IN ONE BOX ONLY)

[Nature of suit checkboxes - none marked]

## VI. ORIGIN (PLACE AN × IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23

DEMAND $ Unliquidated

Check YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☒ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____ DOCKET NUMBER _____

DATE  9/22/99

SIGNATURE OF ATTORNEY OF RECORD  *[signature]*

UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

HONEY DEW ASSOCIATES, INC. and )
BOWEN INVESTMENT, INC. )
               Plaintiffs )
                )
     v. )    C. A. NO.: 99-0463T
                )
A & F MANAGEMENT, INC., )
ANTONIO ANDRADE and MARIE )
ANDRADE )
            Defendants )

### ANSWER AND COUNTERCLAIM

1.     Defendants admit the allegations contained in paragraph 1 of Plaintiffs'
Verified Complaint.

2.     Defendants admit the allegations contained in paragraph 2 of Plaintiffs'
Verified Complaint.

3.     Defendants are without knowledge or information sufficient to form a
belief as to the truth of paragraph 3 of Plaintiffs' Verified Complaint.

4.     Defendants are without knowledge or information sufficient to form a
belief as to the truth of paragraph 4 of Plaintiffs' Verified Complaint.

5.     Defendants are without knowledge or information sufficient to form a
belief as to the truth of paragraph 5 of Plaintiffs' Verified Complaint.

6.     Defendants admit the allegations contained in paragraph 6 of Plaintiffs'
Verified Complaint.

7.     Defendants admit the allegation contained in paragraph 7 of Plaintiffs'
Verified Complaint.

8.      Defendants admit the allegation contained in paragraph 8 of Plaintiffs' Verified Complaint.

9.      Defendants admit the allegation contained in paragraph 9 of Plaintiffs' Verified Complaint.

10.     Defendants admit the allegation contained in paragraph 10 of Plaintiffs' Verified Complaint.

11.     Defendants admit the allegation contained in paragraph 11 of Plaintiffs' Verified Complaint.

12.     Defendants admit the allegation contained in paragraph 12 of Plaintiffs' Verified Complaint.

13.     Defendants deny specifically and generally the allegations contained in paragraph 13 of Plaintiffs' Verified Complaint.

14.     Defendants admit the allegation contained in paragraph 14 of Plaintiffs' Verified Complaint.

15.     Defendants admit the allegation contained in paragraph 15 of Plaintiffs' Verified Complaint.

16.     Defendants deny the allegations contained in paragraph 16 of Plaintiffs' Verified Complaint.

17.     Defendants admit the allegations contained in paragraph 17 of Plaintiffs' Verified Complaint.

18.     Defendants deny the allegations contained in paragraph 18 of Plaintiffs' Verified Complaint.

19.    Defendants deny the allegations contained in paragraph 19 of Plaintiffs' Verified Complaint.

20.    Defendants deny the allegations contained in paragraph 20 of Plaintiffs' Verified Complaint.

21.    Defendants deny specifically and generally the allegations contained in paragraph 21 of Plaintiffs' Verified Complaint.

22.    Defendants deny the allegations contained in paragraph 22 of Plaintiffs' Verified Complaint.

23.    Defendants admit the allegations contained in paragraph 23 of Plaintiffs' Verified Complaint.

24.    Defendants deny the allegations contained in paragraph 24 of Plaintiffs' Verified Complaint.

25.    Defendants deny the allegations contained in paragraph 25 of Plaintiffs' Verified Complaint.

26.    Defendants deny the allegations contained in paragraph 26 of Plaintiffs' Verified Complaint.

27.    Defendants deny the allegations contained in paragraph 27 of Plaintiffs' Verified Complaint.

28.    Defendants deny the allegations contained in paragraph 28 of Plaintiffs' Verified Complaint.

29.    Defendants deny the allegations contained in paragraph 29 of Plaintiffs' Verified Complaint.

## COUNTERCLAIM

1.      Antonio Andrade (hereinafter "Andrade") is a resident of the City of East Providence, County of Providence, State of Rhode Island.

2.      Maria Andrade (hereinafter "Andrade") is a resident of the City of East Providence, County of Providence, State of Rhode Island.

3.      Honey Dew Associates, Inc. (hereinafter "HDA") is a Corporation duly organized and existing pursuant to the laws of the Commonwealth of Massachusetts with its principal place of business at 35 Braintree, Massachusetts.

4.      Bowen Investments, Inc. (hereinafter "Bowen") is a corporation duly organized and existing pursuant to the laws of the Commonwealth of Massachusetts with its principal place of business at 2 Taunton Street, Plainville, Massachusetts.  By agreement with HDA, Bowen acts as a sub-franchisor of certain Honey Dew Donut Shops in the State of Rhode Island.

5.      The jurisdiction of this Court is based upon 28 U.S.C. §1338(a) and (b) as this action relates to Plaintiffs' allegation Defendants' unauthorized use of certain trademarks and resulting unfair competition.  The jurisdiction of this Court is further based upon the Trademark Act of 1946 (the Lanham Act), 15 U.S.C. §11051-1127 (1982), specifically §§114(1) and 1125(a) and the Court's supplemental jurisdiction over state law claims contained herein pursuant to 28 U.S.C. §1367(a).

6.      On or about October 1, 1997 Antonio and Maria Andrade entered into a franchise agreement with Bowen Investment, Inc., which transferred to the Andrades all right, title and interest in and to a franchise to operate a Honey Dew Donut Shop at 670 Jefferson Boulevard, Warwick, Rhode Island. The grant of this franchise included a non-

4

exclusive and nontransferable license to use HDA's trademarks and trade secrets in existence at the time as well as such proprietary marks and trade secrets as may in the future come into existence.

## COUNT I

7.    Defendants/Counter-Claimants repeat and re-aver the allegations contained in paragraphs 1 through 6 of their Counterclaim as if fully set forth herein.

8.    In accordance with the Franchise Agreement, Andrade is required to pay weekly to Bowen 7% of gross sales for Royalties, 10% of gross sales for rent; and 2% of gross sales as contribution to the Honey Dew Advertising Fund.

9.    Andrade has at all times material hereto complied with the terms of the Franchise Agreement contained in Sections II and X and paid Bowen the percentages owed to it from the gross sales he had collected.

10.    Bowen and HDA have wrongfully terminated the franchise of Antonio and Maria Andrade based on alleged misconduct by Andrades' employees.

11.    HDA and Bowen terminated the Franchise Agreement and Sublease pursuant to Section XX of the Franchise Agreement for the understatement of gross sales without a good faith basis to believe a violation of the agreement occurred or that the alleged violation was known to its franchisees, Antonio and Maria Andrade.

12.    HDA's and Bowen's wrongful termination is an express breach of the Franchise Agreement in that it attempts to terminate the agreement without cause as set forth in Section XX of the Franchise Agreement.

WHEREFORE, the Defendants/Counter-Claimants request this Honorable Court enjoin the Plaintiffs from terminating or otherwise interfering with the franchise

agreement and sublease, find the Plaintiffs in breach of contract for its wrongful termination of the franchise agreement and sublease and enter judgment for the Defendants/Counter-Claimants for damages arising from Plaintiffs' breach of contract including attorneys' fees, costs and punitive damages and any other relief this Court deems meet and just.

COUNT II

13.    Defendants/Counter-Claimants repeat and re-aver the allegations contained in paragraphs 1 through 12 of their Counterclaim as if fully set forth herein.

14.    Bowen and HDA terminated the Franchise Agreement without any evidence or indication that a breach of the terms of conditions were done knowingly or intentionally with the knowledge of its franchisees, Antonio and Maria Andrade.

15.    The affidavits supplied by Bowen and HDA along with its verified complaint fail to set forth any conduct on behalf of its franchisees, Antonio and Maria Andrade, which would allow the Court to adduce any sufficient facts indicating that its termination of the franchise was proper.

16.    HDA and Bowen wrongful termination is a breach of the implied covenant of good faith and fair dealing in its agreement with Antonio and Maria Andrade.

WHEREFORE, the Defendants/Counter-Claimants request this Honorable Court enjoin the Plaintiffs from terminating or otherwise interfering with the franchise agreement and sublease, find the Plaintiffs in breach of contract for its wrongful termination of the franchise agreement and sublease and enter judgment for the Defendants/Counter-Claimants for damages arising from Plaintiffs' breach of contract

6

including attorneys' fees, costs and punitive damages and any other relief this Court deems meet and just.

