UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

)
BOWEN INVESTMENT, INC.                    )
HONEY DEW ASSOCIATES, INC.                )          C.A. No. 05 – 11709 NMG
    Plaintiffs and Counterdefendants    )
                                        )          Judge Nathaniel M. Gorton
v.                                        )
                                        )
CARNEIRO DONUTS, INC and                  )
MANUEL M. CARNEIRO                        )
    Defendants and Counterclaimants     )
_____)

## **<u>DEFENDANTS' PROPOSED JURY INSTRUCTIONS</u>**

The Defendants respectfully request the Court to include in its charge to the jury, in addition to its general instructions, the attached special instructions, pursuant to Fed. R. Civ. P. 51.

The Defendants also request leave to file supplemental and amended requests for jury instructions at the conclusion of the evidence.

Respectfully,
MANUEL M. CARNEIRO
CARNEIRO DONUTS, INC.
By their Attorney,

/s/ Kevin R. McCarthy
 Kevin R. McCarthy
(BBO # 640788)
155 Fairoaks Lane
Cohasset, Ma  02025
781-383-0639

Date:   January 12, 2006

## <u>PROPOSED JURY INSTRUCTION NUMBER 1</u>

A claim for intentional misrepresentation in the franchise context is made out when:

1.  the charged party made a false representation of material fact;

2.  with knowledge of its falsity;

3.  for the purpose of inducing the franchisee to act on the false representation; and

4.  the franchisee relied on the representation to his or her detriment.

*Zukerman v. McDonald's Corp.*, 35 F. Supp. 2d 135, 144 (D. Mass. 1999); *Danca v. Taunton Sav. Bank*, 385 Mass. 1, 8, 429 N.E. 2d 1129, 1133 (1982).

## PROPOSED JURY INSTRUCTION NUMBER 2

Where there is a duty to disclose, the failure to disclose all material facts may constitute actionable fraud.

*Nota Constr. Corp. v. Keyes Assocs., Inc.*, 45 Mass. App. Ct. 15, 19, 694 N.E. 2d 401, 404-05 (1998).

## PROPOSED JURY INSTRUCTION NUMBER 3

A franchisee may allege an equitable estoppel defense to prevent a wrongful termination.  The elements of equitable estoppel are:

- a representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made;

- an act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made; and

- detriment to that person as a consequence of the act or omission.

*Dunkin' Donuts, Inc., v. Gav-Stra Donuts, Inc.*, 139 F. Supp. 2d 147, 157 (D. Mass. 2001).

## PROPOSED JURY INSTRUCTION NUMBER 4

Franchisors are required to reveal whether they, or any of the persons required to be identified under UFOC Item 2, had, during the previous 10 year period been convicted of a felony or pleaded nolo contendere to a felony charge or been held liable in a civil action by final judgment or been the subject of a material complaint or other legal proceedings if such felony, civil action, complaint or other legal proceeding involved violation of any franchise law, fraud, embezzlement, misappropriation of property or comparable allegations.

*United States v. Building Inspector of America,* 894 F. Supp. 507, 515-518 ( D. Mass. 1995)

**PROPOSED JURY INSTRUCTION NUMBER 5**

The FTC has placed an absolute obligation on franchisors to disclose information to prospective franchisees.

*United States v. Building Inspector of America,* 894 F. Supp. 507, 515-518 (D. Mass. 1995)

## PROPOSED JURY INSTRUCTION NUMBER 6

It is an unlawful violation of the Rhode Island Franchise Investment Act ("RIFIA") for

any person or entity to offer or sell a franchise unless the offer is registered under RIFIA

or is exempt from registration under s 19-28. 1-6 of RIFIA.

Rhode Island General Laws 1956 s 19-28.1-5, Rhode Island Franchise Investment Act.

## **PROPOSED JURY INSTRUCTION NUMBER 7**

A Rhode Island franchisor must promptly amend its franchise registration application to reflect every material change in the information filed with the director of business regulation.

Rhode Island General Laws 1956 s 19-28.1-11, Rhode Island Franchise Investment Act.

**PROPOSED JURY INSTRUCTION NUMBER 8**

In connection with the offer or sale of a franchise it is unlawful for a person, directly or indirectly, to:

(a) employ a device, scheme, or artifice to defraud;

(b) make an untrue statement of material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading;

(c) engage in an act, practice, or course of business which operates or would operate as a fraud or deceit on a person;

(d) represent to an offeree of a franchise that the filing of a franchise registration application or the registration of a franchise constitutes a finding by the director that a document filed under the Act is true, complete, and not misleading or that the director has passed upon the merits of the franchise;

(e) misrepresent that a franchise is registered or exempted from registration under this Act;

(f) violate an order of the director after the person receives notice that the order was issued;

(g) fail to notify the director of a material change in the information required in a document required to be filed by this Act or a rule or order under this Act; or

(h) omit to state a material fact or make or cause to be made an untrue statement of a material fact in any application, notice, or report filed with the director under this Act.

Rhode Island General Laws 1956 s 19-28.1-17, Rhode Island Franchise Investment Act.

## PROPOSED JURY INSTRUCTION NUMBER 9

 (a) A person who violates any provision of the Rhode Island Franchise Investment Act is liable to the franchisee for damages, costs, and attorneys' and experts' fees. In the case of a violation of §19-28.1-5, 19-28.1-8, or 19-28.1-17(a) through (e) inclusive of the Act, the franchisee may also sue for rescission. No person will be liable under this section if the defendant proves that the plaintiff knew the facts concerning the violation.

(b) Every person who directly or indirectly controls a person liable under this section, every principal executive officer or director of a person so liable, every person occupying a similar status or performing similar functions, and every agent or employee of a person so liable who materially aids in the act or transaction constituting the violation is also liable jointly and severally with and to the same extent as such person, unless the person liable proves he or she did not know, and in the exercise of reasonable care could not have known, of the existence of the fact by reason of which the liability is alleged to exist.

Rhode Island General Laws 1956 s 19-28.1-21, Rhode Island Franchise Investment Act.

## PROPOSED JURY INSTRUCTION NUMBER 10

The Rhode Island Franchise Investment Act shall be applied and construed with a view to uniformity among states enacting it. The Rhode Island Franchise Investment Act shall be liberally construed to effectuate its purposes.

Rhode Island General Laws 1956 s 19-28.1-33, Rhode Island Franchise Investment Act.