> A & F MANAGEMENT, INC.
> ANTONIO ANDRADE and
> MARIA ANDRADE
> Defendants
> By their Attorneys
>
> _____
> Robert E. Flaherty, Esq. (#2313)
> FLAHERTY & LAWRENCE
> 70 Jefferson Boulevard
> Warwick, RI 02888
> (401) 781-7200
>
> _____
> Kathleen M. Hagerty, Esq. (#4647)
> FLAHERTY & LAWRENCE
> 70 Jefferson Boulevard
> Warwick, RI 02888
> (401) 781-7200

## DEFENDANTS' DEMAND FOR JURY TRIAL

A & F Management, Inc. and Defendants, Antonio and Maria Andrade, asserts their rights under the Seventh Amendment to the U.S. Constitution and demands a trial by jury on all issues, in accordance with Federal Rule of Civil Procedure 38.

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I did send via first class mail, postage prepaid, a copy of the within to Charles D. Wick, Esquire, 58 Weybosset Street, Suite 600, Providence, Rhode Island 02903 on the 2nd day of November, 1999.

7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

HONEY DEW ASSOCIATES, INC., and )
BOWEN INVESTMENT, INC. )
    Plaintiffs, )
     )
v. )    C. A. NO.
     )
A& F MANAGEMENT, INC., ANTONIO )
ANDRADE and MARIE ANDRADE, )
    Defendants. )

**CA 99 463**

## VERIFIED COMPLAINT

### JURISDICTION

    1.    The jurisdiction of this Court is based upon 28 U.S.C. §1338 (a) and (b) as this action relates to Defendants' unauthorized use of certain trademarks and Defendants' unfair competition related thereto.

    2.    The jurisdiction of this Court is further based upon the Trademark Act of 1946 (the Lanham Act), 15 U.S.C. §§ 1051-1127 (1982), specifically §§ 1114(1) and 1125(a). The Court has supplemental jurisdiction over state law claims contained herein pursuant to 28 U.S.C. § 1367(a).

### BACKGROUND

    3.    Honey Dew Associates, Inc. ("HDA") is a corporation duly organized and existing pursuant to the laws of the Commonwealth of Massachusetts with its principal place of business at 35 Braintree Hill Office Park, Braintree, Massachusetts and is duly registered to conduct business in Rhode Island. At all times relevant hereto, HDA was in the business of franchising donut and coffee shops known as Honey Dew Donuts Shops.

1

4.     At all times relevant hereto, HDA has been and continues to be the owner of several United States trademarks and service marks, all on the Principal Register as follows:

| Trademark/Service Mark | Register Number/ Serial Number | Date Granted |
|---|---|---|
| Honey Dew Bear | 1,201,569 | July 13, 1982 |
| Honey Dew Bear with "Honey Dew Donuts" | 1,238,646 | May 17, 1983 |
| Honey Dew Bear Head with "Honey Dew Donuts" | 2,011,623 | October 29, 1996 |
| "Always Fresh, Always Good" | 2,108,962 | October 28, 1997 |
| "Chillerchino" | 2,164,133 | June 9, 1998 |

HDA is also the owner of the service marks "Honey Dew Donuts" and "Always Fresh, Always Good", and the trademarks "Honey Dew Donuts" with Bear Head logo and "Chillerchino", all duly registered with the State of Rhode Island. Copies of HDA's United States and Rhode Island trademark and service mark registration papers are attached hereto as Exhibit "A" (the said trademarks and service marks, together with all trade dress, trade names and other proprietary forms of identification, collectively, the "Marks").

5.     Plaintiff Bowen Investment, Inc. ("Bowen") is a corporation duly organized and existing pursuant to the laws of the Commonwealth of Massachusetts with its principal place of business at 2 Taunton Street, Plainville, Massachusetts. At all relevant times hereto, Bowen and HDA have agreed that Bowen may act as a sub-franchisor for the purpose of franchising certain Honey Dew Donuts Shops in Rhode Island.

6.     The franchise of Honey Dew Donuts Shops, in relevant part, includes providing the franchisee with a license to utilize methods of production, merchandising, display and advertising methods, including the use of specifically designed buildings, equipment accessories, identification schemes, products, management programs, standards,

2

specifications and proprietary recipes, production techniques, marks and good will. (the "Honey Dew System").

7.    Defendants Antonio Andrade and Marie Andrade (collectively, "Andrade") are citizens of the State of Rhode Island residing at 246 Central Avenue, East Providence.

8.    At all times relevant hereto, Bowen was the tenant of real estate at 670 Jefferson Boulevard, Warwick, RI (the "Premises") pursuant to a Lease dated March 8, 1989.

9.    In 1989, Bowen prepared the premises for operation as a Honey Dew Donuts Shop, including the purchase and installation of equipment, purchase and installation of signage, and interior and exterior construction and finish work.

10.    On or about June 16, 1989, Bowen franchised a Honey Dew Donuts Shop to operate upon the Premises to Jefferson Donuts, Inc. ("Jefferson").

11.    On or about October 1, 1997, Jefferson sold its franchise to Andrade.

12.    In connection with the sale of Jefferson's franchise to Andrade, Bowen and Andrade entered into a Franchise Agreement, Sublease, and an Agreement Regarding Transfer and Third (sic) Addendum to Franchise Agreement (collectively, the "Franchise Documents"), attached hereto as Exhibit "B", by which Andrade was licensed as a franchisee and granted a sublease upon the Premises.  Andrade operates under the name of A & F Management, Inc.

## COUNT I

13.    Plaintiffs repeat and reaver the allegations of paragraphs one through 13 as if expressly rewritten and set forth herein.

14.    Pursuant to the Franchise Agreement, Andrade is required to make weekly payments to Bowen based on percentages of gross sales, as follows:

(a)    Pursuant to Section II of the Franchise Agreement, Andrade pays Bowen 7% of gross sales for Royalties and 10% of gross sales for rent; and

3

(b)    Pursuant to Section X of the Franchise Agreement, Andrade pay Bowen 2% of gross sales as a contribution to the Honey Dew Advertising Fund.

15.    In relevant part, Section XX(A)(10) of the Franchise Agreement provides that the Franchise Agreement and Sublease may be immediately terminated for understatement of gross sales.

16.    At various times since their purchase of the franchise, Andrade has in breach of contractual obligations and understated gross sales by engaging in conduct including, but not limited to, the following:

(a)    Maintaining a "cash bag" behind the counter for sales not rung through the register;

(b)    Making wholesale sales without ringing such sales into the register;

(c)    Recording retail sales in the register for less than the full amount of such sales; and

(d)    Failing to register retail sales.

17.    On or about August 19, 1999, pursuant to Section XX of the Franchise Agreement, Bowen terminated the Franchise Agreement and Sublease by forwarding to Andrade a Notice of Termination, a copy of which is attached hereto as Exhibit "C."

18.    Pursuant to Section XXI of the Franchise Agreement, upon termination, Andrade is required to immediately discontinue the use of all Marks, signs and forms of advertising indicative of HDA as symbols of its business and products and forthwith tender possession of the Premises to Bowen.

19.    Pursuant to Section XXI of the Franchise Agreement and Section 10.1 of the Sublease, Andrade is reasonable for Bowen's costs of enforcing the Franchise Agreement and Sublease and collecting sums due, including reasonable attorney's fees.

4

20.    Pursuant to Section XXI of the Franchise Agreement and Section 10.1 of the Sublease, Andrade is liable to Bowen for damages arising from the termination of the Franchise Agreement and Sublease for Andrade's default.

WHEREFORE, Plaintiff prays that this Honorable Court:

(A)    Enter a Preliminary Injunction requiring Defendants to peaceably and forthwith tender possession of the Premises to Bowen;

(B)    Declare the Franchise Agreement and Sublease between Bowen and Andrade terminated effective August 19, 1999 for understatement of sales;

(C)    Determine Bowen's damages arising from the Defendants' breaches of contract and understatement of sales and resulting from the termination of the Franchise Agreement and Sublease;

(D)    Enter Judgment for Bowen for its damages, including costs, interest and counsel fees;

(E)    Enter a Permanent Injunction enjoining Defendants, their agents, officers, directors, representatives, servants, employees and all other persons in active concert or participation with any of them from: (i) using HDA's Marks or any reproduction, counterfeit, copy, or colorable imitation of said Marks in connection with the manufacture, holding for sale, sale or otherwise moving or disposing in any manner of any donut and coffee shop products or services or in any way misleading the public and its customers that its products and/or services are connected with Honey Dew Donuts and (ii) utilizing any signage and all trade dress indicative of Honey Dew Donuts; and

(F)    Provide such other relief as may be deemed just.