## PROPOSED JURY INSTRUCTION NUMBER 11

The Rhode Island state legislature finds that franchisees may suffer substantial losses when the franchisor does not provide complete information regarding the franchisor and the franchise relationship. The legislature also finds that many franchisees lack bargaining power and purchase a franchise when they are unfamiliar with operating a business, with the franchised business and with industry practices in franchising. The Rhode Island Franchise Investment Act seeks to assure that each offeree receives the information necessary to make an informed decision about the offered franchise. Further, it is the intent of this chapter to prohibit the sale of franchises when there is a likelihood that the franchisor's promises will not be fulfilled.

Rhode Island General Laws 1956 s 19-28.1-2, Rhode Island Franchise Investment Act.

*See also DeRosa v. Boston Bakery & Italian Food Specialty, Inc.*, 103 B.R. 382, Bus. Franchise Guide (CCH) ¶9483 (D.R.I. 1989)

## PROPOSED JURY INSTRUCTION NUMBER 11

"Fraud" and "deceit" under the Rhode Island Franchise Investment Act are not limited to

common law fraud and deceit.

Rhode Island General Laws 1956 s 19-28.1-3, Rhode Island Franchise Investment Act.

## PROPOSED JURY INSTRUCTION NUMBER 12

"Franchise" under the Rhode Island Franchise Investment Act means

(1) an oral or written agreement, either express or implied, which:

A. grants the right to distribute goods or provide services under a marketing plan prescribed or suggested in substantial part by the franchisor;

B. requires payment of a franchise fee in excess of $500 to a franchisor or its affiliate; and

C. allows the franchise business to be substantially associated with a trademark, service mark, trade name, logotype, advertising, or other commercial symbol of or designating the franchisor or its affiliate.

Rhode Island General Laws 1956 s 19-28.1-3, Rhode Island Franchise Investment Act.

## PROPOSED JURY INSTRUCTION NUMBER 13

"Franchisee" under the Rhode Island Franchise Investment Act means a person to whom a franchise is granted. Franchisee includes:

(1) a subfranchisor with regard to its relationship with a franchisor; and

(2) a subfranchisee with regard to its relationship with a subfranchisor.

Rhode Island General Laws 1956 s 19-28.1-3, Rhode Island Franchise Investment Act.

## PROPOSED JURY INSTRUCTION NUMBER 14

"Franchisor" under the Rhode Island Franchise Investment Act means a person who

grants a franchise. Franchisor includes a subfranchisor with regard to its relationship with

a franchisee, unless stated otherwise in this Act.

Rhode Island General Laws 1956 s 19-28.1-3, Rhode Island Franchise Investment Act

## **PROPOSED JURY INSTRUCTION NUMBER 14**

In every contract, including the franchise contract at issue in this case, there is a covenant of good faith and fair dealing between the parties. "[N]either party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."

*Learning Express, Inc.,v. Ray-Matt Enterprises, Inc.* 74 F. Supp. 2d 79 (D. Mass. 1999) (implied covenant bars a party from undertaking an act that deprives the other party of the fruit of the contract); *Baker v. Carvel Corp.* , [1998-2000 Transfer Binder] Business Franchise Guide (CCH) ¶ 11,690 (D. Conn. Aug. 9, 1999) ( motion to dismiss denied where complaint alleged that the franchisor sold its ice cream in supermarkets and retail outlets within a quarter mile of the franchisee stores and such conduct could impair franchisees' right to obtain the benefits of the franchise agreement).

*Anthony's Pier Four, Inc. v. HBC Assoc.*, 411 Mass 451, 471-72, 583 N.E. 2d 806, 820 (1991); *Druker v. Roland Wm. Jutras Assocs.*, 370 Mass. 383, 385, 348 N.E. 2d 763 (1976), quoting *Uproar Co. v. National Broadcasting Co.,* 81 F. 2d 373, 377 (1st Cir.).

## PROPOSED JURY INSTRUCTION NUMBER 15

The implied covenant of good faith and fair dealing applies' to the parties performance of

the contract, including the one at issue in this case, as well as their enforcement of it.

*Hawthorne's, Inc. v. Warrenton Realty, Inc.,* 414 Mass. 200, 211, 606 N.E. 2d 908, 914
(1993)  *See generally* Restatement (Second) of Contracts s 205 (1981) ( good faith
performance or enforcement of a contract emphasizes faithfulness to an agreed common
purpose and consistency with the justified expectations of the other party)

## PROPOSED JURY INSTRUCTION NUMBER 16

If you find by a preponderance of the evidence that Bowen Investment, Inc. and/or Honey

Dew Associates, Inc. were motivated by a desire to pretextually terminate Manuel M.

Carneiro's franchise without compensation then you should find that Bowen Investment,

Inc. and/or Honey Dew Associates, Inc. breached the implied warranty of good faith and

fair dealing.

*Piantes v. Pepperidge Farm, Inc.* 875 F. Supp. 929, 939 (D. Mass. 1998). Also see
*Traumann v. Southland Corp.*, 858 F. Supp. 979) N.D. Cal. 1994) (refusal to grant
franchise after training); *Atlantic Richfield Co., v. Razumic*, 480 Pa. 366, 390 A. 2d 736,
741-743 (1978) (termination of franchise without compensation).

## **PROPOSED JURY INSTRUCTION NUMBER 17**

There is a general requirement that parties to a contracts and commercial transactions

such as the franchise agreement in this case must act in good faith to one another.

*Fortune v. National Cash Register Co.,* 373 Mass. 96, 364 N.E. 2d 1251 (Mass. 1977).

## PROPOSED JURY INSTRUCTION NUMBER 18

Every contract implies good faith and fair dealing between the parties to it.

*Anthony's Pier Four, Inc. v. HBC Assoc.*, 411 Mass 451, 471, 583 N.E. 2d 806, 820 (1991); *Warner Ins. Co. v. Commissioner of Ins.,* 406 Mass. 354, 362 n.9, 548 N.E. 2d 188 (1990), quoting *Kerrigan v. Boston*, 361 Mass. 24, 33, 278 N.E. 2d 387 (1972). See *Clark v. State St. Trust Co.*, 270 Mass. 140, 152-153, 169 N.E. 897 (1930).

*Doering Equip. Co., Inc. v. John Deere Co.,* Mass. Super. Ct. Docket No. 96-02647, (slip op., November 6, 1998) (Gants, J.) (court denied summary judgment on claim of breach of implied covenant of good faith and fair dealing because a triable issue was raised as to whether the manufacturer had engaged in conduct that had "the effect of destroying or injuring the right of the other party to receive the fruits of the contract.")