### COUNT II

21.    Plaintiffs repeat and reaver the allegations of Count I as if expressly rewritten and set forth herein.

5

22.      Despite receipt of the Notice of Termination, the Defendants have continued to hold themselves out to the public as a Honey Dew Donuts Shop, have not ceased use of the name, logos, signage, advertising or other property subject to the agreements concerning the use of HDA's Marks and have otherwise failed to comply with the termination provisions of the Franchise Agreement and Sublease between the parties.

23.      On or about August 24, 1999, HDA and Bowen served upon Andrade correspondence advising them to immediately cease and desist from infringing HDA's Marks, trade dress and other rights by selling, manufacturing and/or distributing donut-related products which are counterfeits of HDA's Marks.  A copy of the "Cease and Desist Letter" is attached hereto as Exhibit "D".

24.      Andrade failed to comply with the Cease and Desist Letter.

25.      Use of HDA's trademarks by Defendants after termination is a violation of the Franchise Agreement and constitutes an intentional misuse of HDA's trademarks with the intent to deprive Plaintiff its rightful profits and goodwill and to mislead and confuse the public as to the nature and origin of donut products being sold by Andrade.

26.      Andrade's continued use of HDA's Marks, subsequent to termination, constitutes a violation of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), and Rhode Island trademark law, R.I. Gen. Laws Title 6. Ch. 2-1 et seq., and unfair competition law.

27.      Andrade have misappropriated HDA's Marks with the intent to cause mistake and confusion, and said acts constitute unfair competition and an infringement of HDA's common-law and statutory rights in its trademarks.  Andrade's actions are a fraudulent attempt to mislead the public into believing that the goods sold by Andrade were made by, approved by, and/or authorized by HDA and to reap the benefits of such association.

28.      Plaintiffs have no adequate remedy at law and will suffer irreparable harm by Andrade's failure to cease holding themselves out as a licensed operator of a Honey Dew Donuts Shop in violation of said Franchise Agreement.

6

29.     By reason of Andrade's acts alleged herein, Plaintiffs have suffered, and will continue to suffer, damage to their business, reputation and goodwill, and Bowen has lost sales and profits, as well as the benefit of its Franchise Agreement and Sublease, which has been violated by Defendants, and HDA and Bowen have incurred counsel fees for which Andrade is liable pursuant to the applicable contracts and applicable statutes.

WHEREFORE, plaintiffs respectfully pray that this Honorable Court:

(A)     Grant judgment for Plaintiffs against Defendants jointly and severally in such sums as the Court deems just and proper for all lost profits and other actual damages resulting from Defendants' trademark infringement and/or unfair competition, together with interest and punitive, exemplary and/or treble damages as authorized by law;

(B)     Grant judgment for Plaintiffs against Defendants jointly and severally in such sums as the Court deems just and proper for Defendants' wrongful use of the Honey Dew System and HDA's Marks from termination of the franchise until final cessation of use, as the Court deems just and proper;

(C)     Grant judgment for Plaintiffs against Defendants jointly and severally in such sums as the Court deems just and proper for Plaintiffs' reasonable attorneys' fees and costs of collection;

(D)     Enter a Permanent Injunction enjoining Defendants, their agents, officers, directors, representatives, servants, employees and all other persons in active concert or participation with any of them from: (i) using HDA's Marks or any reproduction, counterfeit, copy, or colorable imitation of said Marks in connection with the manufacture, holding for sale, sale or otherwise moving or disposing in any manner of any donut and coffee shop products or services or in any way misleading the public and its customers that its products and/or services are connected with Honey Dew Donuts and (ii) utilizing any signage and all trade dress indicative of Honey Dew Donuts; and

7

(E)    Grant such other and further relief, including equitable relief, as this

Honorable Court deems just and proper.


HONEY DEW ASSOCIATES, INC.
BOWEN INVESTMENT, INC.
By their Attorneys,


Jack J. Mikels
JACK MIKELS & ASSOCIATES
50 Federal Street
Boston, MA  02110-2500
(617) 426-5858


Charles D. Wick
Pearlman & Wick
58 Weybosset Street, Suite 600
Providence, RI 02903-2896
(401) 274-3770

**VERIFICATION**

I, Richard J. Bowen, on oath, do hereby certify that I am President of Honey Dew Associates,

Inc., that I have read the foregoing, and that it is true to the best of my knowledge, information and

belief.


Richard J. Bowen, President
Honey Dew Associates, Inc.


I, Robert Bowen, on oath, do hereby certify that I am President of Bowen Investment, Inc.,

that I have read the foregoing, and that it is true to the best of my knowledge, information and belief.


Robert Bowen, President
Bowen Investment, Inc.

f/mik/bow-in/lit/Warwick/Complaint

8

**Exhibit 4**

NATIONAL ARCHIVES AND RECORDS ADMINIS

## To all to whom these presents shall come, Greet

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf, under the seal of the National Archives and Records Administration, that the attached reproduction(s) is a true and correct copy of documents in his custody.



| | |
|---|---|
| SIGNATURE | |
| NAME | DATE |
| Paul J. Palermo | October 12, 2005 |
| TITLE | |
| Supervisory Archives Specialist | |
| NAME AND ADDRESS OF DEPOSITORY | |
| NARA, Northeast Region (Boston)<br>Office of Regional Records Service<br>380 Trapelo Road<br>Waltham, MA  02452 | |

NA FORM 13040 (10-86)

---

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT — Mass. (EXCEPT IN U.S. PLAINTIFF CASES)

RECEIVED

MAR 30 1998

CLERK
U.S. DISTRICT COURT
DISTRICT OF R.I.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT — PROVIDENCE
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Charles D. Wick, Esquire
58 Weybosset St., Ste 600
Providence, RI 029
274-3770

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN × IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN × IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Trademark Act of 1946   15 USC 1051-1127

## V. NATURE OF SUIT (PLACE AN × IN ONE BOX ONLY)

[Nature of suit checkbox grid — CONTRACT, TORTS, FORFEITURE/PENALTY, BANKRUPTCY, OTHER STATUTES, REAL PROPERTY, CIVIL RIGHTS, PRISONER PETITIONS, LABOR, PROPERTY RIGHTS, SOCIAL SECURITY, FEDERAL TAX SUITS]

## VI. ORIGIN (PLACE AN × IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ Unliquidated
Check YES only if demanded in complaint
JURY DEMAND: ☐ YES ☒ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE 3-30-98   SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT

JS 44
(Rev. 07/89)

**CIVIL COVER SHEET**    98 175

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I (a) PLAINTIFFS**

HONEY DEW ASSOCIATES, INC., and
BOWEN INVESTMENTS, INC.

**DEFENDANTS**

M&K FOOD CORPORATION, IRWIN KAY and
ADELE KAY

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    RECEIVED
(EXCEPT IN U.S. PLAINTIFF CASES)    Mass.

MAR 3 0 1998

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    Providence
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
CLERK
U.S. DISTRICT COURT
Charles D. Wick, Esquire    DISTRICT OF R.I.
58 Weybosset St., Ste. 600
Providence, RI  02903
274-3770

ATTORNEYS (IF KNOWN)

**II. BASIS OF JURISDICTION**    (PLACE AN × IN ONE BOX ONLY)

☐ 1 U.S. Government    ☒ 3 Federal Question
   Plaintiff                     (U.S. Government Not a Party)

☐ 2 U.S. Government    ☐ 4 Diversity
   Defendant                  (Indicate Citizenship of
                                    Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**    (PLACE AN × IN ONE BOX
(For Diversity Cases Only)    FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Trademark Act of 1946  15 USC 1051-1127

**V. NATURE OF SUIT** (PLACE AN × IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury— Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | PROPERTY RIGHTS | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | PERSONAL PROPERTY | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | ☒ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | LABOR | SOCIAL SECURITY | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | FEDERAL TAX SUITS | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | | ☐ 550 Other | | | ☐ 890 Other Statutory Actions |

**VI. ORIGIN**    (PLACE AN × IN ONE BOX ONLY)    Appeal to District Judge from Magistrate Judgment

☒ 1 Original    ☐ 2 Removed from    ☐ 3 Remanded from    ☐ 4 Reinstated or    ☐ 5 Transferred from    ☐ 6 Multidistrict    ☐ 7 Judge from
   Proceeding         State Court         Appellate Court       Reopened            another district         Litigation          Magistrate
                                                                                          (specify)                                  Judgment

**VII. REQUESTED IN**    CHECK IF THIS IS A CLASS ACTION    DEMAND $    Check YES only if demanded in complaint:
**COMPLAINT:**    ☐ UNDER F.R.C.P. 23    Unliquidated    JURY DEMAND:  ☐ YES  ☒ NO

**VIII. RELATED CASE(S)**    (See instructions):
**IF ANY**    JUDGE _____    DOCKET NUMBER _____

DATE    SIGNATURE OF ATTORNEY OF RECORD
3-30-98    [signature]

UNITED STATES DISTRICT COURT



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

HONEY DEW ASSOCIATES, INC., and )
BOWEN INVESTMENT, INC. )
    Plaintiffs, )
v. )   C. A. NO.
 )
M&K FOOD CORPORATION, IRWIN )
KAY and ADELE KAY, )
    Defendants. )

**CA 98 1754**

## VERIFIED COMPLAINT

### JURISDICTION

1.    The jurisdiction of this Court is based upon 28 U.S.C. §1338 (a) and (b) as this action relates to Defendants' unauthorized use of certain trademarks and Defendants' unfair competition related thereto.