*Cherick Distribs., Inc v. Polar Corp.,* 41 Mass. App. 125, 128, 669 N.E. 2d 218 (Mass. App. Ct. 1996) ( Good faith and fair dealing in a distributorship agreement is construed with reference to UCC, G. L. c. 106, 2-309(3) ( court held that an abrupt termination, on four days notice, where the initial justification for the termination (an expired letter of credit) was a pretext, violated c 93A, breached the implied covenant of good faith and fair dealing and constituted tortuous interference with advantageous business relations).

*Carvel Corp. v. Baker*, Bus. Fran. Guide (CCH) ¶ 11,208 (D. Conn. July 22, 1997) (there was a material issue as to whether franchisor's actions had the effect of destroying or injuring the rights of franchisees to receive the fruits of their contract).

"When the claim of bad faith or unfairness involves a contract termination, Court should look 'at the consequences of the termination' to determine if it resulted in a 'deprivation of earnings, loss of good will, or loss of investment,' and if the plaintiff was subject to unfair dealing. See *Piantes v. Pepperidge Farm, Inc.*, 875 F. Supp. 929, 931 (D. Mass. 1995) (quoting *Gram v. Liberty Mutual Insurance Co.,* 384 Mass. 659, 667 (1981).

## PROPOSED JURY INSTRUCTION NUMBER 19

The Uniform Commercial Code applies to franchise contracts such as the one at issue in this case.   More specifically:

§ 1-201 (good faith defined as "honesty in fact");

§ 1-203 (every contract imposes an obligation to perform in good faith);

§ 2-103 ( with respect to sale of goods between merchants, exercise of good faith is subject to observance of reasonable commercial standards of fair dealing in the trade).

.

*See Zapatha v. Dairy Mart, Inc.*, 381 Mass. 284, 408 N.E. 2d 1370 (1980);  *Brattleboro Auto Sales, Inc. v. Subaru of New England, Inc.*, 633 F.2d 649 (2d Cir. 1980).

"[T]he rule is clear in Massachusetts that every contract is subject to an implied covenant of good faith and fair dealing." Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 473, 583 N.E.2d 806 (1991). Good faith and fair dealing in a distributorship agreement may be construed, by analogy, with reference to the Uniform Commercial Code. See Zapatha v. Dairy Mart, Inc., 381 Mass. 284, 291, 408 N.E.2d 1370 (1980).

## PROPOSED JURY INSTRUCTION NUMBER 20

If you find that the Plaintiffs failed to properly train the Defendant franchisees per the franchise agreement then you must find that the Plaintiff's breached the franchise contract by failure to properly train the Defendants.

*AAMCO Transmissions, Inc. v. Harris*, 759 F. Supp. 1141, 1147 (failure to properly train franchisee and to inform franchisee that franchisor was under legal investigation).

## PROPOSED JURY INSTRUCTION NUMBER 21

If you find that the August 1, 2005 termination notice of Carneiro was merely a pretext and actually motivated by retaliation for not paying advertising and franchise fees in a manor contrary to the stated terms of the franchise agreement then you should find the August 1, 2005 termination unlawful and void.

*Cherick Distribs., Inc v. Polar Corp.,* 41 Mass. App. 125, 127, 669 N.E. 2d 218 (Mass. App. Ct. 1996)

## PROPOSED JURY INSTRUCTION NUMBER 22

If you find that Bowen Investment and/or Honey Dew Donuts failed to provide promised

training to Manuel Carneiro and/or Carneiro Donuts, Inc. then you must find that Bowen

Investment, Inc. and/or Honey Dew Associates, Inc. materially breached the franchise

agreement between the parties.

*In Re: De Rosa v. Boston Bakery & Italian Food Specialty, Inc.,* A.P. No. 870077 (R.I.
Bkrpcy Ct. 1989) (franchisor's failure to provide promised training a material breach of
the franchise agreement).

## <u>PROPOSED JURY INSTRUCTION NUMBER 23</u>

If you find either party to the franchise contract materially breached the franchise

contract then the other party is excused from further performance under the franchise

contract at issue.

*Ward v. American Mutual Liability Insurance Company*, 15 Mass. App. Ct. 98, 101
(1983).

## PROPOSED JURY INSTRUCTION NUMBER 24

If you find that the Plaintiffs engaged in any unfair, deceptive, or bad faith conduct in terminating the Defendants then you must find that the termination was unlawful and breached the implied covenant of good faith and fair dealing as well as Chapter 93 A.

*Zapatha v. Dairy Mart Inc.*, 381 Mass. 284, 299-300 (1980) ( Ultimately, " Dairy Mart lawfully terminated the agreement because there was no showing that in terminating it Dairy Mart engaged in any unfair, deceptive, or bad faith conduct.").

## PROPOSED JURY INSTRUCTION NUMBER 25
### (M. G L. c 93A)

### ADVISORY

M. G. L. c 93A, § 11 authorizes an award of "up to three, but not less than two, times"

actual damages if the court finds a willful or knowing violation.  *McEvoy Travel Bureau,*

*Inc. v. Norton. Co.,* 408 Mass. 704, 708-09, 716 ( 1990).   ( The judge awarded multiple

damages on the Chapter 93A claim based on a finding of fraud.).

## PROPOSED JURY INSTRUCTION NUMBER 24

If you find that the franchisor failed to comply with statutory/regulatory requirements or failed to deliver the support provided for in the franchise agreement then you must find that the franchisor materially breached the franchise contract.

*Center Garment Co., v. United Refrigerator Co.,* 369 Mass. 633, 638 (1976)
(franchisor's failure to provide an essential supply to franchisee was a material breach).

## PROPOSED JURY INSTRUCTION NUMBER 26

Franchisee can argue that it is being "singled out" if there is evidence that similarly situated franchisees are not being terminated or have received certain accommodations or benefits from the franchisor which would have enabled these franchisees to avoid termination.

See M.G.L. c. 93B, § 6 (failure to offer similar terms for renewal is a violation of c. 93B).

*Williston Farm Equipment, Inc. v. Steiger Tractor, Inc.*, 504 N. W. 2d 545, 547 (N.D. 1993) (allowing admission of evidence that the supplier's "stated reason for the termination was a pretext and that …                    [supplier] imposed different, and stricter, financial conditions on [this distributorship] than on similarly situated dealerships").