2.    The jurisdiction of this Court is further based upon the Trademark Act of 1946 (the Lanham Act), 15 U.S.C. §§ 1051-1127 (1982), specifically §§ 1114(1) and 1125(a). The Court has supplemental jurisdiction over state law claims contained herein pursuant to 28 U.S.C. § 1367(a).

### BACKGROUND

3.    Honey Dew Associates, Inc. ("HDA") is a corporation duly organized and existing pursuant to the laws of the Commonwealth of Massachusetts with its principal place of business at 35 Braintree Hill Office Park, Braintree, Massachusetts and is duly registered to conduct business in Rhode Island.  At all times relevant hereto, HDA was in the business of franchising donut and coffee shops known as Honey Dew Donuts℠ Shops.

1

4.    At all times relevant hereto, HDA has been and continues to be the owner of several United States trademarks and service marks, all on the Principal Register as follows:

| Trademark/Service Mark | Register Number/ Serial Number | Date Granted |
|---|---|---|
| Honey Dew Bear | 1,201,569 | July 13, 1982 |
| Honey Dew Bear with "Honey Dew Donuts" | 1,238,646 | May 17, 1983 |
| Honey Dew Bear Head with "Honey Dew Donuts" | 2,011,623 | October 29, 1996 |
| "Always Fresh, Always Good" | 2,108,962 | October 28, 1997 |
| "Chillerchino" | 75/322,865 | Registration Pending |

HDA is also the owner of the service marks "Honey Dew Donuts" and "Always Fresh, Always Good", and the trademarks "Honey Dew Donuts" with Bear Head logo and "Chillerchino", all duly registered with the State of Rhode Island. Copies of HDA's United States and Rhode Island trademark and service mark registration papers are attached hereto as Exhibit "A" (the said trademarks and service marks, together with all trade dress, trade names and other proprietary forms of identification, collectively, the "Marks").

5.    Plaintiff Bowen Investment, Inc. ("Bowen") is a corporation duly organized and existing pursuant to the laws of the Commonwealth of Massachusetts with its principal place of business at 2 Taunton Street, Plainville, Massachusetts. At all relevant times hereto, Bowen and HDA have agreed that Bowen may act as a sub-franchisor for the purpose of franchising certain Honey Dew Donuts[SM] Shops in Rhode Island.

6.    The franchise of Honey Dew Donuts[SM] Shops, in relevant part, includes providing the franchisee with a license to utilize methods of production, merchandising, display and advertising methods, including the use of specifically designed buildings, equipment accessories, identification schemes, products, management programs, standards, specifications and proprietary recipes, production techniques, marks and good will. (the "Honey Dew System").

2

7.     Defendant M&K Food Corporation ("M&K") is a corporation duly organized and existing pursuant to the laws of the State of Rhode Island, having its principal place of business at 85 Sheffield Road, Cranston, Rhode Island.

8.     On or about June 9, 1992, M&K and Bowen entered into a Franchise Agreement and certain ancillary agreements (collectively, the "Franchise Agreement"), attached hereto as Exhibit "B", by which M&K was licensed as a franchisee to operate a Honey Dew Donuts℠ Shop at 1300 Broad Street, Providence Rhode Island (the "Franchised Premises").

9.     Defendant Irwin Kay ("Irwin") is a citizen of the State of Rhode Island residing at 85 Sheffield Road, Cranston, Rhode Island. At all times relevant hereto, Irwin was an owner of M&K. Irwin is and at all relevant times has been personally liable for all of M&K's obligations to Bowen pursuant to a Liability Agreement, a copy of which is attached hereto as Exhibit "C".

10.    Defendant Adele Kay ("Adele") is a citizen of the State of Rhode Island residing at 85 Sheffield Road, Cranston, Rhode Island. At all times relevant hereto, Adele was an owner of M&K. Adele is and at all relevant times has been personally liable for all of M&K's obligations to Bowen pursuant to the said Liability Agreement.

## COUNT I

11.    Plaintiffs repeat and reaver the allegations of paragraphs one through 10 as if expressly rewritten and set forth herein.

12.    On or about and February 5, 1998, pursuant to the Franchise Agreement, Bowen forwarded to Defendants a Notice of Default, a copy of which is attached hereto as Exhibit "D." In relevant part, the Notice of Default provided M&K notice that it was in violation of the Franchise Agreement for (a) failing to pay royalties from the week ending November 9, 1997 to the date of the notice and (b) failing to maintain its operation in compliance with HDA's operating standards, as evidenced by a failed inspection. The

3

Notice of Default specified the applicable periods during which M&K could cure the defaults to avoid termination of its franchise.

13.      Defendants failed to cure the defaults within the time periods specified in the Notice of Default.

14.      On or about March 2, 1998, pursuant to the Franchise Agreement, Bowen forwarded to Defendants a "Notice of Termination", a copy of which is attached hereto as Exhibit "E". In relevant part, the Notice of Termination ended M&K's license to operate a Honey Dew Donuts[SM] Shop.

15.      In relevant part, the Franchise Agreement provides that, upon termination, the Defendants are required to immediately discontinue the use of all Marks, signs and forms of advertising indicative of HDA as symbols of its business and products, tender possession of the premises, and make payment on an accelerated basis of all sums due to Bowen as royalties and to pay all of Bowen's costs, including counsel fees involved in collection and all Bowen's and HDA's costs, including counsel fees, pertaining to protection of the Marks.

16.      Despite receipt of the Notices of Default and Notices of Termination, the Defendants have continued to hold themselves out to the public as a Honey Dew Donuts[SM] Shop, have not ceased use of the name, logos, signage, advertising or other property subject to the agreements concerning the use of HDA's Marks and have otherwise failed to comply with the termination provisions of the Franchise Agreement between the parties.

17.      On or about March 13, 1998, Plaintiff served upon Defendants correspondence advising them to immediately cease and desist from infringing HDA's Marks, trade dress and other rights by selling, manufacturing and/or distributing donut-related products which are counterfeits of HDA's Marks. A copy of the "Cease and Desist Letter" is attached hereto as Exhibit "F".

18.      Defendants failed to either acknowledge or comply with the Cease and Desist Letter.

4

19. Use of HDA's trademarks by Defendants after termination is a violation of the Franchise Agreement and constitutes an intentional misuse of HDA's trademarks with the intent to deprive Plaintiff its rightful profits and goodwill and to mislead and confuse the public as to the nature and origin of donut products being sold by Defendants.

20. Defendants continued use of HDA's Marks, subsequent to termination, constitutes a violation of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), and Rhode Island trademark law, R.I. Gen. Laws Title 6. Ch. 2-1 et seq., and unfair competition law.

21. Defendants have misappropriated HDA's Marks with the intent to cause mistake and confusion, and said acts constitute unfair competition and an infringement of HDA's common-law and statutory rights in its trademarks. Defendants' actions are a fraudulent attempt to mislead the public into believing that the goods sold by Defendants were made by, approved by, and/or authorized by HDA and to reap the benefits of such association.

22. Plaintiffs have no adequate remedy at law and will suffer irreparable harm by Defendants' failure to cease holding itself out as a licensed operator of a Honey Dew Donuts℠ Shop in violation of said Franchise Agreement.

23. By reason of Defendants' acts alleged herein, Plaintiffs have suffered, and will continue to suffer, damage to their business, reputation and goodwill, and Bowen has lost sales and profits, as well as the benefit of its Franchise Agreement, which has been violated by Defendants, and HDA and Bowen have incurred counsel fees for which Defendants are liable pursuant to the applicable contracts and applicable statutes.