## **PROPOSED JURY INSTRUCTION NUMBER 27**

If you find in favor of the Defendants' Carneiro in their breach of contract claim then you

may award lost future profits they would have obtained from the business through the end

of his franchise term which was until August 2, 2009.

It is undisputed that, if a party suing for breach of contract has sustained a loss as a result
of a breach, and the loss is of such a nature that it was reasonably foreseeable by the
parties and follows as a natural consequence and proximate result of the breach or was
actually within their contemplation at the time the contract was entered into, the loss may
be recovered in an action for damages. *Leavitt . Fiberloid Co.,* 196 Mass. 440, 446-448,
82 N.E. 682, 685-86, (1907); *American Mechanical Corp. v. Union Mach. Co. of Lynn,
Inc.* 21 Mass. App. Ct. 97, 101, 485 N.E. 2d 680, 683 (1985); *In re Aero-Fastener, Inc.,*
177 Bankr. 120 ( Bankr. D. Mass. 1994).

Direct or general contract damages "'flow according to common understanding as to the
natural and probable consequences of the breach', that is, those arising naturally
'according to the usual course of things, from such breach of contract itself'". *Boylston
Hous. Corp. v. O'Toole*, 312 Mass. 538, 562, 74 N.E. 2d 288, 302 (1947) (quoting
*Hadley v. Baxendale*, 9 Exch. 341, 354 (1854).

## PROPOSED JURY INSTRUCTION NUMBER 28

Lost profits are a proper element of recovery in a breach-of-contract action, provided the loss flowed from the breach, was foreseeable and is capable of reasonable proof.

*Gagnon v. Sperry & Hutchinson Co.*, 206 Mass. 547, 92 N.E. 761 (1910).

## PROPOSED JURY INSTRUCTION NUMBER 29

Prospective profit damages need not be shown with mathematical accuracy.

*Rombola v. Cosindas*, 351 Mass. 382, 220 N.E. 2d 919 (1966)

## PROPOSED JURY INSTRUCTION NUMBER 30

Damages must be established with a reasonable degree of certainty.

*Novel Iron Works, Inc. v, Wexler Constr. Co.*, 26 Mass. App. Ct. 401, 528 N.E. 2d 142, (1988).

## PROPOSED JURY INSTRUCTION NUMBER 31

If you find that either party has breached the franchise contract you may find the beach but only award nominal damages.

*Holt v. County Broadcasting Corp.,* 343 Mass. 363, 178 N.E. 2d 589 (1961); *Bartlett v. Keith*, 325 Mass. 265, 90 N.E. 2d 308 (1950).

## PROPOSED JURY INSTRUCTION NUMBER 32

If you find that the Plaintiffs' have breached the franchise contract then you may award

emotional distress damages to the Defendant, Manuel M. Carneiro.

*Occean v. Marriot Corp.*, 2 Mass. L. Rptr. 628 ( Middlesex Super.Ct. 1994) ( allowing recovery of emotional distress damages on claim of breach of agreement to settle a discrimination action, because such damages were a reasonably foreseeable result of the breach and because public policy considerations supported such recovery).

## PROPOSED JURY INSTRUCTION NUMBER 33

A party who successfully proves fraud in the context of making a contract can recover the

"benefit of the bargain", including lost profits and other forms of consequential damages,

such as damages for the misrepresentation.

*Redstone v. Goldman, Sachs & Co.*, 583 F. Supp. 74 ( D. Mass 1984) (plaintiff may
recover benefit of the bargain in an action for willful misrepresentation, including
damages for lost profits); *Rokowsky v. Gordon*, 531 F. Supp. 435 (D. Mass. 1982) *aff'd*
705 F. 2d 439 (1st Cir.). *cert. denied* 462 U.S. 1120 (1983).

**PROPOSED JURY INSTRUCTION NUMBER 34**

In order for there to be a valid franchise agreement, the franchisor must charge a franchise fee.   A franchise fee means any fee or charge that a franchisee is required to pay or promises to pay to enter into the franchise agreement.   Franchise fees include the payment, either in a lump sum or by installment, of an initial capital investment fee, any fee or charge based on the amount of goods or products purchased by the franchisee, any fee, charge, or royalty based on a percentage of gross or net sales, and any training fees or training school fees or charges.

Rhode Island General Laws § 19-28.1-3.

## PROPOSED JURY INSTRUCTION NUMBER 35

Every franchise agreement includes an implied covenant of good faith and fair dealing.

*Waltham Professionals, Inc. v. Nutri/System, Inc.,* [1985-1986 Transfer Binder] Bus. Franchise Guide (CCH) ¶ 8479, at 15,917 (D. Mass. Oct. 8, 1985) ( "Good faith in the performance of a contract is 'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'")

*Eichman v. Fotomat Corp.*, 880 F. 2d 149, 169 (9th Cir. 1989) (implied covenant exists but does not give rise to special or fiduciary relationship); *Massey v. Tandy Corp.,* 987 F. 2D 1307, 1309 (8TH Cir. 1993);  *TCBY Systems, Inc. v. RSP Co., Inc.*, 33 F.3d 925, 928 (8th Cir. 1994); *Richard Short Oil Co., Inc. v. Rep. Serv.* 2d 98 (8th Cir. 1986); *McDonald's Corp. v. Barnes*, 5 F. 3d 537 (9th Cir. 1993).

## PROPOSED JURY INSTRUCTION NUMBER 36

The implied covenant of good faith and fair dealing requires that when either party to a

franchise agreement has discretion as to how the terms of the franchise agreement are to

be performed they must exercise that discretion in good faith so that it does not defeat the

reasonable expectations of the other party.

*Burger King Corp. v. Austin*, 805 F. Supp. 1007, 1014 (S.D. Fla. 1992); *Bonfield v. AAMCO Transmissions, Inc.*, 708 F. Supp. 867 (N.D. Ill. 1989).

## PROPOSED JURY INSTRUCTION NUMBER 37

In order for there to be a franchise agreement, the franchisee must have the right to sell goods or services under a marketing plan or system provided by the franchisor.   The franchisee also, must have a right or license to use the franchisor's trademark or commercial symbol.

Rhode Island General Laws § 19-28.1-3.

## PROPOSED JURY INSTRUCTION NUMBER 38

Statute of Frauds requires that a franchise agreement be evidenced by writing.

*Artman v. International HarvesterCo.*, 355 F. Supp. 482, 485-486, 1973-1 Trade Cas. (CCH) P 74522, 12 U.C.C. Rep. Serv. 87 (W.D. Pa. 1973) (oral franchise agreement unenforceable under Pennsylvania statute of frauds); See M.G.L. c 259 s1.