WHEREFORE, plaintiffs respectfully pray that this Honorable Court:

A. Grant judgment for Plaintiffs against Defendants jointly and severally in such sums as the Court deems just and proper for all lost profits and other actual damages resulting from Defendants' trademark infringement and/or unfair competition, together with interest and punitive, exemplary and/or treble damages as authorized by law;

5

B.      Grant judgment for Plaintiffs against Defendants jointly and severally in such sums as the Court deems just and proper for Defendants' wrongful use of the Honey Dew System and HDA's Marks from termination of the franchise until final cessation of use, as the Court deems just and proper;

C.      Grant judgment for Plaintiffs against Defendants jointly and severally in such sums as the Court deems just and proper for Plaintiffs' reasonable attorneys' fees and costs of collection;

D.      Order that the Defendants, their agents, officers, directors, representatives, servants, employees and all other persons in active concert or participation with any of them be temporarily, preliminarily and permanently:

(i) enjoined from using HDA's Marks or any reproduction, counterfeit, copy, or colorable imitation of said Marks in connection with the manufacture, holding for sale, sale or otherwise moving or disposing in any manner of any donut and coffee shop products or services or in any way misleading the public and its customers that its products and/or services are connected with Honey Dew Donuts[SM] .

(ii) Ordered to cease utilizing any signage and all trade dress indicative of Honey Dew Donuts[SM] and enjoined from identifying in any manner the donut shop at the premises located at 1300 Broad Street, Providence, Rhode Island as being part of HDA's franchise system or a Honey Dew Donuts[SM] Shop;

(iii) enjoined from removing, destroying, or otherwise disposing of any business record, financial record or related document pertaining in any way to income received and expenses incurred from November 1, 1997 through the date of cessation by Defendants of the use of HDA's Marks including, without limitation, register tapes, payable records, receivable records, and records pertaining to the cost of goods sold, the amount of sales and the costs of doing business;

6

E.    Grant such other and further relief, including equitable relief, as this Honorable Court deems just and proper.

## COUNT II

24.    Plaintiffs repeat and reallege the allegations contained in Count I as if fully set forth herein.

25.    In relevant part, Section XXI(A)(2) of the Franchise Agreement provides that, upon termination, M&K will not utilize the franchised premises as a donut shop for a one year period following termination.

26.    In connection with the Franchise Agreement, Bowen, M&K and M&K's lessor entered into a Lease Assumption and Modification Agreement by which Bowen could, at its option, take over the premises upon default of M&K.  A copy of the said Agreement is attached hereto as Exhibit "G ".

27.    Bowen desires to exercise its rights subject to the Lease Assumption and Modification Agreement and take over operation of the Franchised Premises, subject to satisfactory negotiations with the owner of said real estate as to any sums which said owners claims may be due by Defendants.

28.    Pursuant to a Supplemental Agreement between Bowen and M&K dated June 9, 1992, a copy of which is included with the Franchise Agreement, Exhibit B hereto, if Bowen assumes the obligations of the Lease, M&K agrees to vacate the Franchised Premises forthwith, leaving the said premises in substantially the same condition as they were at the time the franchise opened for business, reasonable wear and tear excepted.

29.    If M&K is allowed to operate a donut business in violation of the Franchise Agreement, and is not ordered to fulfill its obligations pursuant to the Supplemental Agreement, M&K will improperly interfere with Bowen's right to take over the subject premises for its own use. Bowen, HDA and their franchisees will suffer irreparable unless compliance with the Supplemental Agreement is compelled in that, Bowen will lose sales

7

which the Supplemental Agreement was executed to protect and will suffer negative goodwill associated with the inoperation of a franchised location.

WHEREFORE, plaintiffs respectfully pray that this Honorable Court:

A.    Order that the Defendants be temporarily, preliminary and permanently:

(i) restrained and enjoined from utilizing the franchised premises as a donut shop for one year from the date of cessation of its operations;

(ii) restrained and enjoined interfering with Bowen's rights pursuant to the Lease Assumption and Modification Agreement;

(iii) ordered to forthwith restore the premises at 1300 Broad Street, Providence to the condition they were in when the franchised business opened, reasonable wear and tear excepted; and

(iv) ordered to forthwith vacate the premises at 1300 Broad Street, Providence.

B.    Award plaintiffs their costs and reasonable attorneys' fees; and

C.    Provide such other relief as this Honorable Court deems just and proper.

### COUNT III

30.    Plaintiffs repeat and reallege the allegations contained in Counts I and II as if fully set forth herein.

31.    The Franchise Agreement also includes separate Covenants Not to Compete by which the Defendants agreed for one year following termination, not to be engaged, directly or indirectly, or be financially interested in, or be associated with, any business of the same or similar nature as a Honey Dew or Honey Dew Donut Shop, within three (3) miles of any then existing Honey Dew or Honey Dew Donut Shop.

32.    The violation by the Defendants of these contractual obligations will cause irreparable harm to Plaintiffs and other franchisees for which there is no adequate remedy at law.

8

33.    The Franchise Agreement expressly provides for HDA's and Bowen's entitlement to injunctive relief to restrain any actual or threatened violations as well as for costs and reasonable attorneys' fees to enforce the Defendants' Covenants Not to Compete.

WHEREFORE, plaintiffs respectfully pray that this Honorable Court:

A.    Order that the Defendants be temporarily, preliminary and permanently enjoined from directly or indirectly engaging in, having a financial interest in, or associating with any business of the same or similar nature as a Honey Dew or Honey Dew Donuts$^{SM}$ Shop, within three (3) miles of any existing Honey Dew or Honey Dew Donuts$^{SM}$ Shop for one year following cessation of their operation under HDA's Marks;

B.    Award plaintiffs their costs and reasonable attorneys' fees; and

C.    Provide such other relief as this Honorable Court deems just and proper.

### COUNT IV

34.    Bowen Investment, Inc. repeats and realleges the allegations of Counts I-III as if expressly restated herein.

35.    In relevant part, the Franchise Agreement provides that M&K will pay Bowen seven (7%) of its weekly gross sales.

36.    Defendants have failed to account for its sales since the end of November, 1997.

37.    In relevant part, the Franchise Agreement provides that M&K, in the event of termination of the Franchise Agreement for its default, will pay Bowen its lost royalties, including royalties for the remainder of the intended term of the Franchise Agreement, calculated at seven percent (7%) of average weekly sales, using the prior calendar year's average gross sales as the base, plus costs of collection including counsel fees.

38.    Pursuant to paragraph 2 of the Supplemental Agreement dated June 9, 1992, part of the Franchise Agreement, Defendants owe Bowen for lost royalties from December

9

1, 1997 through the intended expiration of the term of the Franchise Agreement, June 8, 2002, and for the costs of collection including counsel fees.

WHEREFORE, Plaintiff Bowen Investment, Inc. requests judgment against Defendant M&K Food Corporation plus interest, costs, and reasonable attorney's fees.

WHEREFORE, Plaintiff Bowen Investment, Inc. requests judgment against Defendant Irwin Kay, plus interest, costs, and reasonable attorney's fees.

WHEREFORE, Plaintiff Bowen Investment, Inc. requests judgment against Defendant Adele Kay, plus interest, costs, and reasonable attorney's fees.

WHEREFORE, Plaintiff Bowen Investment, Inc. requests judgment against the Defendants together, plus interest, costs, and reasonable attorney's fees.

> HONEY DEW ASSOCIATES, INC.
> BOWEN INVESTMENT, INC.
> By their Attorneys,
>
> Jack J. Mikels
> Scott I. Wolf
> JACK MIKELS & ASSOCIATES
> 50 Federal Street
> Boston, MA 02110-2509
> (617) 426-5858
>
> Charles D. Wick
> Pearlman & Wick
> 58 Weybosset Street, Suite 600
> Providence, RI 02903-2896
> (401) 274-3770

10

**VERIFICATION**

I, Richard J. Bowen, on oath, do hereby certify that I am President of Honey Dew

Associates, Inc., that I have read the foregoing, and that it is true to the best of my knowledge,

information and belief.

Richard J. Bowen, President
Honey Dew Associates, Inc.

I, Robert Bowen, on oath, do hereby certify that I am President of Bowen Investment, Inc.,

that I have read the foregoing, and that it is true to the best of my knowledge, information and belief.