**PROPOSED JURY INSTRUCTION NUMBER 39**

The common law covenant of good faith and fair dealing imposed an obligation on

Bowen Investment, Inc. and/or Honey Dew Associates, Inc. to properly and fully disclose

their litigation history, weekly advertising fee payment practices and equipment financing

practices to the Defendants in their Franchise Offering Circular.

*Tecnoclima, S.p.A. v. PJC Group of New York, Inc.I, [1993-1995 Transfer Binder] Bus.*
*Franchise Guide (CCH)* ¶ 10,339, at 24,985 ( S.D.N.Y. Oct. 1, 1993) ( although no
affirmative duty was expressed in the contract, an allegation that franchisor failed to
disclose information concerning the franchise agreement was sufficient to state a cause of
action for breach of the implied covenant of good faith and fair dealing).

**PROPOSED JURY INSTRUCTION NUMBER 40**

Franchise offering disclosure documents which must be provided under the Rhode Island

Franchise Investment Act means the Uniform Franchise Offering Circular as adopted and

amended by the North American Securities Administrators Association, Inc.

Rhode Island General Laws 1956 s 19-28.1-3, Rhode Island Franchise Investment Act

## PROPOSED JURY INSTRUCTION NUMBER 41

### Advisory

If the Defendants are found to have knowingly and willfully violated M.G.L. c 93A then

they are entitled to double compensatory damages.

*Computer Systems Engineering, Inc. v. Qantel Corp.*, 740 F. 2d 59, 16 Fed. R. Evid.
Serv. 907 (1st Cir. 1984) (knowing and willful violation entitled distributor to double
compensatory damages).

**PROPOSED JURY INSTRUCTION NUMBER 42**

If it is found that Bowen Investment, Inc. executed a franchise agreement with the

Defendants without proper and legal authority then that act constitutes and unfair and

deceptive business practice.

*Baker v. Log Systems, Inc*. 75 N.C. App. 347, 349-50, 330 S.E. 2d 632, 634-635 (1985)
(franchisor engaged in an unfair and deceptive practice by executing a franchise
agreement where he lacked such authority).

## PROPOSED JURY INSTRUCTION NUMBER 43

If the Defendants are found to have made fraudulent misrepresentations they can not be excused from liability by asserting that the Defendants did not investigate or inquire into the misrepresentations.

"Finally, we reject Norton's contention that it was not reasonable for McEvoy to rely upon Norton's fraudulent misrepresentations. Indeed, it is unreasonable to impose a rule that a party to any contract must assume that deceit is at work when the other party makes representations of intentions with respect to a written contract provision. It would have been virtually impossible for McEvoy to verify, through investigation or otherwise, whether Norton's intentions were truly what it said they were, but even if it were possible, McEvoy would be under no duty to do so. 'Certainly where a defendant has willfully made false representations with intent to deceive he ought not to be relieved of liability because of his victim's lack of diligence.'" <u>Yorke v. Taylor, 332 Mass. 368, 373, 124 N.E.2d 912 (1955)</u>. <u>Kannavos v. Annino, 356 Mass. 42, 50, 247 N.E.2d 708 (1969)</u>.

*McEvoy Travel Bureau, Inc. v. Norton Co.,* 408 Mass. 704, 713-14, 563 N.E. 2d 188, 193-94, 9 A.L.R. 5th 1007 (1990).

## PROPOSED JURY INSTRUCTION NUMBER 44

If you find that the Plaintiffs made promises and representations to the Defendants that

they did not intend to perform then you must find that they committed fraud.

*In re DeRosa*, 103 B.R. 382, 386 (Bankr. D. R.I. 1989) (fraud exists where franchisor
made promises it did not intend to perform)

*In re DeRosa*, 103 B.R. 382, 388 (Bankr. D. R.I. 1989) (franchisor should have disclosed
receipt of 30% commission in light of statement that it makes "little or no profit" on
equipment sales).

## PROPOSED JURY INSTRUCTION NUMBER 45

Fraudulent failure to disclose

A duty to disclose information arises where the failure to do so would make a

representation that has been made false or misleading.

*In re DeRosa*, 103 B.R. 382, 388 (Bankr. D. R.I. 1989) (franchisor should have disclosed receipt of 30% commission in light of statement that it makes "little or no profit" on equipment sales); *Burman v. Richmond Homes Ltd*., 821 Pd 913, 918 (Colo. Ct. App. 1991).

See *Burman v. Richmond Homes Ltd*., 821 Pd 913, 918 (Colo. Ct. App. 1991). ("[A]" party has a duty to disclose if he has stated facts that he knows will create a false impression unless other facts are disclosed."); *General Motors Corp. v. Bell,* 714 So. 2d 268 (Ala. 1996), at *11 (once finance company made some disclosures, it was obligated to do so in a way so as to make the disclosure full and not misleading).

## <u>PROPOSED JURY INSTRUCTION NUMBER 46</u>

In a business transaction, a party has a duty to exercise reasonable care to disclose to the other party the basic facts of the transaction if it knows that the other party is about to enter into the transaction under a mistaken belief or impression as to those facts.

See *General Motors Corp., v. Bell*, 714 So. 2d 268 (Ala. 1996); Restatement (Second) of Torts § 551 (1989).

## PROPOSED JURY INSTRUCTION NUMBER 47

A franchisor has a duty to exercise reasonable care or competence in obtaining or

communicating the information included in the UFOC.

See *Carousel's Creamery, L.L.C. v. Marble lab Creamery, Inc.* 134 S.W. 3d 385, 391
(Tex. App. Houston 1st Dist. 2004); *Reyes v. Atlantic Richfield Co.,* 12 F. 3d 1464, 1472
(9th Cir. 1993) (negligent misrepresentation would only occur where there was a fiduciary
relationship or where a positive assertion was made).

## PROPOSED JURY INSTRUCTION NUMBER 48

### DAMAGES

Under the Rhode Island Franchise Investment Act a franchisee such as the Defendants

may sue for damages.

R.I. Gen. Laws §19-28.1-21. See *DeRosa v. Boston Bakery & Italian Food Specialty, Inc.*, 98 B.R. 644, Bus. Franchise Guide (CCH) ¶9383 (Bankr. D.R.I. 1989) and *DeRosa v. Boston Bakery & Italian Food Specialty, Inc.*, 103 B.R. 382, Bus. Franchise Guide (CCH) ¶9483 (Bankr. D.R.I. 1989) (detailing $36,342.24 of damages awarded).