Robert Bowen, President
Bowen Investment, Inc.

f/mik/bow-sn/broad/Complaint

11

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND


HONEY DEW ASSOCIATES, INC. and     :
BOWEN INVESTMENT, INC.             :
    Plaintiffs                     :
                                   :
        v.                      :     C.A. NO.  98-175 L
                                   :
M & K FOOD CORPORATION,            :
IRWIN KAY and ADELE KAY            :
    Defendants                     :


ANSWER OF DEFENDANTS

FIRST  DEFENSE

        Defendants, M & K Food Corporation (M & K), Irwin
Kay (IK) and Adele Kay (AK), file their within answer pursuant
to the numbered paragraphs of plaintiffs' complaint, and
state the following:

        1.  Defendants neither admit nor deny the allegations
of paragraph 1., and leave the plaintiffs for their proof thereon.

        2.  Defendants neither admit nor deny the allegations
of paragraph 2., and leave the plaintiffs for their proof thereon.

        3.  Admitted.

        4.  Admitted.

        5.  Admitted.

        6.  Defendants neither admit nor deny the allegations
of paragraph 6., and leave the plaintiffs for their proof thereon.

        7.  Admitted.

        8.  Admitted.

9

9.   IK admits that he is a citizen of the State of Rhode Island, residing at tne address alleged, and having signed the instrument identified as Exhibit "C", but denies all other allegations set forth in paragraph 9.

10. AK admits that she is a citizen of the State of Rhode Island, residing at the address alleged, and having signed the instrument identified as Exhibit "C", but denies all other allegations set forth in paragraph 10.

COUNT I

11. Defendants incorporate by reference, and expressly make a part hereof, all answers as set forth in paragraphs 1. through 10., both inclusive, supra.

12. Denied.

13. Denied.

14. Denied.

15. Denied.

16. Denied.

17. Denied.

18. Denied.

19. Denied.

20. Denied.

21. Denied.

22. Denied.

23. Denied.

WHEREFORE, defendants pray judgment against plaintiffs, and for their costs.

2.

COUNT II

24. Defendants incorporate by reference, and expressly make a part hereof, all answers as set forth in paragrahs 11. through 23., both inclusive, supra

25. Defendants neither admit nor deny the allegations of paragraph 25., and leave plaintiffs for their proof thereon.

26. Defendants neither admit nor deny the allegations of paragraph 26., and leave plaintiffs for their proof thereon.

27. Paragraph 27. does not set forth allegations to which any responsive answer can reasonably be made; but, for purposes of response, defendants deny the contents of such p aragraph.

28. Denied.

29. Denied.

WHEREFORE, defendants pray judgment against plaintiffs, and for their costs.

COUNT III

30. Defendants incorporate by reference, and expressly make a part hereof, all answers as set forth in Counts I and II, supra.

31. Denied.

32. Denied.

33. Denied.

WHEREFORE, defendants pray judgment against plaintiffs, and for their costs.

3.

COUNT IV

34. Defendants incorporate by reference, and expressly make a part hereof, all answers as set forth in Counts I, II, and III, supra.

35. Admitted.

36. Denied.

37. Denied.

38. Denied.

WHEREFORE, defendants pray judgment against plaintiffs, and for their cots.

M & K FOOD CORPORATION, IRWIN
KAY and ADELE KAY, defendants

By their attorney,

Irving Brodsky (#0216)
P.O. Box #0728
Providence, Rhode Island 02940
April 17, 1998
(401) 751-3400

SECOND DEFENSE

Defendants file their within second defense to plaintiffs' complaint, and allege as follows:

1. That for about a year next prior to June 9, 1992 (the date of the execution of the franchise agreement between plaintiff Bowen Investment, Inc. (Bowen) and M & K, M & K,

4,

by and through IK and AK, sought a site in the City of
Providence, Rhode Island for the establishment of a donut
shop, the character of which business was well-known to IK,
in that he had operated donut shops under a similar type of
franchise as M & K had entered into with Bowen; and through the
efforts of Providence Economic Redevelopment Corporation (PERC),
a City of Providence agency designed to create, by financial
assistance, economic opportunities which can generate the creation
of jobs, and, in addition, upgrade depressed areas of  the City,
cited as "enterprise zones", for the attraction of business
establishments, such a site was located at 1300 Broad Street,
Providence, Rhode Island, and which site, located within such an
"enterprise zone", met the criteria for the establishment of a
business; and were M & K to establish a retail donut shop at
said site, PERC was prepared to assist in the financing to M & K
for such undertaking, and such financing, so to be afforded by
PERC, was essential to the establishment of such a retail donut
shop by M & K.

    2.  That with such assurance of assistance in financing
as indicated by PERC, IK and AK, on behalf of M & K, conferred
with Robert T. Bowen, president of Bowen, for a franchise to use
the name "Honey Dew" in the planned operation of a retail donut
shop at said site (1300 Broad Street); and IK and AK advised
Robert T. Bowen of the reception of PERC in developing the said
site within the said agency's "enterprise zone" by providing

financial assistance to M & K; that Robert T. Bowen inspected the said site, and the area of the general neighborhood around the site, and Robert T. Bowen became well informed of the general character and economically depressed condition of such area. Nevertheless, Robert T. Bowen was prepared to have Bowen execute a franchise agreement with M & K for the establishment of a retail "Honey Dew" donut shop, based, upon other conditions, that (a) M & K pay a franchise fee of $25,000.00, (b) provide a building that met the specifications and plans as set and approved by Bowen, and (c) M & K obtain from the owner of the site (who was to construct the building for the donut shop) a long-term leaae.

3.   That IK and AK, on the behalf of M & K, sought out the owner of the site of the premises, Cost Realty, Inc. (Cost); and following conferences among M & K, Cost and Robert T. Bowen, on the behalf of Bowen, a building was undertaken to be constructed by Cost in accordance with Bowen's specifications and plans; and M & K obtained from Cost a lease for the building to house the "Honey Dew" donut shop for a term of 12 years, at a monthly rental of $1,806.34, plus payments for real estate taxes, insurance and utilities, and an option to renew for a further term of 12 years, said lease, first being approved by Bowen, having been signed on November 14, 1991, but the term was to commence at the date of the issuance of a certificate of occupancy by the requisite agency of the City of Providence (and which was issued in the summer of 1992).

6.

4.  That IK, AK and M & K have expended the following sums of money in the establishment of the donut shop at the said site, pursuant to the franchise agreement with Bowen: $25,000.00 for the franchise fee to Bowen; $17,000.00 for extras in the construction by Cost of the donut shop building as directed by Bowen; $196,660.00 for the purchase and installation of the fixtures and equipment to operate the said "Honey Dew" donut shop as directed by Bowen, for a total amount of $238,660.00; and that said total sum was provided by the personal investment of funds of IK and AK in an amount of $132,000.00, and proceeds of a loan from PERC in the sum of $106,660.00 under a promissory note dated February 21, 1992, said promissory note being secured by (a) M & K executing a security agreement upon its donut shop fixtures and equipment, (b) mortgage on real estate owned by IK and AK, and (c) by a personal guarantee of IK and AK.

5.  That the so-called "enterprise zone", of which the site of the donut shop is a part, has not progressed according to the forecasts and expectations of PERC and M & K; and as a direct consequence, the ongoing sales by M & K of its donut shop operation have become depressed, thereby affecting the ability of M & K to fulfill its fee payments to Bowen on a current basis; and, in addition, and devastating to the financial resources of IK and AK, IK, who was the prime influence in the operation of the donut shop, has been stricken with a serious debilatating and degenerative disease (Parkinson's) which caused IK and AK to

7.

expend inordinate amounts of money in the care of IK's disease,
thereby impacting the financial assets of IK and AK to keep
the fees current; however, as of the date of the within answer,
all fees as owed to Bowen are in a current status of payment.

6. That M & K has operated the said donut business,
under its franchise with Bowen, with unquestioned adherence
to the quality of the product, and without any breach, whatsoever,
in the operation of the business other than sporadic deficiences
in the unilaterally produced ratings of Bowen's so-called
inspection reports, and which deficiencies, when brought to the
attention of M & K, have always been corrected; but the deficiencies
as may have been found by Bowen are insignificant and trivial,
caused in most of the instances by the impact of the depressed
neighborhood of the business site, and never have affected the quality
and service of the baked product, have never affected plaintiffs'
trademark and/or service that the donut baked and sold by M & K is
"Always Fresh, Always Good"; and such alleged deficiencies do not,
in any manner whatsoever, present or threaten any immediate,
imminent or irreparable harm or damage to the value of plaintiffs'
trademark or franchise service or identification.