## PROPOSED JURY INSTRUCTION NUMBER 49

The statute applies to three types of arrangements: (1) franchisor/franchisee, (2) franchisor/subfranchisor, and (3) subfranchisor/subfranchisee.  A "franchisor" is anyone who grants a franchise or a master franchise. A "franchisee" is anyone to whom a franchise is granted. A "master franchise" is an agreement by which a person pays a franchisor for the right to sell or negotiate the sale of franchises. A "subfranchisor" is a person to whom a master franchise is granted.

R.I. Gen. Laws §19-28.1-3.

**<u>PROPOSED JURY INSTRUCTION NUMBER 50</u>**


    Under the Rhode Island Franchise Act, failure to disclose a material fact makes the

sale of a franchise "unlawful."


R.I. Gen. Laws §19-28.1-8(a).

**PROPOSED JURY INSTRUCTION NUMBER 51**

The Rhode Island Franchise Investment Act prohibits sales and offers to sell that are made by an untrue statement of material fact. The Act also prohibits sales made by material omissions of fact "necessary to make the statements made, in the light of the circumstances under which they are made, not misleading."

R.I. Gen. Laws §19-28.1-17(b).

## PROPOSED JURY INSTRUCTION NUMBER 52

A franchisee damaged by a violation of the act may sue for damages, costs, and attorneys' and expert fees.

R.I. Gen. Laws §19-28.1-21.

## PROPOSED JURY INSTRUCTION NUMBER 53

Material omissions used to sell franchises give rise to a claim under the Act.

R.I. Gen. Laws  §19-28.1-17(b).

## PROPOSED JURY INSTRUCTION NUMBER 54

An aggrieved franchisee has a private right of action. "The franchisee" may sue for (1) damages for any violation of the act, or (2) rescission as a result of a violation of the registration, disclosure or antifraud section of the act.

R.I. Gen. Laws §19-28.1-21.

## PROPOSED JURY INSTRUCTION NUMBER 55

If you find that the Plaintiffs failed to disclose litigation, which is required to be disclosed by the Uniform Franchise Offering Circular ("UFOC") Guidelines as adopted and amended by the North American Securities Administrators Association, Inc., at Item 3 of the BII Franchise Offering Circular(s) provided to the Defendants, then you must find that the Plaintiff's have violated the Rhode Island Franchise Investment Act.

Rhode Island General Laws 1956 s 19-28.1-3, Rhode Island Franchise Investment Act

See *United States v. Building Inspector of America,* 894 F. Supp. 507, 515-518 (D. Mass. 1995) ("The materiality of the counterclaims here is self-evident" … "Rather, TBIA admits that it settled these claims for an undisclosed amount.   This is clearly the kind of information that a 'reasonable prospective franchisee would consider important in making a decision relating' to buying a TBIA franchise".).

See *United States v. Building Inspector of America,* 894 F. Supp. 507, 515-518 (D. Mass. 1995) ("The FTC has placed an absolute obligation on franchisors to disclose information to prospective franchisees.");  Rhode Island Franchise Investment Act, Sections 19-28. 1-3 (6); 1-17 (2) (3) and 1-2.

## Item 3. Litigation (Instructions) – per UFOC Guidelines

Disclose whether the franchisor, its predecessor, a person identified in Item 2 or an affiliate offering franchises under the franchisor's principal trademark:

A. Has an administrative, criminal or material civil action pending against that person alleging a violation of a franchise, antitrust or securities law, fraud, unfair or deceptive practices, or comparable allegations. In addition, include actions other than ordinary routine litigation incidental to the business which are significant in the context of the number of franchisees and the size, nature or financial condition of the franchise system or its business operations. If so, disclose the names of the parties, the forum, nature, and

current status of the pending action. Franchisor may include a summary opinion of counsel concerning the action if a consent to use of the summary opinion is included as part of this offering circular.

B. Has during the 10 year period immediately before the date of the offering circular been convicted of a felony or pleaded nolo contendere to a felony charge; or been held liable in a civil action by final judgment or been the subject of a material action involving violation of a franchise, antitrust or securities law, fraud, unfair or deceptive practices, or comparable allegations. If so, disclose the names of the parties, the forum and date of conviction or date judgment was entered, penalty or damages assessed and/or terms of settlements.

C. Is subject to a currently effective injunctive or restrictive order or decree relating to the franchise or under a federal, state or Canadian franchise, securities, antitrust, trade regulation or trade practice law resulting from a concluded or pending action or proceeding brought by a public agency. If so, disclose the name of the person, the public agency and court, a summary of the allegations or facts found by the agency or court and the date, nature, terms and conditions of the order or decree.

### Item 3 Definitions:

i. For purposes of these instructions to Item 3, "franchisor" includes the franchisor, its predecessors, persons identified in Item 2 and affiliates offering franchises under the franchisor's principal trademarks.

ii. Action: Action includes complaints, cross claims, counterclaims, and third party complaints in a judicial proceeding, and their equivalents in an administrative action or arbitration proceeding. The franchisor may disclose its counterclaims. Omit actions that were dismissed by final judgment without liability of or entry of an adverse order against the franchisor.

iii. Included in the definition of material is an action or an aggregate of actions if a reasonable prospective franchisee would consider it important in making a decision about the franchised business.

iv. In this Item, settlement of an action does not diminish its materiality if the franchisor agrees to pay material consideration or agrees to be bound by obligations which are materially adverse to its interests.

v. "Ordinary routine litigation" means actions which ordinarily result from the business and which do not depart from the normal kinds of actions in the business.

vi. "Held liable" includes a finding by final judgment in a judicial, binding arbitration or administrative proceeding that the franchisor, as a result of claims or counterclaims

must pay money or other consideration, must reduce an indebtedness by the amount of an award, cannot enforce its rights, or must take action adverse to its interests.

vii. "Currently Effective": An injunctive or restrictive order or decree is "currently effective" unless it has been vacated or rescinded by a court or by the issuing public agency. An order that has expired by its own terms is not "currently effective." If the named party(s) have fully complied with an order (for example, through registration of its franchise offer), the order is not "currently effective." A party has not fully complied with an order to act or to refrain from an act (for example to comply with the franchise law or to refrain from violating the franchise law) until the order expires by its own terms.