7. That any alleged and occasional breach of the
timely payment of franchise fees by M & K to Bowen, which
average about $300.00 per week, for which plaintiffs seek
to prohibit M & K, as well as IK and AK, from using plaintiffs'
tradename, to cease the identification with plaintiffs' franchise
operation, and to prohibit M & K, IK and AK, from operating

8.

their donut retail business at the site, as measured against the large investment by defendants of appromimately $240,000.00 in establishing the said business, and the weighty obligation of defendants under the lease to house its business, present a definite forfeiture of defendants' business and their immense investment; and by every principle of equity and justice, such forfeiture should not be enforced, and extended in aid of prayers of plaintiffs for injunctive or other relief as they seek.

WHEREFORE, defendants respectfully request the Court to enter its appropriate Orders:

A.  to deny the prayers of plaintiffs for any injunctive action against defendants, and each of them, concerning operation of the said retail donut business at the site;

B.  to deny the prayers of plaintiffs for a termination of M & K's continuance, in the operation of its said retail donut business, under the franchise agreement with Bowen;

C.  to deny the prayers of plaintiffs to prohibit M & K to continue its business as a retail donut shop at the site;

D.  to deny any judgment against defendants, or either of them, of any money judgment and/or award of attorney's fees; and

E.  to grant such other relief to defendants, and each of them, as to the Court may be deemed meet and just.

9.

M & K FOOD CORPORATION, IRWIN
KAY and ADELE KAY, defendants

By their attorney,

Irving Brodsky (#0216)
P.O. Box 40728
Providence, Rhode Island 02940
April 17, 1998
(401) 751-3400

COUNTERCLAIM

Defendants file their counterclaim against plaintiffs,
and each of them, and allege:

1.   The allegations in paragraphs 1. through 7.,
both inclusive, as contained in defendants' SECOND DEFENSE,
supra, are expressly incorporated herein, and expressly made
a part hereof, by reference.

2.   That under the provisions of the franchise
agreement between Bowen and M & K, Bowen undertook, and
promised, to provide supervisory assistance to M & K, at Bowen's
expense, in the operation by M & K of its retail donut shop
business.

3.   That plaintiffs, and especially Robert T. Bowen, the
principal officer  of Bowen, were fully aware of the nature of
the site of the operation of the said retail donut shop business
as being in a depressed area of the City of Providence, and
within the so-called "enterprise zone" as being established by
PERC for economic revitalization of the area, and as worthy of

10.

PERC's advance to defendants of financial assistance to accomplish that civic and economic goal, and plaintiffs, and especially Robert T. Bowen, were, further, fully aware and apprised of the fragile nature of the said business within the said area, and the special need for supervisory assistance by plaintiffs, and each of them, to aid in M & K's efforts to maintain its said business, to meet its obligations with Bowen, and to attain the goals of PERC; yet, unmindful of plaintiffs' obligations, especially of Bowen's, to M & K, and in violation of their respective duties to afford such supervisory assistance as so undertaken and promised by Bowen in said franchise agreement, plaintiffs, and especially Bowen, neglected and refused to afford any such supervisory assistance in any manner whatsoever, thereby depriving, and withholding from, M & K the expertise and direction within the resources of plaintiffs, and each of them, to address the special needs of the area toward the goal of developing and increasing the sales of M & K, and M & K's assisted ability to deal and treat with the problems of the area site.  Instead, plaintiffs, and each of them, adopted a course of action designed to harass M & K with action to cause defendants' forfeiture of their business investment, and a total destruction of the donut shop business, all on the pretext of insignificant deficiencies in Bowen's unilateral evaluations of the inspection reports, and sporadic failure to make weekly franchise fee payment.

11.

4.    That Bowen, which provided and furnished to its franchisees circulars and posters to be displayed within the premises of the franchisees, particularly window circulars and posters, advertsing specials designed to stimulate business sales, failed to provide, and furnish to, M & K such circulars and posters in a timely manner, but long after the same had been delivered to Bowen's other nearby franchisees, thereby further depriving M & K of the opportunities for increased sales; and that Bowen, which provided to its franchisees advertised material for raffles of Red Sox baseball tickets, as an incentive for increased sales by the franchisees, failed and refused to provide M & K such raffle materials and incentives, thereby further breaching Bowen's obligations toward M & K under the franchise agreement, and depriving M & K's opportunity for increased sales; and that Bowen, which provided and held meetings within the Rhode Island area with its franchisees, at which meetings Bowen, and its representatives, discussed and proposed innovative plans for new products and methods of merchandising, all designed to increase the sales of the products of the francisees, failed and refused to notify or invite M & K, or either IK or AK, to attend any such meetings, thereby further breaching Bowen's obligations toward M & K under  the franchise agreement, and depriving M & K's opportunity to benefit from such innovative plans so designed for increases of sales, and management techniques in the operation of the donut shop business.

12.

5.  That such failure and refusal on the part of plaintiffs, especially Bowen, to provide and furnish to M & K (i) supervisory assistance to meet the needs of the fragile nature of the site of the donut shop, (ii) timely delivery of said circulars and posters advertising specials. (iii) material for raffles of Red Sox baseball tickets as incentives for increased sales, and (iv)  notices and/or invitations to attend meetings arranged by Bowen for disclosure of new products and methods of merchandising, which such failures and refusals deprived defendants, and each of them, of needed assistance in M & K's untiring and faithful efforts to conduct its business, protect the interest and investment in the said donut shop business, and to meet defendants' obligations under the franchise agreement, have caused defendants, and each of them, to incur business sales losses and expense to defend the within action, and to undergo an unwarranted deterioration of M & K's business by the threatened closing of M & K's business, all without and any just cause or purpose.

WHEREFORE, defendants, and each of them, demand judgment for damages and for an award of attorney's fees against plaintiffs, and each of them, in such amounts as to the Court may deem meet and ju

M & K FOOD CORPORATION, IRWIN
KAY and ADELE KAY, defendants,

By their attorney,

Irving Brodsky (10216)
P.O. Box 40728
Providence, Rhode Island 02940
April 17, 1998
(401) 751-3400

13.

CERTIFICATION

Irving Brodsky certifies that there was mailed on April 18, 1998, postage prepaid, a copy of the within answer and counterclaim of defendants adddressed to Charles D. Wick, Esquire, attorney for plaintiffs, 58 Weybosset Street, Providence, Rhode Island 02903.

14.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RECEIVED

HONEY DEW ASSOCIATES, INC., and )
BOWEN INVESTMENT, INC.   .      )
    Plaintiffs,                     )
                                    )
v.                                      )    CA98-175 L
                                    )
M&K FOOD CORPORATION, IRWIN             )
KAY and ADELE KAY,                      )
    Defendants.                     )

### BOWEN INVESTMENT, INC.'S REPLY TO COUNTERCLAIM

1.    Paragraph 1 of the Counterclaim references paragraphs 1-7 of the Second Defense, to which Bowen Investment, Inc. ("Bowen") replies as follows:

    i.    Bowen admits that IK was had operated donut shops similar to M&K's franchise prior to M&K's purchase of the Honey Dew franchise from Bowen. Bowen is without sufficient knowledge to admit or deny the remaining allegations of paragraph 1 of the Second Defense and calls upon counterclaim plaintiffs to prove same..

    ii.    Bowen admits that it was advised that M&K had obtained financing. Bowen admits that Robert P. Bowen, incorrectly identified in the Second Defense as Robert T. Bowen, inspected the proposed site. Bowen is unable to admit or deny whether Robert Bowen was "well informed" of the general character and economically depressed condition of the area, as the term is undefined and vague, but admits that Bowen was familiar with the area. Bowen admits that conditions of the purchase of the franchise were a franchise fee of $25,000.00, a building meeting Bowen's specifications and a long-term lease. Bowen denies the remaining allegations of paragraph 2 of the Second Defense.

1

iii.    Bowen admits that M&K and Cost Realty, Inc. entered into a Lease. Bowen neither admits nor denies the allegations relating to the terms of the Lease as the Lease speaks for itself.

iv.    Bowen is unable to admit or deny allegations concerning sums of money expended by the counterclaim plaintiffs and the source of said funds, and calls upon counterclaim plaintiffs to prove same. Bowen admits receipt of the $25,000 franchise fee.

v.    Bowen denies that M&K's operation has become depressed and it is unable to fulfill its fee payments currently due to the condition of the area. Bowen is unable to admit or deny the allegations pertaining to the area, the type of zone, whether the area progressed according to the expectations of any third party, the condition of IK's health and the effect of his health on M&K's ability to make payments currently, and calls upon counterclaim plaintiffs to prove same. Bowen denies that payments are current and denies the remaining allegations of paragraph 5 of the Second Defense.

vi.    Bowen denies each and every allegation of paragraph 6 of counterclaim plaintiff's Second Defense.

vii.    Bowen denies each and every allegation of paragraph 7 of counterclaim plaintiff's Second Defense.