## PROPOSED JURY INSTRUCTION NUMBER 56

If you find that the Plaintiffs failed to disclose the terms and conditions of each financing arrangement that the franchisor, its agent or affiliates offers directly or indirectly to the franchisee, pursuant to the Uniform Franchise Offering Circular ("UFOC") Guidelines as adopted and amended by the North American Securities Administrators Association, Inc., at Item 10 of the BII Franchise Offering Circular(s) provided to the Defendants, then you must find that the Plaintiff's have violated the Rhode Island Franchise Investment Act.

Rhode Island General Laws 1956 s 19-28.1-3, Rhode Island Franchise Investment Act

**Item 10. Financing -  – per UFOC Guidelines**

Disclose the terms and conditions of each financing arrangement that the franchisor, its agent or affiliates offers directly or indirectly to the franchisee, including:

*Item 10 Instructions:*

i. "Financing" includes leases and installment contracts.

ii. Payments due within 90 days on open account financing need not be disclosed under this Item.

iii. A written arrangement between a franchisor or its affiliate and a lender for the lender to offer financing to the franchisee or an arrangement in which a franchisor or its affiliate receives a benefit from a lender for franchisee financing is an "indirect offer of financing" and must be disclosed under this Item. The franchisor's guarantee of a note,

lease or obligation of the franchisee is an "indirect offer of financing" and must be disclosed under this Item.

iv. If financing of the initial fee is disclosed in the Item 7 disclosure, a cross reference to Item 7 is sufficient if all the disclosure which Item 10 requires is provided in Item 7.

v. If an affiliate offers financing, identify the affiliate and its relationship to the franchisor.

vi. The franchisor may summarize the terms of each financing arrangement in tabular form, using footnotes to entries in the chart to provide additional information required by these instructions that does not fit in the chart.

vii. If a financing arrangement is for the establishment of the franchised business, disclose what the financing covers, including:

a) Initial franchise fee;

b) Site acquisition;

c) Construction or remodeling;

d) Equipment or fixtures; and

e) Opening inventory or supplies.

viii. If the franchisor generally offers financing for the operation of the franchised business, disclose what the financing arrangement covers, including:

a) Inventory or supplies;

b) Replacement equipment or fixtures; and

c) Other continuing expenses.

ix. Disclose the terms of each financing arrangement, including:

a) The identity of the lender(s) providing the financing and its relationship to the franchisor (for example, affiliate);

b) The amount of financing offered or, if the amount depends on an actual cost that may vary, the percentage of the cost that will be financed;

c) The annual percentage rate of interest ("APR") charged, computed as provided by Sections 106-107 of the Consumer Protection Credit Act, 15 U.S.C. §§106-107. If the

APR may differ depending on when the financing is issued, disclose the APR on a specified recent date;

    d) The number of payments or the period of repayment;

    e) Nature of security interest required by the lender;

    f) Whether a person other than the franchisee (for example spouse, shareholder of the franchisee) must personally guarantee the debt;

    g) Whether the debt can be prepaid and the nature of any prepayment penalty;

    h) The franchisee's potential liabilities upon default, including any accelerated obligation to pay the entire amount due, court costs and attorney's fees for collection, and termination of the franchise, or other cross default clauses whether directly, as a result of non-payment, or indirectly, as a result of loss of necessary facilities; and

    i) Other material financing terms.

    x. Include specimen copies of the financing documents as an exhibit to Item 22. Cite the section and name of the document containing the financing terms. Put this information in parentheses at the end of the description of the term.

    xi. Use Sample Answer 10-1 if the franchisor does not offer financing.

    A. A Waiver of defenses or similar provisions in a document.

### Item 10A Instructions:


    i. Disclose the terms of waivers of legal rights by the franchisee under the terms of the financing arrangement (for example confession of judgment).

    ii. Describe provisions of the loan agreement that bar the franchisee from asserting a defense against the lender, the lender's assignee or the franchisor.

    iii. If the loan agreement does not contain the provisions in (i) or (ii), disclose that fact.

    iv. Cite the section and name of the document containing these terms. Put this information in parentheses at the end of the description of the term.

    B. The franchisor's practice or its intent to sell, assign, or discount to a third party all or part of the financing arrangement.

### Item 10B Instructions:

i. Practice includes past or present practice and future intent to sell or assign franchisee financing arrangements.

ii. Disclose the assignment terms including whether the franchisor will remain primarily obligated to provide the financed goods or services.

iii. If the franchisor may sell or assign its rights under the financing agreement, disclose that the franchisee may lose all its defenses against the lender as a result of the sale or assignment.

iv. Cite the section and name of the document containing these terms. Put this information in parentheses at the end of the description of the term.

v. If no disclosure is required by Instruction 10B, disclose that fact.

C. Payments to the franchisor or an affiliate(s) for the placement of financing with the lender.

*Item 10C Instructions:*


i. Describe the payments.

ii. If no disclosure is required by Instruction 10C(i) for a financing arrangement, disclose that fact.

iii. Identify the source of the payment and the relationship of the source to the franchisor or its affiliates.

iv. Disclose the amount or the method of determining the payment.

v. Cite the section and name of the document containing these arrangements. Put this information in parentheses at the end of the description of the term.

## <u>PROPOSED JURY INSTRUCTION NUMBER 57</u>

If you find that the Plaintiffs failed to disclose franchisee obligations to purchase or lease

from the franchisor its designee or from suppliers approved by the franchisor or under the

franchisor's specifications, pursuant to the Uniform Franchise Offering Circular

("UFOC") Guidelines as adopted and amended by the North American Securities

Administrators Association, Inc., at Item 8 of the BII Franchise Offering Circular (s)

provided to the Defendants, then you must find that the Plaintiff's have violated the

Rhode Island Franchise Investment Act.

Rhode Island General Laws 1956 s 19-28.1-3, Rhode Island Franchise Investment Act

**Item 8. Restrictions on Sources of Products and Services – per UFOC Guidelines**
   Disclose franchisee obligations to purchase or lease from the franchisor its designee or from suppliers approved by the franchisor or under the franchisor's specifications. For each obligation disclose:

   A. The goods, services, supplies, fixtures, equipment, inventory, computer hardware and software or real estate relating to establishing or operating the franchised business.

   B. The manner in which the franchisor issues and modifies specifications or grants and revokes approval to suppliers.

   C. Whether, and for what categories of goods and services, the franchisor or its affiliates are approved suppliers or the only approved suppliers.

   D. Whether, and if so, the precise basis by which the franchisor or its affiliates will or may derive revenue or other material consideration as a result of required purchases or leases.