2.    Bowen denies the allegations of paragraph 2 of the Counterclaim.

3.    Bowen denies the allegations of paragraph 3 of the Counterclaim.

4.    Bowen denies the allegations of paragraph 4 of the Counterclaim.

5.    Bowen denies the allegations of paragraph 5 of the Counterclaim.

2

### FIRST AFFIRMATIVE DEFENSE

Defendants, by their breaches of the Franchise Agreement, are estopped from asserting the counterclaims.

### SECOND AFFIRMATIVE DEFENSE

Defendants, by their own misconduct are estopped from asserting the counterclaims.

### THIRD AFFIRMATIVE DEFENSE

The Counterclaims are barred by the defendants' laches.

### FOURTH AFFIRMATIVE DEFENSE

Defendants' Counterclaims are barred by their unclean hands.

### FIFTH AFFIRMATIVE DEFENSE

The Counterclaim fails to state a claim upon which relief can be granted.

BOWEN INVESTMENT, INC.
By its Attorneys,

Jack J. Mikels
Scott I. Wolf
JACK MIKELS & ASSOCIATES
50 Federal Street
Boston, MA 02110-2509
(617) 426-5858
Fax- 617-426-5858

Charles D. Wick
Pearlman & Wick
58 Weybosset Street, Suite 600
Providence, RI 02903-2896
(401) 274-3770
Fax 401-273-4749

f,a-biz,broadst,reply

3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

HONEY DEW ASSOCIATES, INC., and )
BOWEN INVESTMENT, INC. )
    Plaintiffs, )
     )
v. )     C. A. NO.  CA-98-175 L
     )
M&K FOOD CORPORATION, IRWIN )
KAY and ADELE KAY, )
    Defendants. )

## CERTIFICATE OF SERVICE

    I, Jack J. Mikels, hereby certify that a true copy of Bowen Investment, Inc.'s Reply to

Counterclaim and Honey Dew Associates, Inc.'s Reply to Counterclaim were served this day

upon Defendants' counsel of record, Irving Brodsky, in hand, by me personally, at the

Federal District Court House, 1 Exchange Terrace (Kennedy Plaza), Providence, RI.  An

additional copy of said documents were also served this day via first class mail, postage

prepaid, by mailing same to Attorney Irving Brodsky, 83 Woodbury Street, Providence,

Rhode Island, 02906.

    Signed under the pains and penalties of perjury this _____ day of May, 1998.

                                  Jack J. Mikels

f/abowin/broad/certserv

1

UNITED STATES DISTRICT COURᴛ
FOR THE DISTRICT OF RHODE ISLAND

HONEY DEW ASSOCIATES, INC., and )
BOWEN INVESTMENT, INC. )
    Plaintiffs, )
v. )          C. A. NO. CA-98-175 L
)
M&K FOOD CORPORATION, IRWIN )
KAY and ADELE KAY, )
    Defendants. )

### HONEY DEW ASSOCIATES, INC.'S REPLY TO COUNTERCLAIM

1.    Paragraph 1 of the Counterclaim references paragraphs 1-7 of the Second

Defense, to which Honey Dew Associates, Inc. ("HDA") replies as follows:

    i.    HDA is without sufficient knowledge to admit or deny any

allegation of paragraph 1 of the Second Defense and calls upon counterclaim

plaintiffs to prove same.

    ii.    HDA is unable to admit or deny any allegation of paragraph

2 of the Second Defense and calls upon counterclaim plaintiffs to prove same.

    iii.    HDA is unable to admit or deny any allegation of paragraph

3 of the Second Defense and calls upon counterclaim plaintiffs to prove same.

    iv.    HDA is unable to admit or deny any allegation of paragraph

4 of the Second Defense and calls upon counterclaim plaintiffs to prove same.

    v.    HDA is unable to admit or deny any allegation of paragraph

5 of the Second Defense and calls upon counterclaim plaintiffs to prove same.

    vi.    HDA denies each and every allegation of paragraph 6 of

counterclaim plaintiff's Second Defense.

    vii.    HDA denies each and every allegation of paragraph 7 of

counterclaim plaintiff's Second Defense.

1

2.     HDA denies the allegations of paragraph 2 of the Counterclaim.

3.     HDA denies the allegations of paragraph 3 of the Counterclaim.

4.     HDA denies the allegations of paragraph 4 of the Counterclaim.

5.     HDA denies the allegations of paragraph 5 of the Counterclaim.

### FIRST AFFIRMATIVE DEFENSE

Defendants, by their breaches of the Franchise Agreement, are estopped from asserting the counterclaims.

### SECOND AFFIRMATIVE DEFENSE

Defendants, by their own misconduct are estopped from asserting the counterclaims.

### THIRD AFFIRMATIVE DEFENSE

The Counterclaims are barred by the Defendants' laches.

### FOURTH AFFIRMATIVE DEFENSE

Defendants' Counterclaims are barred by their unclean hands.

### FIFTH AFFIRMATIVE DEFENSE

The Counterclaim fails to state a claim upon which relief can be granted.

Plaintiff,
HONEY DEW ASSOCIATES, INC.
By its Attorneys,

_____
Jack J. Mikels
Scott I. Wolf
JACK MIKELS & ASSOCIATES
50 Federal Street
Boston, MA  02110-2509
(617) 426-5858
Fax- 617-426-5858

_____
Charles D. Wick
Pearlman & Wick
58 Weybosset Street, Suite 600
Providence, RI 02903-2896
(401) 274-3770
Fax 401-273-4749

f,a-bii;broadst;reply

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

HONEY DEW ASSOCIATES, INC., and  )
BOWEN INVESTMENT, INC.            )
     Plaintiffs,                 )
v.                                )     C. A. NO.  CA-98-175 L
                                  )
M&K FOOD CORPORATION, IRWIN       )
KAY and ADELE KAY,                )
     Defendants.                 )

## CERTIFICATE OF SERVICE

I, Jack J. Mikels, hereby certify that a true copy of Bowen Investment, Inc.'s Reply to

Counterclaim and Honey Dew Associates, Inc.'s Reply to Counterclaim were served this day

upon Defendants' counsel of record, Irving Brodsky, in hand, by me personally, at the

Federal District Court House, 1 Exchange Terrace (Kennedy Plaza), Providence, RI. An

additional copy of said documents were also served this day via first class mail, postage

prepaid, by mailing same to Attorney Irving Brodsky, 83 Woodbury Street, Providence,

Rhode Island, 02906.

Signed under the pains and penalties of perjury this 11th day of May, 1998.

_____
Jack J. Mikels

f/abowin/broad/certserv

1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

HONEY DEW ASSOCIATES      :
     :
V.      :      **CA 98-175ML**
     :
M&K FOOD CORP.      :

## SETTLEMENT STIPULATION

     1.      Judgment shall enter from Plaintiff against Defendant, Adele Kay, for $15,000.00, plus interest and costs.

     2.      Execution is stayed and Judgment will be deemed completely satisfied so long as Defendant makes payment under the terms of a certain note annexed hereto at $1,000.00/month (Exhibit A) beginning November 1, 2001.

     3.      The note is to be secured by a mortgage of record. (Exhibit B)

     4.      Upon default, Plaintiff shall first seek satisfaction by foreclosure of the mortgage.

     5.      In the event the note is not satisfied from the foreclosure, the Plaintiff may apply to the Court for issuance of an execution of all amounts unpaid or unsatisfied after notice to the Court, affidavit of amounts due and notice to the Defendant.

Plaintiff                            Defendant
By his attorney                    By her attorney

CHARLES D. WICK, ESQ. #0858      CARL S. LEVIN, ESQ. 3336
58 Weybosset St., Ste. 600            CALENDA & IACOI, LTD.
Providence, RI 02903               171 Broadway
401-274-3770                    Providence, RI 02903
Fax: 401-273-4749             401-331-2191
Fax: 401-331-2991

ENTERED as an Order of this Honorable Court this⁄0ᵗʰ day of    October, 2001

APPROVED:                                    ENTERED:

*Barbara Barletta*                           *May M. Lisi*
                                                    U S D J
PRESENTED BY:

*[signature]*
CHARLES D. WICK, ESQ. #0858
58 Weybosset St., Ste. 600
Providence, RI 02903
401-274-3770

DISTRICT OF RHODE ISLAND
U.S. DISTRICT COURT

2001 OCT 10  A 11:22

FILED

2