E. The estimated proportion of these required purchases and leases to all purchases and leases by the franchisee of goods and services in establishing and operating the franchised business.

F. The existence of purchasing or distribution cooperatives.

***Item 8 Instructions:***

i. An obligation includes those imposed by written agreement or by the franchisor's practice. The franchisor may include the reason for the requirement.

ii. Do not include goods or services provided as part of the franchise and without a separate charge (for example, a fee for initial training when the cost is included in the franchise fee). These fees should be described in Item 5. Do not include fees disclosed in response to Item 6.

iii. For "precise basis," disclose the franchisor's total revenues and the franchisor's revenues from all required purchases and leases of products and services. Also, disclose the percentage of the franchisor's total revenues represented by the franchisor's revenues from required purchases or leases. If the franchisor's affiliates also sell or lease products or services to franchisees, disclose affiliate revenues from those sales or leases. These amounts should be taken from the franchisor's statement of operations (or profit and loss statement) from the most recent annual audited financial statement attached to the offering circular. If the franchisor's annual audited financial statement is not required to be attached to the offering circular or if the franchisor's affiliate sells or leases required products or services to franchisees, disclose the sources of information used in computing revenues.

iv. State how the franchisor formulates and modifies specifications and standards imposed on franchisees.

v. Disclose whether specifications and standards are issued to franchisees, subfranchisors, or approved suppliers.

vi. Describe how suppliers are evaluated, approved or disapproved. Disclose whether the franchisor's criteria for supplier approval are available to franchisees. State the fees and procedure to secure approval and how approvals are revoked. State the time period when the franchisee will receive notification of approval or disapproval.

vii. If the designated supplier will make payments to the franchisor because of transactions with franchisees, disclose the basis for the payment. Specify a percentage or a flat amount. Purchases of similar goods or services by the franchisor at a lower price than that available to franchisees is a payment.

viii. Disclose whether the franchisor negotiates purchase arrangements with suppliers (including price terms) for the benefit of franchisees.

ix. Disclose whether the franchisor provides material benefits (for example renewal or granting additional franchises) to a franchisee based on a franchisee's use of designated or approved sources.

x. Use sample answer 8-1 if the response to Item 8 is negative.

**PROPOSED JURY INSTRUCTION NUMBER 58**

**M.G.L. c 93A ADVISORY**

The "center of gravity" of the circumstances that give rise to the Defendants'

counterclaims are primarily and substantially within Massachusetts and thus M.G.L c.

93A (Counterclaim VI) clearly applies to this case.   See *Kuwatti Danish Computer Co.,*

*v. Digital Equip. Corp.,* 438 Mass. 459, 472-73 (2003).

## PROPOSED JURY INSTRUCTION NUMBER 59

If you find that the Defendants have been injured by Honey Dew Associates, Inc.'s management of the Honey Dew Advertising Fund then you may award the Defendants damages or other appropriate relief.

The Defendants', like franchisees in other franchise chains, are clearly third-party beneficiaries of the Advertising Fund.

 See Oil Exp. Nat., Inc. v. Latos, 966 F.Supp. 650 (N.D. Ill., 1997) ("[f]ranchisees of Oil Express are the clear beneficiaries of such advertising, and they are consequently direct beneficiaries under the Citgo-Oil Express agreement.").

## PROPOSED JURY INSTRUCTION NUMBER 60

### Rescission

A contract may be rescinded where there is fraud in the inception, or where there is a

substantial breach.

*DeRosa v. Boston Bakery & Italian Food Specialty, Inc.*, 103 B.R. 382, Bus. Franchise
Guide (CCH) ¶9483 (Bankr. D.R.I. 1989); *CBS, Inc. v. Merrick*, 716 F. 2d 1292, 1296
(9th Cir. 1983)

## PROPOSED JURY INSTRUCTION NUMBER 61

### Contract Breach

Whether a breach is material is a question of degree and determined in light of the circumstances of the case.

*In re Fahnders*, 66 B.R. 94, 96 (Bankr. C.D. Ill. 1986); *In re Best Film & Video Corp.,* 46 B.R. 861, 873 (Bankr. E.D.N.Y. 1985).

## PROPOSED JURY INSTRUCTION NUMBER 62

### Rescission and Restitution

If you find that the Plaintiffs materially breached their contractual obligations to the

Defendants then you may award restitution and reliance damages to the Defendants

Carneiro.

*DeRosa v. Boston Bakery & Italian Food Specialty, Inc.*, 103 B.R. 382, Bus. Franchise Guide (CCH) ¶9483  (Bankr. D.R.I. 1989); *Runyon v. Pacific Air Industries*, 2 Cal. 3d 304, 85 Cal. Rptr. 138, 466 P. 2d 682 (1970) (the purpose of rescission is to restore both parties to their former position as far as possible and bring about substantial justice by adjusting the equities between the parties).

## PROPOSED JURY INSTRUCTION NUMBER 63

If you find that the franchise agreement was a product of fraud by Bowen Investment, Inc. and/or Honey Dew Associates, Inc. then the franchisee agreement is vitiated and the Defendants Carnerio Donuts, Inc. and Manuel M. Carneiro are not bound by or liable under the franchise agreement.

*Bogosian v. Bederman*, 823 A. 2d 1117, 1120 (R.I. 2003); *LaFazia v. Howe*, 575 A. 2d 182, 185 (R.I. 1990); *Bjartmarz v. Pinnacle Real Estate Service,* 771 A. 2d 124, 127 (R.I. 2001) (per curiam).

## PROPOSED JURY INSTRUCTION NUMBER 64

If the Plaintiffs Bowen Investment, Inc and/or Honey Dew Associates, Inc. failed to perform their obligations under the franchise agreement then you must find that they breached the franchise agreement.

*Climaco Guzman, et al v. Jan-Pro Cleaning Systems, Inc.* Bus. Franchise Guide (CCH) ¶ 12,695 ( R.I. 2003)

## **CERTIFICATE OF SERVICE**

I, Kevin R. McCarthy, certify that on this date I served a true copy the foregoing DEFENDANTS' PROPOSED JURY INSTRUCTIONS  to counsel for all other parties by electronic means (CM/ECF) to Jack J. Mikels, counsel for the plaintiff, Jack Mikels and Associates LLP, 1 Batterymarch Park, Suite 309, Quincy, MA 02169.


Date:  January 12, 2006


/s/ Kevin R. McCarthy
Kevin R. McCarthy